UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, Individually and on
behalf of other similarly situated employees,

                 Plaintiff,                Case No.: 04-CV-40346

                                     HON. PAUL V. GADOLA
vs.                             MAG. JUDGE WALLACE CAPEL, JR.

QUICKEN LOANS INC., a/k/a ROCK
FINANCIAL, a Michigan corporation, and
DANIEL B. GILBERT, personally and individually,

                 Defendants.
_____/

**REPORT AND RECOMMENDATION**

I.    **INTRODUCTION**

      This is a potential collective action for paid overtime, under the Fair Labor Standards Act

(FLSA), 29 U.S.C. § 201 et seq.  Before the Court is Plaintiffs' Motion for Conditional Class

Certification and Judicial Notice and Motion to Compel.[1]

      Plaintiff was a "loan consultant" for Defendant Quicken Loans, Inc., an online mortgage

broker, of which Defendant Gilbert is the Chief Executive Officer.  A loan consultant's duties

include "originating" loans, i.e., receiving phone calls from prospective clients, and then advising

those clients as to Quicken Loans' products and assisting them with their loan applications.[2]  Plaintiff

---

    [1]Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, filed on February 2, 2006 (hereinafter Pl.'s Mot. Cond'l Class Cert.).

    [2]Pl.'s Mot. Cond'l Class Cert. Exh. K, pages 10-11 (deposition pages 40-41).

alleges that he and other loan consultants were wrongfully denied overtime compensation during their employment there. FLSA provides that a civil action for overtime pay compensation may be brought "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, FLSA requires that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Unlike a Fed. R. Civ. P. 23 class action, a collective action under FLSA requires that potential class members actively opt into the class.

Plaintiff Henry filed his complaint against Defendants Quicken Loan and Daniel Gilbert on May 17, 2004,[3] alleging violation of the Fair Labor Standards Act. Plaintiffs filed their first Motion for Conditional Class Certification on and Judicial Notice on June 16, 2005,[4] and they later withdrew that motion on November 15, 2006.[5] Plaintiffs filed this Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on February 2, 2006. Defendants filed a Response in Opposition to Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on March 6, 2006. The undersigned presided over a hearing on the motion on March 13, 2006. At the time of the hearing, 151 plaintiffs had opted into the suit.[6]

---

[3]Docket No. 1.

[4]Docket No. 136.

[5]Docket No. 188.

[6]Defendants' Brief in Opposition to Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, filed on March 6, 2006 (hereinafter Def's Brief Opp. Pl.'s Motion), at page 26.

## II.   __STANDARD FOR CONDITIONAL CLASS CERTIFICATION__

On August 8, 2006, Defendants submitted a notice of supplemental authority to this Court. In their notice, Defendants brought this Court's attention to Comer v. Wal-Mart Store, Inc., 454 F.3d 544 (6th Cir. 2006), and characterized the opinion as clearly supportive of their arguments against conditional class certification for Plaintiffs.  However, the Court held in Comer that a "conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable."  Id. at 549.  Therefore, the Court's only holding was that it lacked jurisdiction to hear the appeal, and it dismissed the appeal accordingly.  Id.  Nevertheless, in its dicta, the Court noted that the following approach is "typically used by courts in suits filed under 29 U.S.C. § 216(b)":

> The first question such courts have generally asked is whether proposed co-plaintiffs are, in fact, "similarly situated" for the purposes of the statute's requirements.  They have used a two-phase inquiry to address this question.  The first takes place at the beginning of discovery.  The second occurs after all of the opt-in forms have been received and the discovery has concluded. Goldman v. RadioShack Corp., 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003); see also Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (and cases cited therein)." Goldman v. RadioShack Corp., 2003 WL 21250571, at *6 (E.D. Pa. Apr.17, 2003); see also Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J.2000) (and cases cited therein). As Judge Enslen wrote in our case, "[a]t the notice stage, the certification is conditional and by no means final." The plaintiff must show only that "his position is similar, not identical, to the positions held by the putative class members." Pritchard v. Dent Wizard Int'l, 210 F.R.D. at 595 (quoting Viciedo v. New Horizons Computer, No. 2:01-CV-250, slip. op. (S.D. Ohio Dec. 4, 2001) and Allen v. Marshall Field & Co., 93 F.R.D. 438, 443 (N.D. Ill.1982)). Judge Enslen quoted the Pritchard court's conclusion that authorization of notice "need only be based on a modest factual showing," Pritchard, 210 F.R.D. at 596 (JA 346), as well as the Morisky court's view that "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class," Morisky, 111 F. Supp.2d at 497 (quoting Thiessen v. General Elec. Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan.1998)). See also Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp.2d 234, 238 (N.D. N.Y. 2002) (to gain court approval for notice to similarly situated persons, plaintiffs must "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law").

