# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RYAN C. HENRY, individually and on behalf
of all other similarly situated employees,

               Plaintiffs,

v.

QUICKEN LOANS INC., a Michigan corporation, and
DANIEL B. GILBERT, personally and individually,

               Defendants.

Civil Action No.: 04-CV-40346

Honorable Paul V. Gadola

Magistrate Judge Steven D. Pepe

---

Kathleen L. Bogas (P25164)
EISENBERG & BOGAS, P.C.
33 Bloomfield Hills Parkway, Ste. 145
Bloomfield Hills, MI 48304-2945
(248) 258-6080

Mayer Morganroth (P17966)
Jeffrey Morganroth (P41670)
Morganroth & Morganroth, P.C.
3000 Town Center, Ste. 1500
Southfield, Michigan 48075
(248) 355-3084

Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Rachhana T. Srey, MN Bar No. 340133
NICHOLS KASTER & ANDERSON, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 256-3200

Robert P. Davis
Robert C. Varnell
MAYER BROWN
1909 K Street, NW
Washington, DC 20006-1101
(202) 263-3000

Attorneys for Plaintiffs

Attorneys for Defendants

---

# PLAINTIFFS' MOTION TO COMPEL

---

## ISSUE PRESENTED

1.     Should the Court order Defendants to produce all documents withheld on the basis of the attorney-client privilege and an additional month of emails, as a result of Defendants' waiver of the privilege?

Plaintiffs' Answer: Yes.

2.     Should the Court order Defendants to pay for the costs of the screening procedure that their waiver rendered unnecessary?

Plaintiffs' Answer: Yes.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... III

INTRODUCTION ..................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................................ 1

    A.    Plaintiffs' First Set of Discovery Requests. ............................................................ 1

    B.    Plaintiffs' Second Set of Discovery Requests and
             Motion to Compel Electronic Discovery. .............................................................. 2

    C.    The Email Retrieval, Filtering and Screening Protocol. ........................................ 4

    D.    Defendants' Motion for Summary Judgment on
             Good Faith and Willfulness. ................................................................................. 5

ARGUMENT............................................................................................................................ 6

I.    DEFENDANTS WAIVED THE ATTORNEY-CLIENT PRIVILEGE
    AS TO COMMUNICATIONS REGARDING THEIR GOOD FAITH
    AND WILLFULNESS DEFENSES. .................................................................................. 6

    A.    Privileged Communications Provide the Factual Basis for
             Defendants' Good Faith and Willfulness Defenses. ............................................... 7

    B.    Defendants' Arguments Denying Waiver Confirm that
             Defendants Either Waived the Privilege Or Improperly Asserted It. .................... 8

II.    DEFENDANTS SHOULD PRODUCE ALL DOCUMENTS WITHHELD
    ON THE BASIS OF THE ATTORNEY-CLIENT PRIVILEGE AND AN
    ADDITIONAL MONTH OF EMAILS. .......................................................................... 11

    A.    The Court Should Order Defendants To Produce the Screened Emails
             Because Their Waiver Eliminated the Reason for Screening. .............................. 11

    B.    Defendants Should Produce All Non-Email Data and Documents
             Related to Defendants' Good Faith and Willfulness Defenses........................... 13

    C.    Defendants Should Produce an Additional Month of Emails as
             Contemplated by the Court's April 18, 2007 Order. ........................................... 14

III.    DEFENDANTS SHOULD BE ORDERED TO PAY FOR THEIR
    UNNECESSARY SCREENING COSTS........................................................................ 15

CONCLUSION...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases:**

Beery v. Thomson Consumer Elecs., Inc.,
    218 F.R.D. 599 (S.D. Ohio 2003) ...................................................................11

In re Lott,
    424 F.3d 446 (6th Cir. 2005) .....................................................................7, 9

Kelsey-Hayes Co. v. Motor Wheel Corp.,
    155 F.R.D. 170 (W.D. Mich. 1991).............................................................7, 8

Ross v. City of Memphis,
    423 F.3d 596 (6th Cir. 2005) ........................................................................7

Lewis v. U.S.,
    No. 02-2958 B/AN, 2004 WL 3203121 (W.D. Tenn. Dec. 7, 2004).......................... 12-13

McLaughlin v. Lunde Truck Sales, Inc.,
    714 F. Supp. 916 (N.D. Ill. 1989) ...............................................................7, 8

Newman v. Countrywide Home Loans, Inc.,
    No. 3-00-CV-2305-R, 2001 WL 1414380 (N.D. Tex. Aug. 30, 2001) .............................7

