EXHIBIT A

```
00001
 1      IN THE DISTRICT COURT OF THE UNITED STATES
 2         FOR THE EASTERN DISTRICT OF MICHIGAN
 3              SOUTHERN DIVISION
 4
 5  RYAN C. HENRY, individually and
 6  on behalf of other similarly
 7  situated employees,
 8         Plaintiffs,
 9    vs.              Case No. 04-71860
10                     Hon. Paul Gadola
11  QUICKEN LOANS INC., a/k/a ROCK
12  FINANCIAL, a Michigan corporation,
13  and DANIEL B. GILBERT, WILLIAM
14  EMERSON, and PAT McINNIS, personally
15  and individually,
16         Defendants.
17  _____
18
19
20    The Deposition of JOHN TODD LUNSFORD,
21    Taken at 33 Bloomfield Hills Parkway, Suite 145,
22    Bloomfield Hills, Michigan,
23    Commencing at 1:02 p.m.,
24    Tuesday, February 8, 2005,
25    Before Judith C. Werner, CSR-2349.
```

00032
1    question, please?

2  BY MR. NICHOLS:

3  Q.  Are you aware of any effort to preserve the E-mails

4     that you had at the beginning of this lawsuit?

5  A.  Yes.

6  Q.  Tell me how that's been done.

7  A.  I mean everything that we have done has been at the

8     request of our attorneys.

9          MR. DAVIS:  You can describe what has been

10    done to --

11         Could I have the reporter rephrase the

12    question?  My intention is to have the witness answer

13    the question.  I just want to make sure that I

14    understand the question that's on the table.

15         (The requested portion of the record was

16         read by the reporter at 1:47 p.m.)

17         MR. DAVIS:  Do you understand the question?

18         THE WITNESS:  I think so, yeah.

19         MR. DAVIS:  Okay.

20         THE WITNESS:  It's an exhaustive effort.

21    I'll tell you that.  We have a retention policy for

22    E-mails in addition to our nightly backups is to take

23    month-end full snapshots of the entire environment.

24    For purposes of restoring dated E-mail boxes, we have

25    to basically restore every single month and extract.

```
00033
 1     Otherwise things may not have -- may not be in the
 2     last -- they may have been deleted or added since
 3     other months, so you have to restore every single
 4     month, and you don't have -- at least within our
 5     Exchange environment we cannot restore individual
 6     E-mail boxes. We have to restore the entire
 7     environment which then just adds to the level of
 8     complexity as far as acquiring the machinery and the
 9     disk space and everything to restore to.
10  BY MR. NICHOLS:
11  Q.  You archive to tape?
12  A.  Yes.
13  Q.  And you archive once a month to tape.
14  A.  We archive nightly to tape, but those tapes are in a
15      rotation where they're overwritten basically every 30
16      days. The monthly ones are preserved.
17  Q.  How long are they preserved?
18  A.  Pretty sure our current policy is infinite, but I'm
19      not exactly -- I'm 90 percent sure that's what it is,
20      that we don't have an expiration date on those.
21  Q.  Okay. And if I'm understanding you correctly, you
22      don't have individual files for each user.
23  A.  No. As far as within Exchange and our ability to back
24      up or restore, we have to restore the entire
25      environment. Those mailboxes may be part of that
```

00034
1     environment based on the time frame that we're
2     restoring from.
3  Q. Do you know if an effort has been made to restore the
4     E-mails of some or all of the persons that have joined
5     this lawsuit?
6           MR. DAVIS: Objection, attorney-client
7     privilege, attorney work product. To the extent that
8     you can answer the question without disclosing matters
9     that you've been asked to do by the counsel of the
10    company, go ahead and answer the question. If you
11    can't answer it -- if what counsel asked you to do
12    covers everything that you did, then don't answer it.
13          Do you want to hear the question again?
14          THE WITNESS: Yes, please.
15          (The requested portion of the record was
16          read by the reporter at 1:50 p.m.)
17          THE WITNESS: Yes.
18 BY MR. NICHOLS:
19 Q. Okay. How long does it take to restore the E-mail of
20    like one person? I suppose it depends how old it is?
21 A. It definitely does. There are a few disclaimers, by
22    the way, and that is that software is upgraded. We
23    upgrade from different versions of Exchange as
24    Microsoft comes out with new releases, and we are
25    currently running off of Exchange 2003. We upgraded

```
00035
 1    from Exchange 2000. We upgraded that from Exchange or
 2    Windows -- gosh, I think it was version 5.5.
 3         In any case, to restore the environment,
 4    you not only need the tape of the data, but you need
 5    to be able to build that environment out as well, and
 6    I don't have -- I don't know that we have the ability
 7    to restore every E-mail, for example.
 8 Q. But you described an exhaustive effort earlier. What
 9    was the exhaustive effort?
10 A. Well, we went back to --
11         THE WITNESS: Is it okay?
12         MR. DAVIS: Go ahead.
13         THE WITNESS: We went to --
14         MR. DAVIS: Again, I'm going to pause for a
15    moment. I've instructed the witness before, you can
16    testify about matters that counsel did not ask -- you
17    cannot testify about matters that counsel asked you to
18    do. If counsel asked you -- did not ask you to do
19    something, then you can testify. Do you understand?
20         MR. NICHOLS: Well, I disagree. He can
21    testify as to what he did. He certainly can't testify
22    as to his legal advice, and so I think that's where
23    the line should be drawn but --
24         MR. DAVIS: I disagree with you, Mr.
25    Nichols. We're taking the position that if people in
```