UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, individually and on behalf
of all other similarly situated employees,

      Plaintiffs,

vs.

QUICKEN LOANS INC., a Michigan corporation,
and DANIEL B. GILBERT, personally and individually,

      Defendants.

_____/

CASE NO. 04-CV-40346

DISTRICT JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE STEVEN D. PEPE

**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: STATUTE OF
LIMITATIONS AND HIGHLY COMPENSATED INDIVIDUALS (DKT. #437)**

This is a Fair Labor Standards Act ("FLSA") overtime collective action brought under 29

U.S.C. § 201 *et seq.* The approximately 446 Plaintiffs worked as "loan consultants" (Quicken

Loans' former job title for mortgage bankers) for Defendants Quicken Loans and Daniel B.

Gilbert in their "call center" (also known as the "sales center" or "web center") (Dkt. #469, Ex.

92, ¶ 3; Dkt #432, Ex. 5, Gilbert Dep., pp. 42-43; Dkt. #432. Exs. 7, 8, & 10). Plaintiffs allege

that during their employment as loan consultants (hereinafter "mortgage bankers") Defendants

unlawfully withheld from Plaintiffs overtime pay for hours worked in excess of 40 hours per

week in violation of §207(a)(1) of the FLSA. As a result, Plaintiffs seek damages in an amount

equal to their alleged unpaid overtime wages plus an equal amount as liquidated damages, a

three year limitation period, and costs and attorney fees alleging that Defendants' violation of the

FLSA was willful (Dkt. #1, ¶8).

1

Defendants filed a motion for summary judgment on the statute of limitations and on an exemption for highly compensated individuals (Dkt. #437).  Defendants argue there is no genuine dispute of  material facts regarding FLSA's statute of limitations, 29 U.S.C. § 255, that bars claims of 53 Plaintiffs who failed to file timely consents to participate in this case.  Defendants also contend there is no genuine dispute that no Plaintiff is entitled to overtime compensation for any period during which that Plaintiff was (a) not employed by Quicken Loans, (b) employed by Quicken Loans in a position other than as a web mortgage banker, or (c) employed by Quicken Loans as a web mortgage banker during only part of the applicable statutory period.  Defendants also contend that there is no genuine dispute of material fact regarding those Plaintiffs who, by making over $100,000 a year in salary and incentive-based pay, are exempt from FLSA's overtime rules as highly compensated employees.  Finally, Defendants argue that there can be no dispute that claims brought by Plaintiffs who did not work more than 40 total hours for Quicken Loans are clearly defective.  Accordingly, Defendants contend they are entitled to summary judgment on all these issues.

Defendants' motion was referred for Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) (Dkt. #449).  For the reasons stated below, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff Ryan C. Henry filed this collective action on May 17, 2004.  Before this motion, over 134 mortgage bankers filed written consent forms to join the case as opt-in party plaintiffs (*id.*).  While the majority of these mortgage bankers sold loans while working in Quicken Loans' call center, some worked in Quicken Loans' branch offices.

Defendants opposed Plaintiffs' motion for conditional class certification, arguing in part, that if the Court conditionally certified the case, notice of the collective action should not be distributed to "branch" mortgage bankers (Dkt. #240, pp. 4-9).[1]  In their reply memorandum, Plaintiffs agreed to limit notice of this collective action to just "web loan consultants" or other similar job titles such as "loan consultants" and "web mortgage bankers" (Dkt. #245, pp. 9-10). The Court conditionally certified this case on September 28, 2006, and as a result Plaintiffs sent notice of the case to approximately 3,000 current and former "loan consultants," "web loan consultants," and "web mortgage bankers" (Dkt. #315).  Of the 446 mortgage bankers who have consented to join this case, some worked in Defendants' branch offices (Dkt. #469, Ex. 92, ¶ 3).

