UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, individually
and on behalf of all other
similarly situated employees

        Plaintiffs,                      Case No. 04-40346

vs.                                       DISTRICT JUDGE STEPHEN J. MURPHY, III
                                       MAGISTRATE JUDGE STEVEN D. PEPE

QUICKEN LOANS INC., a Michigan corporation,
and DANIEL B. GILBERT, personally and individually,

        Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
UNDISCLOSED WITNESS STATEMENTS (DKT. #464)
AND
ORDER GRANTING IN PART PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANTS' EXPERT REPORT (DKT. #465)**

On October 29, 2007, Plaintiffs filed their Motion to Strike Undisclosed Witness Statements taken by Defendants (Dkt. #464), as well as their Motion to Exclude Defendants' Expert Report (Dkt. #465). Both motions were referred for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt. #471). On December 3, 2007, a hearing was held on both of Plaintiffs' motions at which all unresolved issues were addressed. The matter was taken under advisement to be decided in conjunction with the Defendants' Motion for Summary Judgment on the Merits (Dkt. #434) to which the Witness Statements and Expert Report were submitted as exhibits (Dkt. #440 & #446). For the reasons stated on the record and indicated below,

Plaintiffs' Motion to Strike Undisclosed Witness Statements taken by Defendants (Dkt. #464) is **GRANTED**, and Plaintiffs' Motion to Exclude Defendants' Expert Report (Dkt. #465) is **GRANTED IN PART** consistent with this opinion.

I.   **BACKGROUND**

This is a Fair Labor Standards Act ("FLSA") overtime collective action brought under 29 U.S.C. § 201 *et seq*. The approximately 446 Plaintiffs worked as loan consultants (Quicken Loans' former job title for mortgage bankers) for Defendants Quicken Loans and Daniel B. Gilbert in their "call center" (also known as the "sales center" or "web center") (Dkt. #469, Ex. 92, ¶ 3; Dkt #432, Ex. 5, Gilbert Dep., pp. 42-43; Dkt. #432. Exs. 7, 8, & 10). Plaintiffs allege that during their employment as "loan consultants" (hereinafter "mortgage banker") Defendants unlawfully withheld from Plaintiffs overtime pay for hours worked in excess of 40 hours per week in violation of §207(a)(1) of the FLSA. As a result, Plaintiffs seek damages in an amount equal to their alleged unpaid overtime wages plus an equal amount as liquidated damages, a three year limitation period, and costs and attorney fees alleging that Defendants' violation of the FLSA was willful (Dkt. #1, ¶8).

On August 12, 2004, Plaintiffs served Defendants with Plaintiffs' first set of interrogatories and requests for production of documents (Dkt. #464, Ex. K, ¶ 3). Plaintiffs' Interrogatory 2 requested that Defendants "Identify all persons who [Defendants] believe have any information or knowledge with respect to any facts or matters relating to the allegations in the Complaint or your Answer" (Dkt. #464, Ex. A, p. 4). In response, Defendants objected on several grounds and named six individuals who may have information relating to the allegations

in the Complaint or statements in Defendants' Answer (Dkt. #464, Ex. B, p. 3).[1] Plaintiffs' Request for Production of Documents 33 ("Request 33") sought all statements of witnesses or potential witnesses or persons interviewed in connection with this case or Defendants' ethics complaint filed against Plaintiffs' counsel (Dkt. #464, Ex. C, p. 13). In response, Defendants objected on grounds of work-product doctrine and attorney-client privilege. Defendants further stated, however, that objections notwithstanding, "Defendants have not obtained any statements from witnesses or potential witnesses" (*id.*). On January 17, 2006, Defendants served Plaintiffs with a supplemental answer to Interrogatory 2, naming all of the individuals disclosed in Defendants' Preliminary Designation of Lay Witnesses filed with the Court the same day (Dkt. #464, Ex. D). Defendant's preliminary list of lay witnesses included 126 entries (Dkt. #203).