3

> At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated. As the <u>Morisky</u> court wrote, at this second stage, "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." 111 F. Supp. 2d at 497.

<u>Id.</u> at 546-47. This dicta is the only case law that either party could cite from the Sixth Circuit Court of Appeals that has discussed the standard for FLSA conditional class certification. The language cited above refers specifically to courts that have bifurcated discovery, initially limiting discovery to the issue of whether the plaintiffs are "similarly situated," and thereafter permitting discovery on the issues of merits and damages. <u>Id.</u>

Recently a district court in the Southern District Court of Ohio described the two tiered approach as follows:

> First, the court must determine whether notice of the pending action and the opportunity to 'opt- in' should be given to potential class members. Such notice will usually be authorized if the plaintiff demonstrates that she is 'similarly situated' to the other employees she seeks to notify of the pendency of the action. This is known as 'conditional certification' of the collective action. After notice has been sent and <u>discovery has been completed</u>, the defendant can file a motion for decertification, challenging the court's preliminary determination that other employees are similarly situated.

<u>Harrison v. McDonalds Corp.</u>, 411 F. Supp. 2d 862, 864-65 (S.D. Ohio 2005) (emphasis added).

Similarly, the district court in <u>Smith v. Lowe's Companies, Inc.</u>, 2005 U.S. Dist. Lexis 9763, at *8 (S.D. Ohio May 11, 2005) (citations omitted), also noted that the second phase of the inquiry occurs after the completion of discovery.

> The first step, which is generally conducted early in litigation process is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly-situated employees. The second step, <u>which is usually conducted after the completion of class-related discovery</u>, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit (emphasis added).

4

Id.

It is true in this case that discovery has still not yet concluded, and the modified scheduling order reflects that discovery is ongoing.

> Once the Court rules on plaintiffs' Class Certification Motion, (1) if the Court decides to authorize notice to members of the potential class, the Court will modify the Scheduling Order to take into account the notice period and the discovery that will follow it. (2) If the Court decides not to authorize notice to members of the potential class, the Court will issue dates for completion of the pretrial matters extended pursuant to Paragraph 2.a. of this Order (emphasis added)."[7]

The present case is not at the beginning of discovery, which began more than one year ago. In fact, Plaintiff Henry's Complaint was submitted on May 17th, 2004,[8] and Plaintiffs submitted their first discovery requests in August 2004.[9] Plaintiffs submitted their first Motion for Conditional Class Certification and Judicial Notice and Motion to Compel as early as June 2005 (Docket # 136). They later withdrew that motion in November 2005, with the intention of re-filing with newly obtained information. Plaintiffs filed their second Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on February 2, 2006, at which point they had completed eighteen months of discovery. It is probable that Plaintiffs earlier request for conditional class certification and judicial notice would have been judged using the lenient "modest factual showing" standard. Since that time, however, significant discovery has been conducted, as evidenced by the depositions of Defendants, the submission of interrogatories, etc.

Defendant has not argued that discovery in this case is complete, and the modified scheduling

---

[7]Order Modifying Scheduling Order, filed February 16, 2006 (hereinafter Order Mod. Sched. Order) (emphasis added), at page 2.

[8]Plaintiff's Complaint, filed on May 17, 2004.

[9]Plaintiffs' Motion to Compel Discovery, filed on November 22, 2004, at page 4.