**Federal Regulations**

69 Fed. Reg. 22122 (Apr. 23, 2004) .....................................................................12

**Federal Rules**

Fed. R. Civ. P. 26....................................................................................11

Fed. R. Civ. P. 37....................................................................................11

**INTRODUCTION**

After years of withholding discovery on the grounds of "attorney-client privilege" and within days of running up a $80,000.00 bill screening out countless "privileged" emails,[1] Defendants waived the privilege in support of their summary judgment motion on their good faith and willfulness defenses.  In this motion, Plaintiffs request an Order compelling Defendants to (1) produce emails screened on the basis of the privilege; (2) produce non-email documents withheld on the basis of the privilege; (3) produce an additional month of emails as previously contemplated; and (4) assume the cost of Defendants' unnecessary screening.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Plaintiffs' First Set of Discovery Requests.**

In their Complaint, Plaintiffs alleged that Defendants willfully violated the FLSA.  (Dkt. #1, ¶8.)  Defendants asserted good faith reliance on the advice of counsel as an affirmative defense in their Answer.  (Dkt. #11 at 4.)  On August 12, 2004, Plaintiffs served Defendants with their first set of discovery requests, which sought information related to Defendants' efforts to determine whether their decision not to pay Plaintiffs overtime compensation complied with the FLSA, and to whether that decision was "willful" or made in good faith.  The relevant requests and Defendants' responses are as follows:[2]

> **Interrogatory 6:** To the extent Defendant is relying on attorney advice for its good faith defense to liquidated damages and willful conduct, identify and describe all conversations and correspondence with counsel that was relied upon.

---

[1] During his deposition, Plaintiffs requested that Mr. Mark Lanterman send a letter to both parties identifying the number of emails that were screened as a result of Defendants' counsels' varying instructions to him.  (Lanterman Dep. at 88.)  Defendants had no objection.  (Id.)  At the time this motion was filed, Plaintiffs had not received the letter.  Plaintiffs have inquired with counsel for Defendants about the letter (Ex. 12), and will provide information about the number of screened emails to the Court as soon as it is provided.

[2] Defendants' responses to Plaintiffs' Interrogatories are attached as exhibit 1.  Defendants' responses to Plaintiffs' document requests are attached as exhibit 2.

**Answer 6:** Defendants object to this interrogatory because it requests information that is subject to the attorney-client privilege. Defendants further object to this interrogatory to the extent that it seeks information regarding a good faith defense to "willful conduct" because under the FLSA, Plaintiff has the burden of demonstrating that Defendants engaged in willful conduct. Notwithstanding these objections, and without waiving it [sic], Defendant Quicken Loans, Inc. sought and received attorney advice on the classification of loan consultants but it is not prepared at this point to waive the attorney-client privilege with respect to these communication inasmuch as the issue is not ripe for determination.

**Request 20:** All documents that identify or describe all efforts taken by Defendant to determine whether or not it was in compliance with the Fair Labor Standards Act and other wage laws by not paying Plaintiffs overtime compensation.

**Answer 20:** Defendant Quicken Loans, Inc. objects to this Request to the extent that it seeks information that is subject to the attorney-client privilege. Defendant is conducting its investigation, and based on its knowledge and review of the records to date, has no documents which are responsive. Notwithstanding this, to the extent that Defendant discovers responsive, non-privileged documents, Defendant will produce them subject to the entry of an appropriate protective order.

**Request 25**: All documents that identify, describe or relate to any claim that Defendant's method of compensating loan consultants was not a willful violation of the FLSA and was performed with a good faith belief that Defendant was complying with the FLSA.

**Answer 25**: Defendant Quicken Loans, Inc. objects to this Request because it requests information that is subject to the attorney-client privilege. Defendant further objects to this interrogatory to the extent that it seeks information regarding a good faith defense to "willful conduct" because under the FLSA Plaintiff has the burden of demonstrating that Defendant engaged in willful conduct. Notwithstanding these objections, and without waiving it, Defendant Quicken Loans, Inc. is not prepared at this point to waive the attorney client privilege with respect to these communications inasmuch as the issue is not yet ripe for determination.

B.    **Plaintiffs' Second Set of Discovery Requests and Motion to Compel Electronic Discovery.**

On February 10, 2005, Plaintiffs served their second set of discovery requests, seeking all

of Plaintiffs' emails and certain emails from Plaintiffs' managers (Requests 40 and 41).[3]

Defendants refused to produce the emails, requiring Plaintiffs to file a motion to compel.  (Dkt.