On January 11, 2007, Plaintiff Denisa Chasteen filed her consent to join this action (Dkt. #369).  On February 6, 2007, Chasteen initiated a new and separate overtime collective action on behalf of herself and other similarly situated branch mortgage bankers.  *See Chasteen, et al. v. Rock Financial, a Quicken Loans Inc. Company, et al.*, No. 07-10558 (E.D. Mich. Feb. 6, 2007). On April 16, 2007, Defendants moved to reassign *Chasteen* to Judge Gadola as a "companion case" to this case pursuant to Local Rule 83.11(b)(7)(A)(i)-(ii), arguing that *Chasteen* "involves "substantially similar evidence" and the "same or related parties" and "the same occurrence" (*See Chasteen*, Dkt. #22).  On April 17, 2007, *Chasteen* was reassigned to District Judge Gadola

---

[1] Quicken Loans maintains two separate business models: (l) an Internet-based business that originates mortgage loans nationwide from a sophisticated Web Center operation, known as Quicken Loans; and (2) a more traditional branch mortgage banking operation that operates only in the southeast Michigan metropolitan area, known as Rock Financial.  Quicken Loans eventually began to use the position title of "web mortgage banker" to refer to loan consultants in the Web Center and "branch mortgage banker" to refer to mortgage bankers working in the Rock Financial branches.

and Magistrate Judge Pepe (*See Chasteen*, Dkt. #26).[2]

Following an April 17, 2007, hearing regarding email production, Plaintiffs received a letter from Defendants regarding several employees who did not work as "web mortgage bankers" (Dkt. #469, Ex. 93). After verifying Defendants' data, Plaintiffs' counsel responded to Defendants' request to dismiss these individuals with a drafted Stipulation, seeking concurrence from Defendants to transfer many of the branch mortgage bankers to the *Chasteen* lawsuit and to toll their statute of limitations to preserve their claims (Dkt. #469, Ex. 94). Defendants would not agree to this (Dkt. #469, Ex. 95).

Defendants' present motion seeks summary judgment, broadly speaking, on four categories: (1) claims that arise outside the limitations period, 29 U.S.C. § 255; (2) claims by Plaintiffs who either were (a) not employed by Quicken Loans, (b) employed by Quicken Loans in a position other than web mortgage banker, or (c) employed by Quicken Loans as a web mortgage banker during only part of the applicable statutory period; (3) claims brought by Plaintiffs who were so highly compensated that they fall under the FLSA's "highly compensated employees" exemption, 29 C.F.R. § 541.601; and (4) claims brought by Plaintiffs who did not work more than 40 total hours for Quicken Loans.

## II.   ANALYSIS

### A.   THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a

___

[2] On August 27, 2008, this case was reassigned to District Judge Stephen J. Murphy, III.

reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B.    FACTUAL ANALYSIS**

*1.    53 Third-Year Plaintiffs*

Defendants argue that fifty-three (53) Plaintiffs' claims should be dismissed on statute of limitation grounds because Plaintiffs cannot prove that Defendants willfully violated the law.

The relevant time period in this case is controlled by the statute of limitations for FLSA claims which is two years unless the violations are found to be willful in which case it is extended to three years. 29 U.S.C. § 255. It is Plaintiffs' burden to demonstrate that Defendants willfully violated the FLSA, and to do so Plaintiffs must demonstrate that Defendants either knew or recklessly disregarded whether its conduct violated the FLSA. *McLaughlin v. Richland Shoe*, Co., 486 U.S. 128, 133 (1988).

If Plaintiffs fail to prove willful violations of the FLSA, liability must be limited to two years "after the cause of action accrued." 29 U.S.C. § 255(a). The accrual date is the regular pay day on which the employer fails to pay the required overtime due. 29 C.F.R. § 790.21(b). *See, e.g.*, *Kowalski v. Kowalski Heat Treating Co.*, 920 F. Supp. 799, 806 (N.D. Ohio 1996) ("the statute of limitations did not toll for Kowalski's claims until at least two years after his last paycheck") (citing *Gandy v. Sullivan Co.*, 24 F.3d 861, 864 (6th Cir. 1994)). Therefore, the FLSA's statute of limitations clock for overtime claims starts on the regular pay day for any violation that occurred during that pay period. 29 U.S.C. § 255(a).