A March 27, 2007, Joint Order Modifying Scheduling Order noted that fact discovery in this case closed March 1, 2007, Plaintiffs' expert's supplemental report was due May 1, and the Defense Expert Report was due on the later of June 1, 2007, or 30 days after receipt of Plaintiffs' expert's supplemental report (Dkt. #391). Before the close of fact discovery, the parties' counsel discussed on numerous occasions Defendants' duty to supplement their discovery responses. For example, in response to a letter regarding deficiencies in Defendants' discovery responses, Defendants stated "Defendants fully recognize and understand the discovery obligations imposed by the Federal Rules of Civil Procedure, including the obligation to supplement discovery responses as required by those rules" (Dkt. #464, Ex. E). Also, in the parties' January 8 and 9, 2007, meet-and-confer telephone conferences, the parties again discussed Defendants' obligation

---

[1] These individuals included: William Emerson, Patrick McInnis, David Carroll, Monica Gilewski, Jay Farner and Marilyn Byrd (Dkt. #464, Ex. B, p. 3).

3

to supplement their discovery responses (Dkt. #464, Ex. K, ¶ 4).  In a follow-up telephone conference held February 5, 2007, Defendants stated they would supplement what they had a duty to supplement under the Federal Rules of Civil Procedure (*id.* at ¶ 5).  Finally, on February 9, 2007, Defendants reiterated in a letter from their counsel, Robert Varnell, to Plaintiffs' counsel, Rachhana Srey, that they understood their duty to supplement discovery responses (Dkt. #464, Ex. F).

On August 31, 2007, Defendants filed their Lay Witness List (Dkt. #415) pursuant to the deadline set in the Court's Scheduling Order (Dkt. #391).  That list contains 250 entries.  On September 5, 2007, Defendants provided to Plaintiffs' counsel their expert report, OCCUPATIONAL ANALYSIS REPORT, by Dr. Malcolm S. Cohen, Ph. D.  With this report were the 122 sworn statements from current employees purporting to describe their primary duties at Quicken Loans.  Defendants had retained Dr. Cohen, on June 20, 2005, to prepare this report  (Dkt. #464, Ex. H, Malcolm Cohen, October 2, 2007, Deposition, pp. 30-31).

Dr. Cohen's October 7, 2007, affidavit and his September 4, 2007, OCCUPATIONAL ANALYSIS REPORT and exhibits were submitted as Exhibit AA (Dkt. #440) to the Defendants' Motion for Summary Judgment on the Merits (Dkt. #434) and the 122 Job Duties Statements were submitted as Exhibit FF to his report (Dkt. #446).  Apart from a box in which the employees were allowed to provide handwritten comments and the space for noting the length of  time worked as web mortgage bankers, the preprinted twenty-four paragraph statements are all identical.  Only five of the 122  individuals signing the form statement made any additional comment.  All but two of the sworn statements were dated July 10, 11, 12, 2007 (Dkt. #446).  The other two were dated June 10, 2007 and January 10, 2007 (Dkt. #446, pp. 168,

4

369).[2]  None of the individuals who signed the sworn statements were identified in Defendants' original or supplemental response to Plaintiffs' Interrogatory 2.  None of the statements were produced in response to Request 33.  Rather, Defendants objected to Request 33 on privilege grounds and stated that as of September 15, 2004, no such statements had been collected.

      Counsel for Defendants drafted the job duties statement apparently based on the September 8, 2006, Department of Labor opinion letter on the FLSA's Administrative exemption, and it was reviewed by Dr. Cohen more than once, and he suggested the space be added for any additional comments or explanations (Dkt. #464, Ex. H, Malcolm Cohen, October 2, 2007, Deposition, pp. 156, 158-59).  The statement was distributed by Quicken Loans to a number of employees hired prior to January of 2007 who were randomly selected (*id.* at 162:17-165:1).  Dr. Cohen testified in his deposition that he had no first-hand knowledge of who presented the statement to the employees, the conditions in which it was presented, or what was said to the employees about the statement when it was presented (*id.* at 178:21-180:4).