5

order above demonstrates that discovery is ongoing.  Both cases above indicate that completion of discovery is necessary before proceeding to the more stringent second phase of inquiry, in which each individual plaintiff's claim is assessed.  However, because significant discovery has been conducted, the undersigned respectfully recommends that the Court consider factors from both the first and second phases of the inquiry to determine whether Plaintiffs are similarly situated. See, e.g., Basco v. Walmart, No. Civ A. 00-3184, 2004 WL 1497709, at *5  (E.D. La. Jul. 2, 2004).

Plaintiffs have argued that all loan consultants are similarly situated.  There are currently 565 loan consultants working for Quicken Loans, most of whom work in either Troy or Livonia.[10]  There is only one job description for all loan consultants, and only one incentive plan for all loan consultants.  Defendants argue that loan consultants are divided into three distinct groups: junior loan consultants, senior loan consultants, and executive loan consultants.[11]  However, one of Defendant's vice-presidents has stated in depositions that the only difference between the different levels is that, within one incentive plan that covers all loan consultants, the senior loan consultants get higher commissions than the junior loan consultants, and the executive loan consultants get higher commissions than the senior loan consultants.[12]

All loan consultants share common training using the "Sales Process," which is a guideline

---

[10]Pl's Mot. Cond'l Class Cert. Exh. J at page 2 (deposition page 7), page 3 (deposition pages 11-12).  Although Vice-President of Web Center Jay Farner averred that up to 20% of Quicken Loans's loan consultants work outside of the Troy or Livonia locations, i.e., around 100 employees out of 500, Mr. Farner could only name three such employees, all of whom were currently working from their homes.

[11]Def's Brief Opp. Pl.'s Motion at page 18.

[12]Pl.'s Mot. Cond'l Class Cert. Exh. K at page 10 (deposition pages 39-40).

that includes a suggested script for loan consultants to use when "originating loans" over the phone.[13]

The Sales Process contains guidelines regarding options that loan consultants are permitted to offer

to customers, as well as provides detailed instructions on how to communicate effectively with

customers, with the goal of "originating" a loan.[14]  All loan consultants start their time at Quicken

Loans at the junior loan consultant level; they cannot be hired as senior loan consultants or executive

loan consultants.[15]  All loan consultants are given the same materials at their training.

     Vice-President Jay Farner, who is responsible for the day-to-day operations of the center in

which the loan consultants work, was asked by Plaintiff's counsel at a deposition whether there was

any difference in the job descriptions of the various levels of loan consultants.[16]  Mr. Farner could

offer only the following vague assertions: a senior or executive loan consultant may have more

flexibility in work location; management may solicit a senior or executive loan consultants' opinion

regarding a new product being offered; and management may mentor some senior or executive loan

consultant.[17] Defendants have repeatedly emphasized that Plaintiffs have not produced any affidavits

stating that Plaintiffs are similarly situated to each other.  This is not to Plaintiff's detriment,

however, because they rely instead on documentary evidence and depositions, sometimes produced

by Defendants themselves.  Plaintiffs have shown that they were subject to a common policy or plan

with evidence far superior to affidavits.  Quicken Loans' web loan consultants (most of whom

---

[13]Pl.'s Mot. Cond'l Class Cert. Exh. J at pages 5-6 (deposition pages 19-21, 23).

[14]Pl.'s Mot. Cond'l Class Cert. Exh. C.

[15]Pl.'s Motion Cond'l Class Cert. Exh. K at page 10 (deposition pages 38-39).

[16]Pl.'s Mot. Cond'l Class Cert. Exh. J at page 4 (deposition page 15).

[17]Pl.'s Mot. Cond'l Class Cert. Exh. J at pages 4-5 (deposition pages 15-17).

worked in Livonia or Troy, all of whom worked to originate loans, all of whom were instructed to use the Sales Process, all of whom were under the direction of VP Jay Farner, and all of whom underwent the same training process) should be conditionally certified as a class.

## III.   JUDICIAL NOTICE

The district court has the discretionary power to authorize judicial notice to potential class members to inform them of the action and give them an opportunity to participate by opting in. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 165-169, 110 S. Ct. 482, 485 (1989).