---

[3] Defendants' responses to Plaintiffs' second set of document requests are attached as Ex. 3.

#310).  Defendants opposed Plaintiffs' motion and responded with a motion for protective order seeking to limit their discovery obligations.  (Dkt. #328.)  Defendants sought a protective order against Plaintiffs' email requests because Plaintiffs' and managers' emails purportedly contained privileged information that would require a costly and burdensome review.  (Id.)

On January 18, 2007, the Court ordered Defendants to produce to Plaintiffs 91,000 emails (for seven Plaintiffs and two managers) that they had retrieved two years earlier on their own accord, and ordered the parties to meet and confer regarding the costs and degree of difficulty of obtaining additional emails.  (Dkt. #378.)  On April 17, 2007, the Court held a hearing to address the latter issue.  (April 17, 2007 hearing transcript, Ex. 4.)  During this hearing, Plaintiffs agreed to pay the computer forensics expert's reasonable costs for retrieving additional emails.  (Id. at 17.)  Plaintiffs' counsel expressed concern about having to pay for unnecessary screening activity:

> I want to do what's necessary, but I don't want to do one dime more than what's necessary . . . .  (Id. at 54:6-9.)
>
> My point is, I do not want to be in a situation where defendant can put in – has carte blanche to put in the screening procedure that costs – on our dime, number one.  And number two, can delay this thing and then come back to you and go, oh, see we told you, Judge, this would take too long."  (Id. at 60:5-10.)

Plaintiffs also requested that the Court have an opportunity to review the procedure if necessary. (Id. at 53:21-54:4.)

The Court issued an Order relating to the April 17, 2007 hearing, which it modified on May 15, 2007 (Dkt. #398).  Under the Court's modified Order, Defendants were to provide Mr. Lanterman with all of their back-up tapes containing e-mails sent or received in April, May and June 2004, who would then retrieve and produce the proper emails.  (Id. at 2.)  To protect Defendants against the waiver of privilege, Mr. Lanterman was ordered to perform the email

retrieval under Defendants' attorneys' direction and control.  (Id.; Ex. 4 at 22:15-25:2)  The reasonable expenses of Mr. Lanterman's services and the electronic copying costs were to be borne by Plaintiffs.  (Dkt. #398 at 2.)  Additionally, the Court stated that "It is anticipated that one additional month of back-up tapes will be made available, again at Plaintiffs' expense, following an assessment of the feasibility of this production and filtering process."  (Id.)

<strong>C.    The Email Retrieval, Filtering and Screening Protocol.</strong>

Defendants produced their backup tapes to Mr. Lanterman, who copied them and extracted the email data for the appropriate months and from the proper individuals.  Of the emails retrieved, only those sent by, addressed to, copying, or referencing Plaintiffs ("Plaintiff emails") or designated Quicken personnel ("manager emails") were to be included in any production to Plaintiffs.  (July 10, 2007 letter from Varnell to Lanterman, Ex. 5.)  Of the managers' emails, only emails containing specific search terms identified by Plaintiffs were to be produced.  (Id.)  Once the Plaintiffs' and responsive managers' emails were isolated, Mr. Lanterman was to screen out all emails sent or received by legal personnel and containing the specific privileged terms identified by Defendants.  (Id.)  Defendants identified fourteen members of its legal department, including David Carroll, as individuals who would be screened from production.  (Id.)  At Defendants' direction, Mr. Lanterman screened the emails a total of five times for privileged terms.

On September 9, 2007, Plaintiffs received an invoice totaling $14,937.50 for copying the backup tapes and restoring the data to a usable format.  (Ex. 6.)  Defendants produced the managers' emails on September 14, 2007 and Plaintiffs' emails on October 3, 2007.  (Defs.' letters accompanying email production, Ex. 7.)  On October 5, 2007 Plaintiffs received Mr. Lanterman's invoice, dated October 3, 2007, for the screening and filtering work he performed,

4

which totaled $91,191.35.   (Ex. 8.)   Mr. Lanterman later submitted a corrected invoice to Plaintiffs that removed a duplicate entry in the screening and filtering invoice, leaving a new total of $79,985.01. (Ex. 9.)  The costs associated with each round of privilege screening were as follows:

|              |             |
|--------------|-------------|
| First Round: | $11,825.00  |
| Second Round:| $11,453.75  |
| Third Round: | $15,537.50  |
| Fourth Round:| $12,237.50  |
| Fifth Round: | $10,862.50  |

(See id.)  The total cost of Defendants' privilege screening was $63,291.25.