> The statute of limitations clock stops when an action is commenced and an action . . . shall be considered commenced on the date when the case is filed; except that in the case of a collective . . . action . . . it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which **such written consent is filed in the court in which the action was commenced.**

29 U.S.C. § 256 (emphasis added); *see also* 29 U.S.C. § 216(b) (requiring written consent to become a party plaintiff in an FLSA collective action). Claims of individuals named in the complaint do not relate back to the date that the complaint was filed unless those claimants also

submitted written consents to become party plaintiffs on that date. *See, e.g., Kuhn v. Philadelphia Elec. Co.*, 487 F. Supp. 974, 975 (E.D. Pa. 1980). Therefore in an FLSA collective action, each individual claimant's action is not commenced until the date his or her consent is filed in court. 29 C.F.R. § 790.21(b).

Thus, Plaintiffs have two years from the regular pay day for the pay period in which the FLSA violation allegedly occurred to file a claim in court. And for each subsequent pay day in which an FLSA violation has occurred during the pay period, a new cause of action accrues. 29 C.F.R. § 790.21(b). *See, e.g., Knight v. City of Columbus*, 19 F.3d 579, 582 (11th Cir. 1994) ("Because each violation gives rise to a new cause of action, each failure to pay overtime begins a new statue of limitations period as to that particular event."). For example, Plaintiff Henry's action was commenced on May 17, 2004, the date on which this action was filed and his consent form was filed. Liability to Plaintiff Henry for overtime can extend back only to the pay period including May 17, 2002 (two years before Henry's action commenced for a non-willful FLSA violation).

Defendants contend that fifty-three Plaintiffs in this case filed their consents after the two year statute of limitations passed. They have attached a declaration to their motion from Todd Zarotney, Director of Compensation & Benefits at Quicken Loans, providing a summary of the statute of limitations calculations showing the relevant dates for each of the Plaintiffs whose claims are time-barred under the applicable statute of limitations provided there is a non-willful FLSA violation (Dkt. #437, Ex. A, ¶ 5).[3] Accordingly, Defendants seek that summary judgment

---

[3] Defendants contend that even assuming *arguendo* that the Court were to find a willful violation, the claims of two Plaintiffs—Rochen and Scheib—would still have to be dismissed because they filed their consents after the three-year statute of limitations had passed.

should be granted against all these Plaintiffs.

This portion of Defendants' motion rests on a finding by this Court that there was either no FLSA violation, or that there was a non-willful FLSA violation, which has a two year statute of limitations. Defendants arguments against a finding of willfulness are more fully developed in Defendants' Motion for Summary Judgment on Good Faith Defenses and Willfulness, filed contemporaneously with the present motion (Dkt. #436). If that motion is granted, any Plaintiff who filed his or her claim after the applicable two year statute of limitations should be dismissed from this case. If that motion is denied, however, and the Court ultimately finds a willful FLSA violation, all Plaintiffs that properly filed within the applicable three year statute of limitations may remain a party to this case, unless excluded for other reasons noted below. Accordingly, at this time, it is premature to make a ruling on the fifty-three Plaintiffs identified in Defendants motion, as the Court has not had the opportunity to rule on Defendants' Motion for Summary

---

Defendants state that Plaintiff Rochen filed his consent to participate on November 21, 2005. Yet, they contend he left his position as a mortgage banker on November 7, 2002, more than 3 years before he filed his consent (Dkt. #437, Ex. A, ¶ 6). Similarly, Plaintiff Scheib left his position as a mortgage banker on September 12, 2003, but he did not file his consent to participate in this action until October 30, 2006, more than three years after he received his last paycheck from Quicken Loans (*id.*).

Plaintiffs, however, dispute some of the dates of employment listed in Mr. Zarotney's declaration. For example, Defendants have Steven Rochen's date of hire as January 3, 2005, and his date of termination as November 7, 2002. This is obviously an error because his employment end date is before his start date. According to dates Defendants previously produced to Plaintiffs in discovery, Steven Rochen's actual dates of employment are January 3, 2005, to November 11, 2005, which would make his November 21, 2005, consent filing timely (Dkt. #469, Ex. 92, ¶ 4). Therefore, Mr. Rochen should not be dismissed at this time as a Plaintiff from this case. Mr. Schieb is dismissed from this case for other reasons stated below.