      As discussed in Plaintiffs' Motion to Exclude Expert Report, Defendants' Vice President Jay Farner, who was in charge of the web mortgage bankers, distributed the job duties statements (Dkt. #465, p. 6).  Dr. Cohen states that the employees were randomly selected, and given the "choice to participate in the process or opt out, and that there was no expected 'right or wrong' answer and that there would be no retaliation or reward for any particular response" (Dkt. #440, Exhibit AA, p. 93).  Participation appears to involve signing the 22 paragraph Job Duties Description agreeing that it accurately described your main job duties as a web mortgage banker.

---

[2]Defendants note that the two statements dated in January and June were misdated, and that Plaintiffs' knew these were misdated because they were given a draft of the statement dated May 12, 2007 (Dkt. #481, Ex. E).

5

Two of the Plaintiffs in this case were individuals who chose not to sign the document. Both noted that Jay Farner explained the statement was to help Quicken Loans win the overtime lawsuit, and "there was no opportunity to agree or disagree with individual duties listed on the Statement" (Dkt. #465, Ex. C, October 23, 2007, Declaration of Denene Harris; Ex. D, October 25, 2007, Declaration of Brian Merklinger). Each said the employee had only two options . . . to either agree with all the duties as they were written on the Statement or to not sign the Statement." Both of these employees state that they were terminated by Defendants shortly after their refusal to sign the Statement. Dr. Cohen acknowledged that the statements would not be helpful in determining the job functions of the employees if they were filled out in advance and people were just asked to sign them (Dkt. #464, Malcolm Cohen, October 2, 2007, Deposition, pp. 182).

Defendants also submitted declarations in support of their Motion for Summary Judgment on the Merits from six individuals who were never identified in Defendants' responses to Plaintiffs' written discovery requests: Stephanie Jahn, Christian Draheim, Anthony Gatliff, Sam Jadallah, Melissa Martz, and James Hahn (Dkt. #448).[3] These individuals were not identified until Defendants filed their final lay witness list on August 31, 2007, six months after the close of discovery. Defendants note that this was the time when they determined that these declarants could be called as witnesses at trial, and the declarations were obtained subsequent to that determination, these declarations are dated September 21, 2007, to October 3, 2007. Defendants also note that the names and addresses of four of six of these declarants were

---

[3] Defendant Daniel B. Gilbert submitted the Jahn and Han declarations in support of his Motion for Summary Judgement regarding the issue of his individual liability under the FLSA (Dkt. #435-2).

provided in Defendants' list of potential class members on November 1, 2006.

## II.     ANALYSIS

### A.     Motion to Strike Undisclosed Witness Statements

#### 1.     Declarations of Six Individuals

In support of their Motion for Summary Judgment, Defendants submitted declarations of six individuals who were not named on Defendants' preliminary lay witness list of January 17, 2006 (Dkt. #203). In addition to these declarations, Defendants also submitted at least nine declarations of witnesses who were named on the preliminary lay witness list of January 17, 2006; Plaintiffs do not challenge these declarations and they provide much similar evidence on the job duties of web mortgage bankers. The six challenged declarations involve:

> 1. **Stephanie Jahn**, whose September 25, 2007, declaration states she began working as a web mortgage banker at Quicken Loans in February 2005 (Ex. I to Dkt. #434, found at Dkt #439-2);
>
> 2. **Christian Draheim**, whose September 28, 2007, declaration states she worked as a web mortgage banker at Quicken Loans from 2001 until June 2002 (Ex. J to Dkt. #434, found at Dkt #439-3);
>
> 3. **Anthony Gatliff**, whose September 21, 2007, declaration states he worked as a web mortgage banker at Quicken Loans from September 2003 to September 2006 (Ex. K to Dkt. #434, found at Dkt #439-4);
>
> 4. **Sam Jadallah**, whose September 25, 2007, declaration states that he began a two year period as a web mortgage banker at Quicken Loans in January 2005 (Ex. L to Dkt. #434, found at Dkt #439-5);
>
> 5. **Melissa Martz**, whose October 3, 2007, declaration states she worked as a web mortgage banker at Quicken Loans from June to December 2006 (Ex. T to Dkt. #434, found at Dkt #439-13);
>
> 6. **James Hahn**, whose September 26, 2007, declaration states he began as a web mortgage banker at Quicken Loans in October 2004 until July 2006 returning in January 2007  (Ex. V to Dkt. #434, found at Dkt #439-15).