Using the same standard elucidated in Comer, 454 F.3d at 546-547, the Court should also facilitate judicial notice.  Plaintiffs have shown that they were similarly situated for the purposes of a § 216(b) cause of action and that the Court should grant conditionally class certification.  However, the undersigned agrees with Defendant that corrective notices and notice of withdrawal forms should be sent out to all plaintiffs who have opted in to this piece of litigation.[18]  Plaintiff has sent out numerous consent forms, which erroneously exclude Daniel Gilbert as a Defendant in his individual capacity.[19]  It is foreseeable that a potential plaintiff would be swayed in his or her decision to opt-in to this cause of action by the knowledge that Mr. Gilbert would be sued in his individual capacity.

## IV.   EQUITABLE TOLLING

Plaintiffs have requested that the Court toll the limitations period on potential collective action members' FLSA claims pending judicial notice.[20]  The Sixth Circuit has stated in Andrews

---

[18]Def.'s Brief Opp. Pl.'s Mot. at pages 26-27.

[19]Def.'s Brief Opp. Pl.'s Mot. Exh. I at page 3.

[20]Pl's Mot. Cond'l Class Cert. at 22.

8

v. Orr, 851 F.2d 146, 151 (6th Cir. 1988) (citing Wright v. State of Tennessee, 628 F.2d 949, 953 (6th Cir. 1980)), that there are several factors for the Court to consider when deciding whether to equitably toll a statute of limitations:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

Plaintiffs claim that Defendants brought "frivolous and meritless" ethical allegations against Plaintiffs' counsel, which were first brought before the Office of Lawyers Professional Responsibility (and dismissed), then appealed to the Minnesota Lawyers Professional Responsibility Board (and denied). Plaintiffs also claim that these same allegations were repeated in Defendants' Motion to Strike and that such a motion was a frivolous litigation tactic aimed at delaying judicial notice to potential class members.[21] Plaintiffs ask the Court to toll the running of the statute of limitations for all loan officers in the putative class as of April 7, 2005, the date on which Defendants filed their Objections to Magistrate Capel's Order denying their Motion to Strike & Supervise Communications. However, Plaintiffs offer no evidence to support their contention that Defendants' Motion to Strike and their Objection to Magistrate Judge Capel's Order were designed to delay judicial notice. Furthermore, no judicial order characterizes Defendants' Motion to Strike or the Objection as frivolous.

Furthermore, Plaintiffs delayed their own case by withdrawing their first motion for conditional class certification, and refiling later. To do so was a strategic decision that carried with it certain benefits (i.e., it allowed Plaintiffs to collect more information to support their motion) and

---

[21]Pl.'s Mot. Cond'l Class Cert. at page 24.

9

certain drawbacks (i.e., the running of the statute of limitations against them).  Looking to the guidelines in <u>Andrews</u>, Plaintiffs had actual notice of the facts that created their cause of action at the time that they worked for Defendants.  They also had constructive notice of the cause of action by virtue of FLSA's publication.  Therefore, there are no facts on the record that would justify the exceptional remedy of equitable tolling.

## V.   <u>MOTION TO COMPEL</u>

Plaintiffs have also requested that the Court compel the production of the names and addresses of current and past loan consultants.  Having granted conditional class certification to Plaintiffs, this Court has the discretion to compel the production of the list of loan consultants in order to facilitate notice.  <u>Hoffman-LaRoche</u>, 493 U.S. at 169-170, 174.  With the efficient disposition of this case in mind, the undersigned respectfully recommends that the Court grant Plaintiffs' Motion to Compel, because the names and addresses of the putative class are directly relevant to this litigation and within the scope of discoverable material.

## VI.   <u>CONCLUSION</u>

The undersigned therefore respectfully recommends that the Court **GRANT** in part and in **DENY** in part Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, consistent with this Report and Recommendation.


                                        **s/Wallace Capel, Jr._____**
                                        **WALLACE CAPEL, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**
**Dated:____August 18, 2006_____**

10

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Kathleen L. Bogas, Lawrence G. Campbell, Charlotte Croson, Robert P. Davis, Sheryl Laughren, Paul J. Lukas, Donald H. Nichols, James B. Perry, Kimberly J. Ruppel, and Rachhana T. Srey,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Michele R. Fisher, Nichols Kaster (Minneapolis), 4600 IDS Center, 80 S. 8th St., Minneapolis, MN 55402.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

11