### D.    Defendants' Motion for Summary Judgment on Good Faith and Willfulness.

On October 5, 2007, the same day Plaintiffs' received Mr. Lanterman's $91,191.35 invoice, Defendants brought a Motion for Summary Judgment on their good faith and lack of willfulness defenses.  (Dkt. #436.)   In that motion, Defendants identified David Carroll, an officer in the company and an attorney, as the sole individual who advised Defendants regarding their classification of loan consultants.  (Id. at 5.)   Defendants filed a declaration from Mr. Carroll in support of their motion.  (Dkt. #436-7.)  Mr. Carroll stated that he does not regularly act as Quicken Loans' legal representative, but "part of my responsibility as VP of Administration is to analyze and work through issues that have a legal component, including, at times, to evaluate and make determinations related to compensation issues involving the Company's employees."  (Id. ¶2.)  The declaration describes in detail the "good faith" efforts Mr. Carroll purportedly undertook to classify Defendants' loan consultants, stating repeatedly that his decision was based on ongoing conversations with members of Defendants' human resource and legal departments.  (Id. ¶¶12, 16, 20, 24.)

5

Plaintiffs responded to this motion on October 29, 2007, demanding that Defendants be ordered to produce the documents supporting their good faith and lack of willfulness arguments based on a waiver of the attorney-client privilege. (Dkt. #470.) Plaintiffs filed an affidavit under Rule 56(f) explaining why further discovery was necessary into the matters addressed in Mr. Carroll's declaration and detailing the information Plaintiffs seek. (Dkt. #470-6.) Defendants filed their Reply memorandum on November 13, 2007, simultaneously, and inconsistently, arguing (1) that they did not waive the privilege, and 2) that Plaintiffs should have inquired about the privileged advice during David Carroll's deposition on February 8, 2005. (Dkt. #476 at 3, 4.)

## ARGUMENT

I. **DEFENDANTS WAIVED THE ATTORNEY-CLIENT PRIVILEGE AS TO COMMUNICATIONS REGARDING THEIR GOOD FAITH AND WILLFULNESS DEFENSES.**

By submitting the affidavit of attorney David Carroll in support of a motion for summary judgment, Defendants placed the factual material over which they asserted the attorney-client privilege directly at issue, and in doing so, waived the privilege. As a result, Defendants must now produce email data and other documents previously withheld on the basis of the privilege, and the costly screening procedure Defendants imposed on their recent email production was entirely unnecessary.

A party cannot rely upon privileged communications to make their case, and then hide behind the privilege to prevent disclosure of those communications. In re Lott, 424 F.3d 446, 454 (6th Cir. 2005). Accordingly, a party who asserts reliance on advice of counsel as a defense waives the attorney-client privilege as to all communications to and from counsel concerning the issue for which counsel's advice was sought. Kelsey-Hayes Co. v. Motor Wheel Corp., 155 F.R.D. 170, 171-72 (W.D. Mich. 1991). "The contents of a privileged communication may be

injected into litigation either by making the content of communications a factual basis of a claim or defense or by disclosing the communication itself." Ross v. City of Memphis, 423 F.3d 596, 605 n.5 (6th Cir. 2005). Moreover, "[o]ne waiver consequently waives the privilege as to all the lawyers working jointly on the matter." Id. n.5. In an FLSA action, filing the affidavit of an attorney in support of the good faith defense waives the privilege. See, e.g., McLaughlin v. Lunde Truck Sales, Inc., 714 F. Supp. 916, 919-20 (N.D. Ill. 1989); Newman v. Countrywide Home Loans, Inc., No. 3-00-CV-2305-R, 2001 WL 1414380, at *1 (N.D. Tex. Aug. 30, 2001).

> **A.    Privileged Communications Provide the Factual Basis for Defendants' Good Faith and Willfulness Defenses.**

Plaintiffs' Interrogatory 6 and Requests for Production of Documents 20 and 25 sought information relating to Defendants' good-faith and willfulness defenses. (Dkt. #470-4, 470-5.) Defendants objected to these requests on the basis of attorney-client privilege, and stated that the issue of Defendants' good-faith defense was not ripe for determination. (Id.) Plaintiffs respected the assertion of privilege, which Defendants did not stray from until they brought a motion for summary judgment on their alleged good faith and lack of willfulness. In that motion, Defendants identified Mr. Carroll, an officer in the company, a lawyer, and one of Quicken's legal personnel,[4] as the sole individual who advised Defendants regarding their classification of loan consultants. (Dkt. #436 at 5.) Defendants took the additional step of filing a declaration from Mr. Carroll that describes in great detail the efforts he purportedly undertook to classify Defendants' loan consultants, including numerous conversations and interaction with Defendants' legal and human resources department, as factual support for their defenses. (Dkt. #436-7.) Defendants filed Mr. Carroll's declaration after incurring over $60,000.00 screening