Judgment on Good Faith Defenses and Willfulness.[4]

## 2. 27 Non-Web Mortgage Bankers

Defendants claim that the Court should grant Defendants summary judgment for three Plaintiffs – Elizabeth A. Clark, Angel Rodriguez, Tenesha Smith,  – who were never employed by Quicken Loans as listed in Mr. Zarotney's Declaration (Dkt. #437, Ex. A, ¶ 7), and twenty-two others that they believe are not eligible class members.  As noted below, the flaws in these individuals being involved in this case are correctly noted, but dismissing them without prejudice is the more appropriate remedy than entering summary judgment against them.  The Defendants also note that Jeff LeBlanc and Jonathan Auer, who were Quicken Loans web mortgage bankers, signed declarations noting they did not sign and file consents to participate in this case.  Plaintiffs do not contest the dismissal of the three Plaintiffs who never worked for Quicken Loans nor the dismissal of Jeff LeBlanc and Jonathan Auer.  Accordingly, **IT IS RECOMMENDED THAT** Plaintiffs Elizabeth A. Clark, Angel Rodriguez, Tenesha Smith, Jeffrey LeBlanc and Jonathan Auer should **BE DISMISSED WITHOUT PREJUDICE** from this case.  Except as otherwise indicated below, Plaintiffs contest Defendants' motion with respect to the other twenty-two Plaintiffs.

As noted above, *Henry* is an FLSA collective action on behalf of *web mortgage bankers.* The August 18, 2006, Report and Recommendation (Dkt # 278), accepted by this Court on September 28, 2006 (Dkt. #289) conditionally certified as a class "Quicken Loans' web loan

---

[4] A ruling on Defendants' Motion for Summary Judgment on Good Faith Defenses and Willfulness has been delayed due to the filing of a Rule 56(f) affidavit in which counsel for Plaintiffs requests the Court delay adjudication of the issues until additional discovery is conducted (Dkt. #470, Ex. 88).

consultants." The parties agreed in October 2006, that the notice to opt into the class was for "web mortgage bankers" and not "branch mortgage bankers" (Dkt #477, Ex. C). Here, it appears that twenty-two Plaintiffs did not work for Quicken Loans as web mortgage bankers or "loan consultants" (Dkt. #437, Ex. A,. at ¶ 8, Dkt # 477, Ex. E). Plaintiffs have claimed overtime only for their employment as "loan consultants"— Quicken Loans' former job title for mortgage bankers — and they have not alleged that they are due overtime for their time employed as managers at Quicken Loans, or for their time employed as "branch mortgage bankers" or "client advocates" in a separate unit. As Plaintiffs themselves have already conceded in this case, they sought to certify a class that would "provide judicial notice only to current and former employees of Defendant who worked in the **loan consultant** [(i.e., mortgage banker)] position" (Dkt. #245, pp. 9-10) (emphasis in original).[5] This language is drawn from Plaintiff's *Reply Memorandum in Support of Motion for Conditional Class Certification and Judicial Notice And Motion to Compel* under a section that begins:

### III. PLAINTIFF SEEKS CONDITIONAL CLASS CERTIFICATION OF WEB LOAN CONSULTANTS ONLY.

Plaintiff does not seek to send notice to "branch mortgage bankers."

*Id.* at p. 9

---

[5] As noted above, Quicken Loans maintains two separate business models: (1) an Internet based business that originates mortgage loans nationwide from a sophisticated Web Center operation, known as Quicken Loans; and (2) a more traditional branch mortgage banking operation that operates only in the southeast Michigan metropolitan area, known as Rock Financial. Quicken Loans maintains two separate and distinct positions with respect to employees originating loans under these separate business models: employees hired to originate loans for Quicken Loans were "loan consultants" (now called "mortgage bankers") while employees hired to originate loans with Rock Financial were "branch mortgage bankers."