Plaintiffs' original discovery requests were made in August of 2004. These requests

7

included Interrogatory 2, requesting Defendants to "identify all persons who you believe have any information or knowledge with respect to any facts or matters relating to the allegations in the Complaint or your Answer" (Dkt. #464, p. 1). The requests also included Request for Production of Documents 33, which sought "All statements of witnesses or potential witnesses or persons interviewed in connection with this case or Defendants' ethics complaint filed against Plaintiffs' counsel."

The parties in submitting the Joint Proposed Order Modifying Scheduling Order to Judge Gadola in March of 2007, agreed that fact discovery closed March 1, 2007. Judge Gadola adopted this in his order of March 29, 2007 (Dkt. #391). While the parties could develop expert data after this date based on the facts developed as of March 1, 2007, this order did not anticipate that additional facts would be sought for purposes of this case after March 1, 2007, other than any depositions the parties might have agreed to be taken after that date.

The Federal Rules of Civil Procedure impose a duty to seasonably amend a prior response to an interrogatory or request for production once a party learns that the response is in some material respect incomplete and if the additional information had not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1).[4] Defendants argue the duty to supplement was not triggered until Defendants gathered the declarations from these six employees or former employees in summer of 2007, after the close of fact discovery on March 1, 2007. Because each of the declarations make clear that Defendants

---

[4] It should be noted that the language of the Federal Rules of Civil Procedure was changed slightly effective December 1, 2007. The Rules now indicate that parties must supplement or correct their disclosures and responses "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).

8

had reason to know of these individuals from their work at Quicken Loans well before March 1, 2007, Defendants have failed to show any good cause or substantial justification for not collecting these declarations during fact discovery.

Because Fed. R. Civ. P. 26(e)(1)(A) requires that supplementing be done in a timely manner, delaying supplementation by holding off on any effort to obtain readily discoverable information in a timely fashion will not satisfy this requirement. Defendants had access to these employees and former employees and had reason to know that they might have information useful to the defense. It is contrary to the spirit of the Rules and to fundamental fairness to allow a defendant to avoid a duty to supplement and the duty to complete fact discovery in the time ordered by the court because of a choice to remain ignorant of readily available facts.

The Court in *U.S. ex rel. Fago v. M & T Mortgage Corporation,* 518 F. Supp. 2d 108, 116 (D.D.C. 2007), noted that although the defendant was not obligated "to respond to Plaintiff's interrogatory, this does not mean that it can then sandbag the Plaintiff by responding to the interrogatory only after discovery had closed and then attempt to rely on this information in support of its Supplemental Motion for Summary Judgment." The situation in this case is similar. Defendants cannot delay their gathering of declarations from fact witnesses, covered by Plaintiffs' interrogatories, until after the close of discovery and seek to rely on those declarations in their motion for summary judgment. As with the declarations of defendant's fact witnesses in *M & T Mortgage Company,* the declarations should be stricken.

Under Fed. R. Civ. P. 37(c)(1) "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is

9

harmless." Defendants have failed to show any substantial justification for their delay in collecting these declarations and Defendants have at least nine remaining similar declarations that are not being challenged, resulting in little prejudice to them if these are stricken. Nor can it be said that the failure to supplement is harmless notwithstanding the possible cumulative nature of these declaration to other declarations submitted by Defendants. Plaintiffs counsel had a right to prepare their case based on the facts developed as of March 1, 2007. It is not as if this case, filed in 2004, had been on an accelerated or collapsed time period for completing fact discovery. Plaintiffs' counsel were deprived of the opportunity to depose these declarants, though it is acknowledged that Plaintiffs' counsel did not depose most of the other declarants whose names were revealed. Yet, it is not fair to have Plaintiffs have to try to counter the enhanced defense put on with the use of these six declarations that were not obtained or revealed during the time specified for fact discovery.