---

[4] See Robert Varnell's July 10, 2007 letter to Mark Lanterman, page 2, paragraph 4, and Exhibit 6 to the Letter, identifying Mr. Carroll as a member of Quicken's legal department. (Ex. 5.) See also Mr. Carroll's declaration in which he describes his legal function. (Dkt. #436-7 at 2.)

his emails and those of Defendants' other legal personnel from production on the basis of attorney-client privilege.

This is a classic use of the privilege as both a sword and shield: (1) Defendants offered a lawyer's affidavit in support of their motion for summary judgment; (2) the content of the affidavit can be supported or discredited by the content of communications with that lawyer; and (3) Defendants assert the privilege over all those communications to prevent Plaintiffs from testing the veracity of the affidavit.  See, e.g., Kelsey-Hayes, 155 F.R.D. at 171-72; Lunde, 714 F. Supp. at 918-20.  Defendants have abused the privilege by manipulating it in this way.[5]

Defendants took an affirmative step to put the advice of Mr. Carroll at issue.  As a result, they waived the attorney-client privilege as to all documents relating to his advice.  This includes emails and documents sent to or from Mr. Carroll and other legal personnel—the very information Defendants screened from their email production or otherwise refused to produce. Defendants' arguments to the contrary are without merit.

**B.      Defendants' Arguments Denying Waiver Confirm that Defendants Either Waived the Privilege Or Improperly Asserted It.**

In their Reply to Plaintiffs' waiver and Rule 56(f) arguments, Defendants simultaneously argue (1) that they did not waive the privilege; and (2) that even though they did not waive the privilege, Plaintiffs should have questioned Mr. Carroll about privileged topics two years ago in his deposition.  These arguments are not only inconsistent, they are incorrect.

Defendants first assert that they did not waive the attorney-client privilege in "Mr. Carroll's passing acknowledgment of consultation with the Company's legal and HR

---

[5]  This is not the only instance in which Defendants have strategically used the attorney-client privilege to hide devastating evidence from Plaintiffs.  The most recent example is the "Call Clip Library," which Defendants apparently labeled as "attorney-client privileged."  (Ex. 10.)  A review of this Library reveals the truly ridiculous nature of such a designation.

departments." (Dkt. #476 at 3-4) (internal marks omitted).) Defendants continue that they "have disclosed no content whatsoever from attorney-client conversations," and that they "based their good-faith claims on Mr. Carroll's investigation of the legal standards and mortgage bankers' job duties, not his reliance on the substance of counsel's advice." (Id. at 4.) This argument misses the point for two reasons. First, Mr. Carroll is an attorney, his advice to Quicken Loans regarding the classification of loan consultants is the advice of counsel, and Defendants waived the attorney-client privilege as to his advice and all related communications. Not only do Defendants tout that Mr. Carroll is a lawyer in their brief (id.), they screened his emails from production on the basis of attorney-client privilege (Ex. 5). Second, Defendants' suggestion that communications between Mr. Carroll and their legal department were not also waived is unfounded. (Dkt. #476 at 3-4.) The waiver extends to all communications to or from Mr. Carroll that relate to Defendants good-faith and willfulness defenses, whether with internal departments such as legal and HR or with external individuals. See In re Lott, 424 F.3d at 454 n.5 ("One waiver consequently waives the privilege as to all the lawyers working jointly on the matter.")

After taking the position that they did not waive the privilege, Defendants then inconsistently assert that Plaintiffs "could have questioned Mr. Carroll on the advice received" during his deposition. (Dkt. #476 at 5.) This is incorrect, again because the "advice received" is the advice of counsel. The essence of this argument is that Defendants waived the privilege during Mr. Carroll's deposition.

Prior to Mr. Carroll's deposition, Defendants asserted the privilege in response to Plaintiffs' discovery requests. Plaintiffs then deposed Mr. Carroll in his capacity as Quicken Loans' corporate designee. Defendants did not produce any documents responsive to Plaintiffs'

requests regarding the "advice received" in conjunction with Mr. Carroll's deposition.  Even during the deposition, Defendants asserted the attorney-client privilege on a separate issue and instructed Mr. Carroll to not answer questions that would divulge conversations between he and the head of Defendants' legal department, Richard Chyette.[6]  (Carroll Dep., Ex. 11 at 91:8-13.) Accordingly, Plaintiffs respected the privilege during his deposition.  Defendants also stated in their discovery responses that the issue of their good-faith was not ripe for determination, implicitly reserving the right to waive the privilege later in the litigation.  Defendants took no action to ripen the issue or inject the issue into the litigation until more than two and a half years after Mr. Carroll's deposition.  Plaintiffs missed no opportunity to inquire about Mr. Carroll's advice because Defendants did not waive the privilege over that advice until they filed his affidavit.