Plaintiffs counsel make three unavailing arguments why these twenty-two Plaintiffs who never worked as web mortgage bankers should nevertheless be parties to this action. First, it is argued that "sales" is the primary duty of branch mortgage bankers, which should qualify them to remain in *Henry* (Dkt. #469, p. 6). As discussed in greater detail below, this assumes what must be decided in a separate motion for summary judgment regarding the primary job duty of these web mortgage bankers, and in any event, the class definition, not primary duty, determines class eligibility. Second, counsel contends that Defendants should have moved for decertification rather than summary judgment (Dkt. #469, pp. 6-7). The class, however, is clearly defined (Dkt. #278; Dkt. #289; Dkt. #315), and as this Court previously recognized, dismissal of ineligible individuals and their claims is the appropriate remedy (Dkt. #396, p. 3, ¶ 3). Third, they assert that Defendants have no legal authority to dismiss these improper parties (Dkt. #469, p. 6). Yet, the Court's previous orders provide the legal authority supporting Defendants' request (Dkt. #278; Dkt. #289; Dkt. #315). In short, there appears to be no compelling justification for allowing any individuals other than web mortgage bankers to remain in *Henry*.

Here, Plaintiffs' class certification motion in *Henry* was clear as noted above and specifically covered "Web Loan Consultants Only" and not sending notice to " 'branch mortgage bankers.' " (Dkt. #245, pp. 9-10). This Court certified a class specifically limited to web mortgage bankers (Dkt. #278, p. 7-8; Dkt. #289; Dkt. #315, p. 2 (ordering that notice must make clear that "branch mortgage bankers are not eligible to participate in this lawsuit.")). Therefore, to participate in this case, Plaintiffs must have been employed as web mortgage bankers during the applicable period of time.

Alternatively, Plaintiffs suggest that this Court transfer the claims of these individuals to *Chasteen et al. v. Rock Financial, a Quicken Loans Inc. Company, et al.*, No. 07-10558 (E.D. Mich. Feb. 6, 2007), a separate action filed by Plaintiffs' counsel on behalf of branch mortgage bankers, and toll the statute of limitations to the date of these individuals original consent. Plaintiffs cite no authority supporting their request that this Court transfer these individuals to *Chasteen*. Plaintiffs do cite 28 U.S.C. § 1404(a), which provides that a district court may transfer "any civil action to any other district or division." Yet, Plaintiffs want this Court to transfer individuals (improper parties) to this action to another action currently pending before this Court. By its express terms, this is not a situation to which § 1404(a) applies.

After Defendants on June 5, 2007, (Dkt. #477, Ex. G) refused Plaintiffs' counsel's May 24, 2007, proposed stipulation to transfer these non-web mortgage bankers in *Henry* to the *Chasteen* case and toll the statute of limitations for these branch mortgage bankers to the date they opted into the *Henry* case (Dkt. # 477, Ex. F), counsel for Plaintiffs did not file a motion in *Chasteen* to add these non-web mortgage bankers as named Plaintiffs in addition to Denisa Chasteen (who opted into *Henry* on January 11, 2007, Dkt. #477, Ex. E attachment, and filed her own FLSA class action as a branch mortgage banker on February 6, 2007). Nor has Plaintiffs' counsel filed a motion seeking appropriate modifications of the *Chasteen* opt in period in paragraph 8 of the January 29, 2008, *Stipulation and Order on Plaintiffs' Motion for Conditional Class Certification and Court-authorized Notice* (Dkt. #113, in Case No. 07-10558) to accommodate these *Henry* non-web mortgage bankers. Plaintiffs' counsel in their Response is seeking a type of relief that they have not formally sought.

For many of these *Henry* non-web mortgage bankers the efforts to formally modify the

*Chasteen* complaint and orders, if properly sought, might be futile.  Clearly, a motion to amend a complaint to add named plaintiffs is not an appropriate tool to avoid an order setting an opt-in deadline.  For several of these *Henry* non-web mortgage bankers, efforts to join the *Chasteen* case would run afoul of the FLSA limitations period unless this Court did some judicial gymnastics under the doctrine of equitable tolling.