   Nor is reopening discovery and further delaying this case an adequate solution. If Courts are lax in enforcing scheduling deadlines, and allow a party to obtain an unfair advantage by sneaking in evidence not obtained in compliance with the court's orders, it will erode the force and effect of the court's orders, and impede the efficient administration of justice. For all of these reasons, the factual declarations of these six witnesses not disclosed on the preliminary witness list and not obtained during fact discovery are stricken and may not be used in support of Defendants' Motion for Summary Judgement on the Merits or in support of Daniel B. Gilbert's Motion for Summary Judgment dealing with individual liability.

   **2.     Job Duties Statements**

   In July of 2007 Defendants collected 122 job duties statements from current employees.

Defendants contend that these statements were gathered as data in support of their expert report. Yet, based on the design of the Federal Rules of Civil Procedure, there is an apparent presumption that data for an expert report should be gathered during fact discovery and that the extended deadline for the expert report is provided to give the expert time to thoroughly analyze the collected data. Fed. R. Civ. P. 26(a)(2)(C) sets a default time to disclose at "90 days before the date set for trial or for the case to be ready for trial." For a case to be ready for trial, discovery, by definition, must be completed. Additionally, initial disclosures must be made within 14 days after the Rule 26(f) conference, which is to be held "as soon as practicable." Fed. R. Civ. P. 26(a)(1)(C) and 26(f)(1). While Defendants could overcome this presumption by providing some justification for the delay in gathering the data, they have failed to do so. Again, Defendants could have easily collected this data at any point during fact discovery given the fact that these statements were from Defendants' employees. Moreover, because Defendants' counsel drafted the job duties statement it could have been drafted before the close of fact discovery. Even considering the time needed for Dr. Cohen's review of the statements, Dr. Cohen was retained in June of 2005, over a year and a half before the close of fact discovery, and he could have thus reviewed the statements during the fact discovery time period.

The Fourth Circuit affirmed a district court's decision striking sixty-seven affidavits because they were not produced during discovery. *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007). In that FLSA collective action, the defendant sought the affidavits of listed witnesses in their discovery requests, and the plaintiffs did not disclose them until filing them with their summary judgment response. *Anderson v. Sara Lee Corp.*, No. 4:03-cv-31-H4, at 5-8 (E.D.N.C. Dec. 7, 2004). The district court struck the affidavits as untimely. *Id.* The court also

11

based its decision on the affidavits' "boilerplate nature." *Id.* This criticism applies equally to the uniform job duties declarations here, which were drafted by counsel for Defendants.

Additionally, Defendants rely on the job duties statements as independent evidence in support of their motions for summary judgement, not just as support of their expert report. As such, these statements clearly should have been gathered during fact discovery because they constitute items identified in both Fed. R. Civ. P. 26(a)(1) and (3). Defendants cannot use an expert to develop facts after the close of discovery when those same facts could have been developed by attorneys during fact discovery. Although the rules are somewhat opaque in this matter, these statements should be stricken because they will prejudice the Plaintiffs because there was no opportunity to depose these witnesses and allowing that now will reopen discovery and further delay this case. Furthermore there is little prejudice to the Defendants in striking these statements because Defendants claim the expert report is not dependant upon these statements; and, finally, because Defendants have failed to provide any substantial justification as to the delay in gathering these statements.

      **B.**    **Motion to Exclude Defendants' Expert Report**

Federal Rule of Evidence 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 580 (1993), the Supreme Court held that, when faced with a proffer of expert scientific testimony, the trial judge