No matter how Defendants portray the advice of Mr. Carroll, their arguments fail.  Either (1) Mr. Carroll provided legal advice to Defendants on the classification decision and Defendants waived the attorney-client privilege by submitting his affidavit; or (2) Mr. Carroll did not provide legal advice to Defendants and they had no basis to screen his email and other documents relating to his classification efforts.  The result is the same in either case: Defendants should now be compelled to produce the information they screened and withheld.[7]

---

[6] Mr. Carroll first testified that he and Mr. Chyette were involved in the classification decision. (Carroll Dep. at 60:13-17.)  On redirect, Defendants' counsel prompted Mr. Carroll to clarify that he alone was responsible for the classification decision (id. at 104:7-18), clearly in an effort to isolate Defendants' legal department and protect the attorney-client privilege over their communications.

[7] Defendants' claim that producing documents related to Carroll's affidavit would be unfair to Defendants misapplies the law of waiver.  (Dkt. #476 at 4 n.8.)  The fairness inquiry concerns whether or not it is fair to Plaintiffs for Defendants to make the content of privileged materials the factual basis of a claim or defense without disclosing those materials for Plaintiffs' inspection, when those materials are otherwise unavailable.  See Beery v. Thomson Consumer Elecs., Inc., 218 F.R.D. 599, 604 (S.D. Ohio 2003) ("An attorney-client communication is placed

## II.    DEFENDANTS SHOULD PRODUCE ALL DOCUMENTS WITHHELD ON THE BASIS OF THE ATTORNEY-CLIENT PRIVILEGE AND AN ADDITIONAL MONTH OF EMAILS.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  When a party fails to answer an interrogatory or fails to respond to a request for production, "the discovering party may move for an order compelling an answer."  Fed. R. Civ. P. 37(a)(2)(B).  Plaintiffs requested in discovery all documents relating to Defendants' good-faith and willfulness defenses.  Defendants waited to waive the privilege over this information until seven months after the discovery deadline.  Defendants must now produce all responsive documents withheld or screened on the basis of the privilege.

### A.    The Court Should Order Defendants To Produce the Screened Emails Because Their Waiver Eliminated the Reason for Screening.

The broad email screening procedure agreed upon by the parties and ordered by the Court was intended to protect Defendants from disclosing privileged information.  However, on the same day Plaintiffs received the invoice relating to the extensive screening directed by Defendants,[8] they put the substance of the screened emails directly at issue in the litigation by filing Mr. Carroll's affidavit.

The screened emails contain relevant communications that are no longer privileged.  Mr. Carroll claimed in his affidavit that he consulted with Defendants' legal and HR departments on

---

at issue when the party makes an assertion that in fairness requires examination of protected communications") (internal quotes omitted); <u>Lunde Truck Sales</u>, 714 F. Supp. at 918-19 ("Of primary importance in determining whether waiver has occurred is the concept of fairness . . . . In particular, the attorney/client privilege may not be manipulated to the advantage of the party asserting the privilege").

[8] As explained in Plaintiffs' Motion for Relief from Computer Forensics Expert's Invoice—filed simultaneously with this motion—Defendants did not follow the protocol adopted by the Court, returning to the expert a number of times to request overbroad and unreasonable screening procedures that were not contemplated by the Court or the parties.

an ongoing basis.  (Id. ¶¶12, 24.)  He also stated that he examined the revised 2004 regulations

and their Preamble when they were published in April 2004,[9] in consultation with the company's

legal and HR departments:

> The white-collar regulations issued by the DOL in April 2004 further solidified
> my earlier conclusion that the FLSA administrative exemption was all along the
> correct classification for our mortgage bankers . . . . In examining the new white-
> collar regulations, and in consultation with our Company's legal departments, I
> determined that our mortgage bankers do precisely these types of activities in
> regard to the "financial products" offered by the Company . . . .

(Dkt. 436-7 ¶¶20, 21.)  The screened emails that are the focus of this dispute are from the same

timeframe, April, May and June 2004.