In an equitable tolling case, the Supreme Court noted that a review of the cases demonstrates that  "federal courts have typically extended equitable relief only sparingly."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (quoted in *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005)).  When deciding whether to apply equitable tolling, the Sixth Circuit considers: (1) the Plaintiffs' lack of notice of filing requirements; (2) the Plaintiffs' lack of constructive knowledge of such requirements; (3) the Plaintiffs' diligence in pursuing their claims; (4) absence of prejudice to the Defendants; and (5) the Plaintiffs' reasonableness in remaining ignorant of the legal requirements of filing.  *Griffin*, 399 F.3d at 635; *see also Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) (citing *Wright v. State of Tennessee*, 628 F.2d 949, 953 (6th Cir. 1980)).  Here, it is by no means clear that the facts would warrant the exceptional remedy of equitable tolling if a formal motion to add them were brought in the *Chasteen* case by these non-web mortgage bankers..

Defendants, as early as March 30, 2006, alerted Plaintiffs' counsel that certain ineligible branch mortgage bankers were attempting to participate in *Henry* (Dkt. #477, Ex. A, p. 2 ("Two individuals on your list . . . are branch mortgage bankers, and therefore, by your own recent representations to the Court, are not properly included in this litigation."); Dkt. #477, Ex. B, pp. 13-14 (March 13, 2006, hearing discussion about seven branch mortgage bankers and others

improperly in case); Dkt. #477, Ex. C, p. 1 (Plaintiffs agreeing on October 12, 2006, to change terms of notice to clarify that branch mortgage bankers are not eligible to participate in *Henry*); Dkt. #477, Ex. D (Plaintiffs state that they withdraw individuals upon learning of their ineligibility). Plaintiffs eventually initiated *Chasteen* on behalf of branch mortgage bankers, but took no affirmative steps at that time to address the ineligibility issues in *Henry* other than for Denisa Chasteen. At the hearing on April 17, 2007, Defendants again raised these class eligibility issues, and this Court directed the parties to sort them out (Dkt. #396, p. 3, ¶ 3 (ordering Defendants' counsel to "identify individual Plaintiffs [who] were not Web Center mortgage bankers in an effort to reach agreement . . . on which Plaintiffs **should be dismissed** . . . as **not properly being members of the class** . . . .")) (emphasis added). On April 19, 2007, Defendants sent Plaintiffs a letter identifying such improper parties for dismissal (Dkt. #477, Ex. E). Over a month later, Plaintiffs demanded that, as a condition to dismissal, Defendants agree to transfer these claims to *Chasteen* and toll the statute of limitations (Dkt. #477, Ex. F). Defendants responded that *Henry* and *Chasteen* were "two separate collective actions involving two distinct groups of putative class members" and that there is "absolutely no basis for tolling in *Chasteen* based on the attempts of ineligible individuals to participate improperly in Henry" (Dkt. #477, Ex. G). In response, Plaintiffs' counsel ultimately did nothing to formally seek addition of these non-web mortgage bankers in *Henry* to the *Chasteen* case.

Plaintiffs counsel could have added many of these non-web mortgage bankers as named Plaintiffs along with Denisa Chasteen when the *Chasteen* case was filed. Plaintiffs counsel could have withdrawn these ineligible individuals from *Henry* and filed consents on their behalf in *Chasteen* during the opt-in period allowed. Plaintiffs' counsel chose not to do either of these.

Nor have they filed any motion in *Chasteen* to add them. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

These non-web mortgage bankers in *Henry* do have some similarities to plaintiffs who filed in the wrong court who have been allowed equitable tolling. *See*, *e.g. Burnett v. New York Central R. Co.,* 380 U.S. 424,(1965) (plaintiff timely filed complaint in wrong court); *Herb v. Pitcairn,* 325 U.S. 77 (1945) (same); *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members). Yet, until the *Chasteen* case was filed in February 2007, there was no suit or court in which for them to have filed. These Plaintiffs might argue that they relied on their attorneys to have correctly filed or accepted their opt-in forms in *Henry.* Yet, in *Irwin*, the Supreme Court rejected equitable tolling where the Plaintiff did not file suit in the 30 days limitation period from receipt of the EEOC notification letter upholding her firing, where the copy sent to her attorney arrived while he was out of the country and during most of the 30 day limitations period. The Supreme Court noted:

> Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

*Irwin*, 498 U.S. at 96.