is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." This ruling was later interpreted by the Court to apply to all expert testimony, not only scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999). The party proffering the expert bears the burden of persuading the trial court that the expert has specialized knowledge that will aid the fact finder in understanding the evidence or determining a fact at issue. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F. 3d 244, 251 (6th Cir. 2001)(citing *Daubert,* 509 U.S. at 592). The trial court has wide discretion when determining whether to admit or exclude opinion testimony. *United States v. Paris,* 243 F. 3d 286, 288 (6th Cir. 2001). "The trial judge properly plays a gatekeeping role in determining whether expert testimony will assist the trier of fact. *Kilgore v. Carson Pirie Holdings, Inc.* 205 Fed. Appx. 367, 370 (6th Cir. 2006)(citing *Kumho Tire Co., Ltd.,* 526 U.S. at 141). Expert testimony on ultimate issues for the trier of fact is not *per se* inadmissible, but the court has latitude to restrict testimony that is not helpful to jurors. Fed. R. Evid. 704; *United States v. Sheffey,* 57 F. 3d 1419, 1425 (6th Cir. 1995). Expert opinions should not be admitted if they merely tell the jury what result to reach. *Woods v. Lecureux,* 110 F. 3d 1215, 1220 (6th Cir. 1997)("It is, therefore, apparent that testimony offering nothing more than a legal conclusion — i.e., testimony that does little more than tell the jury what result to reach — is properly excludable under the Rules.") "It is also appropriate to exclude "ultimate issue" testimony on the ground that it would not be helpful to the trier of fact when *the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular*." *Id.* (citing *Sheffey,* 57 F. 3d at 1426)(citations and internal quotations omitted)(emphasis in *Sheffey*).

13

The expert report proffered by the Defendants in this case is necessarily excluded for two reasons: (1) the report offers a legal conclusion properly determined by the court; and (2) the report does not assist the trier of fact. At the hearing on these motions, I indicated that if Defendants' expert opines as to items that add up to the legal conclusion then the expert is essentially offering a legal conclusion properly left to the court.

Namely, the core legal/factual question is whether the primary duties of these Quicken Loans mortgage bankers are selling financial products, which would mean they did not qualify for the administrative exemption under 20 C.F.R. §541.203(b) as stated in 20 C.F.R. §541.202(d).

Stated in reverse, the central question is whether ("**A**") the job functions of Quicken Loans mortgage bankers are ("**Q**") not primarily selling financial products and thus the job is "**Q**ualified" for the administrative exemption.

Dr. Cohen, Defendants' expert, opines that ("**A**") the job functions of these Quicken Loans mortgage bankers are the same or similar to (**"B"**) those of Loan Officers as classified in the Standard Occupational Classification ("SOC") who have "financial services [as] the principle component of this occupation" [and thus would be ("**Q**") **Q**ualified for the administrative exception] (Dkt. #480, Ex. A, ¶ 6(a) & ¶ 6(e)).

Dr. Cohen opines that ("**A**") the job functions of these Quicken Loans mortgage bankers are the same or similar to those of ("**C**") Loan Officers as classified in the Department of Labor's Occupational Informational Network ("O*Net") who "spend the majority of their time engaged in work activities such as 'making decisions and solving problems,' 'processing information,' 'analyzing data or information,' 'performing for or working directly with the public,' 'providing

14

customer service,' and 'getting information' in contrast to lesser functions of 'selling or influencing others" [and thus would be ("**Q**") **Q**ualified for the administrative exception](Dkt. #480, Ex. A, ¶ 6(b) & ¶ 6(e)).

Dr. Cohen opines that ("**A**") the job functions of these Quicken Loans mortgage bankers are the same or similar to ("**D**") those Loan Officers classified as ("**Q**") **Q**ualified for the administrative exception in Dr. Cohen's *The New Economy Report* [published by the Wage and Hour Division of the Department of Labor] which was based on both the SOC and O*Net classifications (Dkt. #480, Ex. A, ¶ 6(d) & ¶ 6(e)).

Dr. Cohen opines that ("**A**") the job functions of these Quicken Loans mortgage bankers are the same or similar to ("**E**") those of Loan Officers classified as ("**Q**") qualified for the administrative exception in the September 8, 2006, DOL Opinion Letter, FLSA 2006-31 (Dkt. 480, Ex. A, ¶ 6(f)).

Again, the ultimate legal/factual question that this Court has to reach is whether **A** = **Q**, *i.e.*, whether ("**A**") the primary job functions of the mortgage bankers at Quicken Loans is ("**Q**") not involving primarily selling financial products and thus the job is **Q**ualified for the administrative exemption.