Defendants no longer have any basis for retaining the screened emails because their

waiver has left nothing protected by the attorney-client privilege.  Any business advice provided

by Defendants' counsel to their loan consultants is unprotected by the privilege.  Lewis v. U.S.,

No. 02-2958 B/AN, 2004 WL 3203121, at *2 (W.D. Tenn. Dec. 7, 2004).  Any non-relevant

emails are adequately protected by a protective order.  As further protection for Defendants,

Plaintiffs will continue to agree to a clawback provision.

Defendants enjoyed an overbroad screening procedure, conducted at Plaintiffs'

significant expense, only to waive the privilege after the screening was complete.  The screening

effort obviously excluded relevant emails that were not protected by the privilege—it is well-

established that a communication does not become privileged merely by including an attorney.

Even so, in the interest of expediency and compromise, Plaintiffs agreed to screen all emails sent

to, from or cc'ing Defendants' legal personnel, regardless of the content of the emails.  Because

of their conduct, Defendants should no longer receive the benefit of the doubt with regard to

privilege, and any errors should now be made on the side of disclosure.

---

[9] The regulations went into effect in August 2004.  69 Fed. Reg. 22122 (Apr. 23, 2004).

Mr. Lanterman has already retrieved Plaintiffs' and manager emails (containing Plaintiffs' search terms) from the appropriate timeframe. The managers emails have already been provided to Defendants. (Lanterman Dep. at 13:6-16.) The full set of responsive emails, including the emails that were originally screened, can easily be produced. Defendants should be compelled to do so.

**B.      Defendants Should Produce All Non-Email Data and Documents Related to Defendants' Good Faith and Willfulness Defenses.**

Plaintiffs' discovery requests were not limited to email data. Plaintiffs' requests for production 20 and 25 sought all documents related to Defendants' classification efforts and to their good faith and willfulness defenses. (Ex. 2.) Defendants objected on the basis of privilege and stated further that to the extent any responsive documents existed, Defendants had not identified them. (Id.) Defendants neither supplemented their responses to these requests nor provided a privilege log.

If Mr. Carroll made the extensive inquiry he described in his declaration, surely there is documentary evidence to support his allegations. Mr. Carroll described a wide range of activities he purportedly undertook to justify classifying Defendants' loan officers as exempt and subsequently to maintain that classification. (See Dkt. #436-7.) He claimed he analyzed federal FLSA regulations and their Preamble, DOL opinion letters and federal case law. (Id.) He claimed he periodically reviewed Defendants' compensation policies and practices as well as loan consultant job duties. (Id. ¶¶12-13.) He claimed he consulted with Defendants' legal and HR departments on an ongoing basis. (Id. ¶¶12, 24) Although Defendant refused to allow Mr. Carroll to answer questions regarding the content of other communications between he and Defendants' in-house counsel, Richard Chyette (Carroll Dep. at 91:8-13), Mr. Carroll stated in his deposition that he regularly consulted with Mr. Chyette and that Mr. Chyette was involved in

the initial classification decision.  (Id. at 60, 62-65, 67-69, 104.)  Mr. Carroll claimed he made

inquiries within the mortgage industry about the compensation practices of other mortgage

companies.  (Dkt. #436-7 ¶¶15, 19.)  In his deposition, Carroll testified that on Defendants'

behalf he and Mr. Chyette actively lobbied for changes to the FLSA regulations that would

render loan consultants exempt from the FLSA's overtime requirements.  (Carroll Dep. at 65:14-

67:17.)[10]  Despite this extensive effort, Defendants have identified no documents related to Mr.

Carroll's classification efforts and advice.

It defies credibility that no notes, opinions, memoranda, letters or other evidence

memorializing Defendants' classification decisions exist.  Plaintiffs sought this information in

discovery, Defendants no longer have any basis for withholding it, and Defendants should be

compelled to produce all such documents in their possession.

### C.    Defendants Should Produce an Additional Month of Emails as Contemplated by the Court's April 18, 2007 Order.

The Court anticipated that Defendants would produce one additional month of emails if

the email extraction, screening and filtering procedure proved feasible.  (Dkt. #398 at 2.)  Mr.

Lanterman has demonstrated that his procedure is feasible, and it is even more so because the

most costly and time-consuming part of the production—screening the emails on the basis of

privilege—is no longer necessary or appropriate.  (See supra, Part II.A.)  Plaintiffs should not

have to bear the cost of further screening on the ground that Defendants may inadvertently

disclose other irrelevant and questionably privileged materials.  The parties are already operating

---

[10]  Plaintiffs sought information related to Defendants' lobbying efforts in their Rule 56(f)
Affidavit.  (Dkt. #470-6.)

under a protective order, and after Defendants' excessive screening during the first procedure,[11] the proper method for handling any remaining claims of privilege is through a clawback agreement.