Any failure of these non-web mortgage bankers in *Henry* not to have had their attorney file separate FLSA actions on their behalf as was done for Denisa Chasteen likely would be considered no more exceptional than the garden variety excusable neglect in *Irwin.* Yet, the only

matter before the Court is Defendants' motion to remove these Plaintiff from this action and **IT IS RECOMMENDED** that all individuals that were not web mortgage bankers during the applicable period **BE DISMISSED FROM THIS ACTION WITHOUT PREJUDICE**.[6]

### 3. 22 Individuals Who May Have Worked In Another Position During Some Period Within The Applicable Statute of Limitations

Defendants move to limit possible recovery for an additional twenty two Plaintiffs who worked for part of the applicable statutory period as mortgage bankers, but who were employed with the company in a different capacity for other parts of the statutory period. For the reasons noted above, summary judgment should be granted (a) against Plaintiffs who were never employed by Quicken Loans and (b) as to all time periods during which Plaintiffs were not employed as mortgage bankers. Accordingly, **IT IS RECOMMENDED** that possible recovery be limited for the following twenty-two Plaintiffs to the period they worked as web mortgage bankers, and that summary judgment be granted for the time periods they did not work as web mortgage bankers, listed in parenthesis following their names: (1) Jeffrey Downey (03/11/02-11/05/03), (2) Brian Bekish (02/14/05-02/28/05), (3) Terese Chmielewski (06/03/03-05/24/04), (4) Bryan Howes (04/20/04-08/31/05), (5) Cheryl Rash (10/22/01-06/02/02), (6) Steven Rochen (11/08/02-11/11/05), (7) Joseph Snover (07/02/03-11/13/03), (8) Alberto Todaro (10/15/04-01/18/05), (9) Jason Weldon (10/07/02-09/01/03), (10) Neil Childs (03/05/05-05/04/05), (11)

---

[6] According to Mr. Zarotney's Declaration, the twenty two Plaintiffs that did work as web mortgage bankers and should therefore be dismissed from this case are: (1) Michael Jankowski, (2) Aimee Welicki, (3) Deborah Newman (Webb), (4) Delores Wilson, (5) John LeClair, (6) Eric Bordeaux, (7) Sean Dillon, (8) Daniel Kostka, (9) Michael Mead, (10) Scott Akey, (11) Gerald Richardson, (12) Chowdhurry Taher, (13) Kelly Morrone (Abdilla), (14) John Liston, (15) Denisa Chasteen, (16) Robert Baldwin, (17) Candace Nicholas, (18) Shana Stewart, (19) Christopher Schaecher, (20) Jeffrey Ford, (21) Martin Airgood and (22) Richard Bacholzky (Dkt. #437, Ex. A).

Shawn Wilson (09/20/05-09/08/05), (12) Nicole Abate (02/01/05-03/21/05), (13) Audrey Brooks (04/30/05-05/15/05), (14) Chaz Cunningham (02-22/05-03/02/05), (15) Gregory Festian (10/05/04-10/09/06), (16) Gyhandi Hill (01/24/06-02/01/06), (17) Johann Johnson (03/02/05-04/17/05), (18) Keith Kay (03/02/05-07/28/06), (19) Jeffrey Marshall (08/17/05-04/04/06), (20) Jeff Silverman (03/02/05-09/23/05), (21) James Ussery (01/29/05-11/09/05) and (22) Jessica Williams (01/20/05-01/26/05) (Dkt. #437, Ex. A).

### 4. 2 Plaintiffs Under The Highly Compensated Exemption

Under the FLSA, an employee with total annual compensation of at least $100,000 per year is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in sub-parts B, C or D of this part. 29 C.F.R. § 541.601(a). Accordingly, this exemption requires the employee to meet one of the administrative exemption's traditional job duties requirement that the primary duty: 1) is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and 2) that the primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

Defendants bear the burden of establishing the applicability of the highly compensated employee exemption because exemptions are to be narrowly construed and limited to those establishments plainly and unmistakably within the terms and spirit of the FLSA. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *Mohorn v. Tenn. Valley Authority*, 2007 WL 2077549, at *7 (E.D. Tenn. July

17, 2007) (denying summary judgment on highly compensated employee exemption where employer had not presented sufficient evidence to show that plaintiffs customarily and regularly perform duties of an administrative employee).