Dr. Cohen opines that **A = B, A = C, A = D** and **A = E.**

We know from Dr. Cohen and other sources that **B = Q, C = Q, D = Q** and **E = Q.**

While Dr. Cohen claims he was not asked for nor does he give "an opinion as to whether QLI Mortgage Bankers are exempt from FLSA's overtime requirements" (Dkt. #480, Ex. A, ¶ 5),

it takes little learning in logic or mathematics to complete the syllogism:

15

$$A = B, A = C, A = D, A = E, \text{ and}$$
$$B = Q, C = Q, D = Q, E = Q,$$
$$\text{therefore } A = Q.$$

Thus, it is determined that by slightly indirection Dr. Cohen is offering a legal conclusion on the ultimate issue of this case that is properly to be decided by the court and/or jury. Thus, Dr. Cohen should not be able to testify on these subjects, or any similarity between the Quicken Loans mortgage bankers and stockbrokers.

Furthermore, Dr. Cohen's report is properly excluded because not only does it offer a legal conclusion properly decided by the court, but it also does not sufficiently assist the trier of fact under Fed. R. Evid. 702 to understand the evidence or determine the ultimate fact in issue. Defendants cite nine sources on which Dr. Cohen based his research: (1) on-site observations of mortgage bankers; (2) review of company documents describing mortgage banker duties; (3) review of emails of Plaintiffs and Company's managers; (4) observations of demonstrations of the technology mortgage bankers use; (5) analysis of DOL pronouncements regarding mortgage bankers; (6) review of the standard job characteristics of mortgage bankers set forth in the O*NET and SOC systems; (7) review of depositions of Plaintiffs and representatives of Quicken Loans; (8) study of the expert reports regarding damages proffered by Plaintiffs; and (9) evaluation of sworn job duties statements (Dkt. #480, p. 5-6). Dr. Cohen's sources of research (2), (3), (5), (6), (7), and (8) can be reviewed and understood by the trier of fact, although Dr. Cohen's testimony might be of assistance to the trier of fact in explaining the classification approaches undertaken for Loan Officers and Stockbrokers in the O*NET and SOC systems. Dr. Cohen's research source (9) has been stricken above and as such can no longer serve as a basis

for his findings.[5]

The only source of Dr. Cohen's research that remains which the trier of fact could not sufficiently weigh without his or other testimony would be his (1) onsite observations and (4) the demonstrations of the technology used by Quicken Loans mortgage bankers. Dr. Cohen's onsite observation consisted of only six interviews and six observations (Dkt. #480, p. 7). It appears that this onsite inquiry was only a small portion of his study, with the 122 job duties statements being a far more substantial bit of evidence regarding the job duties of the Quicken Loans mortgage bankers. Although the trier of fact cannot evaluate Dr. Cohen's observation or his interviews without him testifying, they are clearly, even as described by the Defendants, a minimal part of his onsite inquiry. Consistent with this opinion, Dr. Cohen could describe his observations, and possibly his interviews at trial, but he cannot testify to any conclusions he draws from this limited data because that would invade the province of the Court and is data that a jury can adequately evaluate without an expert. Whether Dr. Cohen should be called because of his assistance in explaining the classification approaches undertaken for Loan Offices and Stockbroker in the O*NET and SOC systems is a question that should be left to defense counsel.

### III. ORDER

For the reasons indicated above, Plaintiffs' Motion to Strike Undisclosed Witness Statements taken by Defendants (Dkt. #464) is **GRANTED**, and Plaintiffs' Motion to Exclude Defendants' Expert Report (Dkt. #465) is **GRANTED IN PART** consistent with this opinion. The parties to this action may object to and seek review of this Order, but are required to file any

---

[5] Even if these documents were permitted into evidence, it seems clear that the trier of fact could also sufficiently weigh these statements without the help of an expert.

17

objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and LR 72.1(d).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon the Magistrate Judge.

**SO ORDERED.**

                                              s/Steven D. Pepe
                                              United States Magistrate Judge

Dated:  September 30, 2008
Ann Arbor, Michigan

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 30, 2008.

                                              s/V. Sims
                                              Case Manager