Mr. Lanterman successfully copied Defendants' backup tapes and restored the email data from them. He also successfully ran Plaintiffs' search terms against the manger emails to collect a set of responsive emails. These are the only steps that are necessary for producing an additional month of email data, and as agreed, Plaintiffs will bear the cost. Plaintiffs move the Court for an Order compelling Defendants to produce one additional month of email, from August, 2004.

## III.    DEFENDANTS SHOULD BE ORDERED TO PAY FOR THEIR UNNECESSARY SCREENING COSTS.

Defendants imposed a cumbersome and costly screening procedure on their email production, while knowing all along that they were waiving the waive the privilege relevant to the screened emails. In light of Defendants' resulting waiver, nothing remains in the screened emails that are both privileged and relevant to this lawsuit. Defendants intentionally defeated the purpose of the screening, and they should bear the costs of the procedure.

Plaintiffs remain responsible for the costs of copying Defendants' backup tapes and retrieving the email data, as reflected in Mr. Lanterman's August 9, 2007 invoice. Plaintiffs also must bear the cost of searching the managers emails for Plaintiffs' inclusive terms and identifying Plaintiffs' emails. However, all costs associated with screening should be shifted to Defendants. Accordingly, only the following costs from Mr. Lanterman's corrected October 3, 2007 invoice should be allocated to Plaintiffs:

---

[11] See Plaintiffs Motion for Relief from Computer Forensics Expert' Invoice, filed simultaneously with this motion, which details the excessive screening Defendants surreptitiously instructed Mr. Lanterman to perform.

**Plaintiffs' Costs**

| Description | Price |
|---|---|
| Submittal 1: Data analysis for inclusive (responsive) searched on QL leaders mailboxes | $14,850.00 |
| Submittal 1: Deliverable Preparation | $275.00 |
| Submittal 1: Shipping Charges: Deliverable to Rob Varnell | $22.62 |
| Submittal 6: Submittal preparation of Inclusive (responsive) Plaintiffs mailboxes | $275.00 |
| Submittal 6: Deliverable Preparation | $275.00 |
| Submittal 6: Shipping Charges: Deliverable to Rob Varnell/Mary Street | $24.57 |
| Submittal 6: Shipping Charges: Deliverable to Rob Varnell/Mary Street | $24.57 |
| Dynamex Courier: Production of deliverable to Plaintiffs per instruction of Robert Varnell/Mary Streett | $38.88 |
| **TOTAL** | **$15,785.64** |

(See id.)  The remaining costs, totaling $64,179.37, are all properly attributed to Defendants.

(Id.)  Plaintiffs respectfully request the Court to shift these costs to Defendants.[12]

## CONCLUSION

Defendants have abused the attorney-client privilege in an effort to shield the factual basis of their defenses from scrutiny, and to avoid producing responsive information in discovery.  They have done so literally at the expense of Plaintiffs, by imposing upon Plaintiffs the costs of an ultimately superfluous screening procedure.  Through their Rule 56(f) affidavit and this motion, Plaintiffs seek the Court's assistance to remedy the inequitable position Defendants have created.

---

[12] Should the Court refrain from ordering Defendants to bear the entire cost of the screening procedure, Defendants should bear the costs associated with the excessive and improper screening Defendants' counsel directed Mr. Lanterman to perform.  Plaintiffs address this issue in their Motion for Relief from Computer Forensics Expert' Invoice.

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Prior to filing this motion, Plaintiffs unsuccessfully sought the concurrence of Defendants' counsel in producing emails and other information that had been screened and otherwise withheld.

Respectfully submitted this 17th  day of December, 2007,

NICHOLS KASTER & ANDERSON, PLLP

s/Rachhana T. Srey
Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Rachhana T. Srey, MN Bar No. 340133
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 338-4878
srey@nka.com

Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 17, 2007, I electronically filed the foregoing motion with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: **Kathy L. Bogas**, **Charlotte Croson, Robert P. Davis, Paul J. Lukas, Jeffrey Morganroth, Mayer Morganroth, Donald H. Nichols, and Robert C. Varnell**.

<u>s/Rachhana T. Srey</u>
4600 IDS Center
80 South 8th St.
Minneapolis, MN 55402
Phone: (612) 256-3200
Email: srey@nka.com
[Attorney Bar No. 340133]