All mortgage bankers receive a minimum base salary and can earn additional incentive-based compensation (Dkt. #437, Ex. A, ¶¶ 3-4). Under the regulations, the difference between $100,000 and the minimum salary can be made on a salary basis, or may include commissions, non-discretionary bonuses, and other non-discretionary compensation. 29 C.F.R. § 541.601(b)(1). Defendants argue that Plaintiffs Josh Tait and Kris Hamilton earned more than $100,000 in certain years within the applicable statutory period (Dkt. #437, Ex. A, ¶ 10 (Tait $132,984.15 during 2004, Hamilton $105,032.06 in 2005)). Accordingly, Defendants contend this Court should grant summary judgment against Plaintiffs Tait and Hamilton for those time periods.

On October 5, 2007, Plaintiffs filed a motion for summary judgement on liability with respect to the FLSA's administrative exemption, 29 U.S.C. § 213(a)(1) (Dkt. #432). Under this exemption, "an employee whose primary duty is selling financial products does not qualify for the administrative exemption." 29 C.F.R. § 541.203(b) (2004). Plaintiffs argue that a mortgage banker's primary job duty at Quicken Loans is sales and that summary judgment in Plaintiff's favor on liability is therefore appropriate. Defendants also filed for summary judgement arguing that the primary duty of all their web mortgage bankers is to service their clients, and that while selling is part of what mortgage bankers do, sales activity is only a secondary duty (Dkt. #434). Accordingly, Defendants argue that all the Plaintiff web mortgage bankers are exempt from the overtime requirements of the FLSA, and Defendants are entitled to judgment as a matter of law.

Until the Court (or the ultimate fact-finder) is able to resolve the primary duty question regarding the web mortgage bankers, it is not possible to determine whether Plaintiffs Tait and Hamilton qualify for the highly compensated employee exemption. Accordingly, at the present time **IT IS RECOMMENDED** that the Court **DENY** summary judgment as to these two Plaintiffs.

### 5. *Plaintiffs Who Did Not Work Forty Hours*

The FLSA provides overtime compensation only for hours over 40 worked in a workweek. *See* 29 U.S.C. § 207(a)(1). As a matter of law, any Plaintiff who worked for Quicken Loans for less than 40 hours is not entitled to overtime compensation. Defendants argue that they are therefore entitled to summary judgment against Plaintiffs Derrick Rice and Stephen Scheib. Plaintiffs agree that in order to recover overtime compensation that has been unlawfully withheld, an individual needs to have worked over forty hours during some week(s) during the applicable statutory period. As such, Plaintiffs do not contest Plaintiff Scheib's dismissal because he was employed for only one day with Quicken Loans, and could not have worked overtime.

Yet, Plaintiff Rice worked for Quicken Loans from September 27, 2004, to November 11, 2004, and has submitted a declaration and a copy of his Quicken Loans' W-2 to confirm this time period (Dkt. #469, Ex. 97, ¶ 2). Based on Rice's good faith estimate, he worked approximately forty-nine hours per week during his employment and Defendants have not met their burden to prove otherwise (*id.* at ¶3). *See Mt. Clemens Pottery v. Anderson*, 328 U.S. 680, 687-88 (1946) (concluding that if an employer cannot provide accurate time estimates, "it is the duty of the trier of fact to draw whatever reasonable inferences can be drawn from the employees' evidence" as to the amount of overtime hours worked). Accordingly, **IT IS**

**RECOMMENDED** that Plaintiff Schieb be **DISMISSED** from this case, but that **SUMMARY JUDGMENT BE DENIED** as to Plaintiff Rice.

## III.    RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  A party may file a reply brief within 5 days of service of a response.  The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: September 30, 2008                    s/ Steven D. Pepe
Ann Arbor, MI                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 30, 2008.

s/V. Sims

Case Manager to Magistrate Judge
Steven D. Pepe