# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RYAN C. HENRY, individually and on
behalf of similarly situated employees,

     Plaintiffs,

-vs-

QUICKEN LOANS INC.,

     Defendant.

Civil Action No. 04-CV-40346

Hon. Judge Stephen J. Murphy, III

Magistrate Judge Steven D. Pepe

---

Kathleen L. Bogas (P25164)
LAW OFFICES OF KATHLEEN L. BOGAS, PLLC
Attorneys for Plaintiffs
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
(248) 502-5000

Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Rachhana T. Srey, MN Bar No. 340133
NICHOLS KASTER, PLLP
Attorneys for Plaintiffs
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 256-3200

Attorneys for Plaintiffs

Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendants
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084

Robert P. Davis, D.C. Bar No. 334235
MAYER BROWN LLP
Attorneys for Defendants
1909 K Street N.W.
Washington, D.C. 20006
(202) 263-3000

Attorneys for Defendants

---

## PLAINTIFFS' BRIEF ON TRIAL PROCEDURE ISSUES AND THE PROPER OVERTIME CALCULATION METHOD

---

## <u>ISSUES PRESENTED</u>

1.  Should the Court allow the parties to present representative proofs for liability and damages?

    Plaintiffs' Answer:    Yes.

2.  Should the trial for liability be bifurcated from a trial for damages?

    Plaintiffs' Answer:    No.

3.  Should Defendant be allowed to open first, present evidence first, and close last?

    Plaintiffs' Answer:    No.

4.  Is the fluctuating work week method for calculating overtime pay applicable to this FLSA "misclassification" case?

    Plaintiffs' Answer:    No.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... v-vi

INTRODUCTION ...................................................................................................... 1

RELEVANT BACKGROUND .................................................................................. 3

PLAINTIFFS' PROPOSED TRIAL PLAN ............................................................... 4

ARGUMENT ............................................................................................................. 6

I.  THIS CASE SHOULD BE TRIED ON TIME, USING REPRESENTATIVE TESTIMONY, AND WITH PLAINTIFFS TAKING THE TRADITIONAL ROLE OF THE FIRST PARTY TO PRESENT EVIDENCE ...................................................................... 6

    A.  This Case Should Be Tried Like Most FLSA Cases, Which Are Customarily tried by  Representative Proof on Liability and Damages ............................................ 6

        1.  The courts - and Defendant - recognize representative testimony as the proper and most efficient method of presenting plaintiff testimony in FLSA cases .................................................................................................. 6

        2.  "Representative" testimony is determined by the Court based on the circumstances of the case, not as a matter of "statistical significance" as Defendant argues .................................................................................... 7

        3.  In light of the facts in this case, up to twenty-five (25) representative plaintiffs will be sufficiently representative ............................................. 8

    B.  Liability and Damages Should Be Tried in a Single Jury Trial, With a Second Court Trial on the Issue of Liquidated Damages, If Necessary .................................. 10

        1.  The convenience, prejudice, expedition, economy, similarity of issues, similarity of evidence, and jury confusion/bias factors support a single trial ...................................................................................................... 11

        2.  Discovery was directed to a single trial .......................................... 12

        3.  Defendant seeks an unfair advantage from bifurcation ................... 13

        4.  Possibility of settlement .................................................................. 13

        5.  Unlike liquidated damages, the liability and damage questions are both issues for the jury .................................................................................. 14

    C.  Plaintiffs Should Be Permitted to Open First, Present Their Evidence First, and Close Last ...................................................................................................... 14

II.  THE FLUCTUATING WORKWEEK METHOD OF CALCULATING OVERTIME PAY IS INAPPLICABLE .......................................................................................... 16

    A.  The FWW Method Cannot Be Applied Retroactively in FLSA Misclassification Cases ............................................................................................................ 16

    B.  Permitting Quicken to Benefit from Its Unlawful Conduct Would be Inconsistent with the FLSA .................................................................................. 18

III.  LIST OF POTENTIAL MOTIONS IN LIMINE.................................................................... 19

CONCLUSION..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

<u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946)  ...............................................7,8,9,15

<u>BS2 Multidata GmbH v. A-Dat Corp.</u>, 2007 WL 2463234 (E.D. Mich. Aug 28, 2007)...............14

<u>Comer v. Wal-Mart Stores, Inc.</u>, 454 F.3d 544 (6th Cir. 2006)........................................................4

<u>Cowan v. Treetop Enters.</u>, 163 F. Supp. 2d 930 (M.D. Tenn. 2001)............................................17

<u>Department of Labor v. Cole Enterprises, Inc.</u>, 62 F.3d 775 (6th Cir. 1995) .................................6

<u>Donovan v. Bel-Loc Finer</u>, 780 F.2d 1113 (4th Cir. 1985) ............................................................7

<u>Donovan v. Burger King Corp.</u>, 672 F.2d 221 (1st Cir. 1982) ......................................................8

<u>Herman v. Palo Group Foster Home, Inc.</u>, 976 F. Supp. 696 (W.D. Mich. 1997) .......................13

<u>Herman v. RSR Security Serv., Ltd.</u>, 172 F.3d 132 (2d Cir. 1999).................................................6

<u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165 (1989)............................................................14

<u>K.W. Muth Co., Inc. v. Bing-Lear Mfg. Group, LLC</u>,

 2002 WL 1879943 (E.D. Mich. July 16, 2002) ...........................................................................11

<u>L-3 Commc'ns Corp. v. OSI Sys., Inc.</u>, 418 F. Supp. 2d 380 (S.D.N.Y. 2005)............................14

<u>Martin v. Ind. Mich. Power Supp. Co.</u>, 381 F.3d 574 (6th Cir. 2004)............................................5

<u>McClanahan v. Mathews</u>, 440 F.2d 320 (6th Cir. 1971)  .............................................................5

<u>Morgan v. Family Dollar Stores, Inc.</u>, No. 01-cv-0303 (N.D. Ala. 2005)....................................15

<u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233 (11th Cir. 2008) .........................2,7,8,10,15

<u>O'Brien v. Ed Donnelly Enters., Inc.</u>, 575 F.3d 567 (6th Cir. 2009)............................................2,6

<u>Overnight Motor Transp. Co. v. Missell</u>, 316 U.S. 572 (1942)  ...............................................17,18

<u>Rainey v. Am. Forest & Paper Ass'n, Inc.</u>, 26 F. Supp. 2d 82 (D.D.C. 1998)..............................17

<u>Reich v. Gateway Press</u>, 13 F.3d 685 (3d Cir. 1994).....................................................................7

Reich v. Southern New England Telecomms. Corp., 121 F.3d 58 (2d Cir. 1997) ......................7,8

Russell v. Wells Fargo & Co., 2009 WL 3861764 (N.D. Cal. Nov. 17, 2009) .................... 2,16-19

Secretary of Labor v. DeSisto, 929 F.2d 789 (1st Cir. 1991) ..........................................................8

Stillman v. Staples, No. 07CV849 (D.N.J. 2008) ........................................................................15

Stillman v. Staples, Inc., 2009 WL 1437817 (D.N.J. May 15, 2009)...........................................7

Takacs v. Hahn Automotive, 1999 WL 33127976 (S.D. Ohio June 25, 1999) ...........................7,8

In re Texas EZPawn FLSA Litig., 633 F. Supp. 2d 395 (W.D. Tex. 2008) ......................17,18,19

United States v. Dittrich, 100 F.3d 84 (8th Cir. 1996)..................................................................14

Vichare v. AMBAC, Inc., 106 F.3d 457 (2d Cir. 1996) ................................................................12

Yung v. Raymark Indus., Inc., 789 F.2d 397 (6th Cir. 1986)........................................................11


**Code of Federal Regulations**

29 C.F.R. § 778.107 ......................................................................................................................16

29 C.F.R. § 778.113 ......................................................................................................................16

29 C.F.R. § 778.114(a)........................................................................................................2,16,17,18

29 C.F.R. § 778.114(c)..................................................................................................................17


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 42(b) ................................................................................................................10,13

**Federal Rules of Evidence**

Fed. R. Evid. 403 ..........................................................................................................................10

Fed. R. Evid. 611 ..........................................................................................................................14

## **INTRODUCTION**

The following memorandum addresses four trial issues identified by the Court at the November 5, 2009 status conference:  1) representative testimony; 2) bifurcation; 3) order of evidence; and 4) application of the fluctuating workweek overtime calculation method. Resolution of the first three issues will dictate how the case is tried.  Because these three issues are inseparable, they are discussed as such below.  The fourth is simply an issue related to how damages will be calculated, and is therefore discussed separately.

Plaintiffs propose one trial on liability and damages, using representative testimony, and with Plaintiffs taking the lead in presenting evidence.  The issue of liquidated damages will be resolved separately by the Court after the jury trial.  This proposal is consistent with the FLSA and the case law interpreting it, is the method followed by the courts who have tried these types of cases, and generally comports with common sense, efficiency, and fairness.

This case boils down to a very simple jury trial on two questions, one which will fully resolve liability, the other damages: (1) Was Plaintiffs' primary duty sales? (liability); and (2) How many overtime hours did Plaintiffs work?  (damages).  The answer to these two questions are so practically and factually intertwined, bifurcating them would require calling most of the same witnesses, introducing many of the same exhibits, and tolerating almost indistinguishable arguments from the attorneys in two separate jury trials.  As such, bifurcating liability and damages would be inefficient and untenable.  Because Defendant's request for bifurcation is driven not by judicial economy, but by its desire to "go first" and turn the customary order of proof on its head, it cannot justify such a duplication of efforts.

Not only should both issues be tried to one jury at one time, but also through the use of representative testimony from the Plaintiffs.  The use of representative testimony has been recognized as the accepted and preferred method of trying these types of cases by the majority of the trial and circuit courts that have considered this issue.  In fact, the Sixth Circuit recently acknowledged with approval, the Eleventh Circuit's decision accepting representative plaintiff testimony in an FLSA misclassification trial.  See O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009) (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1263-65, 1279-80 (11th Cir. 2008)).  Any alternative is simply unworkable.

Plaintiffs' memorandum also addresses the proper calculation method that should be used by the jurors in awarding damages.  As discussed at the status hearing, the only damage issue the parties cannot agree upon, other than the jury question of the number of hours worked, is the Court's determination of the applicability of the "fluctuating workweek method" (hereinafter "FWW").  See 29 C.F.R. § 778.114(a).[1]  If certain prerequisites are met, the FWW method permits an employer to calculate a ***non-exempt*** salaried employee's overtime at .5 his regular rate rather than the standard 1.5 multiplier.  The FWW method is inapplicable in misclassification cases as recently recognized in Russell v. Wells Fargo & Co., 2009 WL 3861764 (N.D. Cal. Nov. 17, 2009).

Finally, pursuant to the Court's Order, Plaintiffs' memorandum provides a list of motions in limine they currently intend to bring.

---

[1] Plaintiffs anticipate that since damage calculation is simply a question of math based on employment and the date in which Plaintiff consented to join this collective action, the parties should be able to agree upon (or the Court can simply order) the mathematical formula for calculating each Plaintiff's damages with the jury providing the "hours worked" factor and the Court determining whether the overtime hourly rate should be calculated at 1.5 or .5.

## <u>RELEVANT BACKGROUND</u>

Plaintiffs filed this FLSA collective action on May 17, 2004.  (Dkt. 1.)  This case currently consists of 367 Plaintiffs—all "web mortgage bankers"—against one defendant, Quicken Loans Inc.  Plaintiffs were paid a base salary in addition to commissions based on sales pursuant to the same compensation plan.  (<u>See</u> Dkt. 432, Ex. 12.)

Discovery in this case was not bifurcated into a liability and damages phase.  Instead, both parties simultaneously conducted discovery regarding damages and liability.  Indeed, the Court ordered Defendant to produce email evidence relating to Plaintiffs' job duties and hours worked pursuant to Plaintiffs' motion to compel.  (Dkts. 396, 398.)  Defendant also deposed seven Plaintiffs about their job duties and hours worked, including their overtime hours estimate.

In October 2007, the parties filed cross motions for summary judgment on liability.  (Dkts. 432 and 434.)  In support of their motion, Plaintiffs submitted significant evidence— obtained from Defendant through discovery—establishing sales as Plaintiffs' primary duty and the hours Plaintiffs worked as a result of the high-pressured sales environment in which they worked.  (Dkt. 432, Exs. 1 and 29.)  Plaintiffs also submitted fifteen declarations from Plaintiffs who provided an estimate of their overtime hours.  (Dkt. 432, Ex. 42.)

Plaintiffs filed a preliminary witness list in January 2006 and a final list in August 2007.  (Dkts. 200, 200-2, 200-3 and 404.)  In response to Plaintiffs' preliminary witness list, Defendant expounded on the "principals of representative testimony" routinely recognized in FLSA cases:

> I note that you have listed 129 individual Plaintiffs as trial witnesses.  I also believe that the Court would view this as an unacceptably large number, and your list does not reasonably inform us as to which of your Plaintiffs you plan to call at trial.  **I assume that you are aware of the principals of representative testimony in litigation under the Fair Labor Standards Act**.  But, your witness list does not reasonably inform us as to which of your Plaintiffs whose testimony you may offer on a representative basis.

3

(Ex. A (emphasis added).)  Before Plaintiffs filed their final witness list, Defendant preemptively

provided Plaintiffs a second copy of the January 5, 2006 letter, and again argued that this case

should be tried on a representative basis:

> I believe that you have an obligation to the Court to address representative
> testimony when you submit your witness list.  In my view, **it is extremely
> unlikely that the Court would allow testimony from large numbers of
> Plaintiffs**, as your earlier witness list assumed.  We also need to be reasonably
> informed as to which of the Plaintiffs whose testimony you intend to offer on a
> representative basis, so that we can prepare our witness list and prepare for full
> and fair trial.

(Ex. B (emphasis added).)  Plaintiff responded, informing Defendant that they agreed that this

case should be tried in an efficient manner, but that because the Court had not yet determined

how this case would be tried, Plaintiffs were not prepared to narrow their witness list.  (Ex. C.)[2]

On August 27, 2007, Plaintiffs requested a status conference with the Court to discuss certain

trial issues such as certification of this matter as a collective action and trial on a representative

basis.  (Dkt. 412.)  Magistrate Judge Pepe denied Plaintiffs' motion without prejudice because

the parties agreed that the District Court Judge would be in the best position to make

determinations relating to trial following his resolution of the motions for summary judgment

pending at that time.  (Dkt. 450.)  Consistent with its concession on the need for representative

testimony, and further conceding the similarly situated nature of these plaintiffs, Defendant has

never moved to decertify this case.[3]

## PLAINTIFFS' PROPOSED TRIAL PLAN

Plaintiffs propose an efficient, simple, and cost-effective trial plan consisting of a single

---

[2] Defendant also made similar arguments in its Motion for a More Definitive Final List of
Plaintiffs' Lay Witnesses.  (Dkt. 407.)
[3] At the second stage of the similarly situated analysis, upon a motion for decertification, trial
courts examine more closely the question of whether particular members of the class are, in fact,
similarly situated.  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006).

trial on liability and damages.  In this trial, the jurors would hear testimony from a maximum of, and presumably much less than, thirty-five (35) witnesses from each party.[4]  Of their 35 witnesses, Plaintiffs would designate twenty-five (25) Plaintiffs as "representatives" of the collective group.  From this pool of representative Plaintiffs, Plaintiffs could choose to call each of the twenty-five Plaintiffs subject to the Court's discretion (consistent with the Federal Rules of Civil Procedure) to determine that all twenty-five are not necessary, or are cumulative, duplicative, or otherwise a waste of the jury's time.[5]  The examination of all witnesses would include testimony regarding both job duties and hours worked.

If Plaintiffs prevail at trial, the Court must resolve the issue of liquidated damages.  This will not, however, necessarily require a trial because as already acknowledged by this Court, liquidated damages are compensatory, not punitive.  Consequently, even if Defendant presents evidence that satisfies the Court regarding its substantial burden to prove subjective and objective good faith, the Court may still award full liquidated damages to Plaintiffs for other reasons.  (See Dkt. 554, at 44) (citing McClanahan v. Mathews, 440 F.2d 320, 323 (6th Cir. 1971) (noting that even if an employer meets this burden, a court nevertheless "may award full liquidated damages equal to, and in addition to, the unpaid back wages); see also Martin v. Ind. Mich. Power Supp. Co., 381 F.3d 574, 584 (6th Cir. 2004) (concluding that if an employer demonstrates both good faith and reasonable grounds for the incorrect classification, then a court may exercise its discretion to limit or deny liquidated damages).

Plaintiffs believe that the Court will grant liquidated damages without regard to the issue

---

[4] Plaintiffs suggest thirty-five (35) total witnesses per party in an attempt to resolve both parties' mutual desire to significantly amend the current witness lists, which currently contain 497 potential witnesses on Plaintiffs' list and 251 on Defendant's.  (Dkts. 406, 415.)
[5] Plaintiffs agree with Defendant that "it is extremely unlikely that the Court would allow testimony from large numbers of Plaintiffs."  (Ex. B.)

of good faith, and a subsequent court trial on liquidated damages will not be necessary.  Indeed,

if Plaintiffs prevail, they will have had waited over five years to get paid the money that they are

owed.[6]  They have had to aggressively fight on every issue in this case and if they prevail,

Plaintiffs will have proven that Defendant has violated the law, yet by virtue of the Court's grant

of summary judgment, they will recover for only a portion of the statutory period.[7]

## ARGUMENT

I.    **THIS CASE SHOULD BE TRIED ONE TIME, USING REPRESENTATIVE TESTIMONY, AND WITH PLAINTIFFS TAKING THE TRADITIONAL ROLE OF THE FIRST PARTY TO PRESENT EVIDENCE.**

      A.    **This Case Should Be Tried Like Most FLSA Cases, Which Are Customarily Tried by Representative Proof on Liability and Damages.**

            1.    **The courts—and Defendant—recognize representative testimony as the proper and most efficient method of presenting plaintiff testimony in FLSA cases.**

For efficiency purposes and to avoid unnecessarily wasting judicial resources with

duplicative, cumulative, and never-ending testimony, this Court should adhere to the well-settled

principal that FLSA cases are customarily tried based on representative proof.  See O'Brien, 575

F.3d at 585 ("Furthermore, it is possible that representative testimony from a subset of plaintiffs

could be used to facilitate the presentation of proof of FLSA violations, when such proof would

ordinarily be individualized."); Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir.

1995) ("The testimony of fairly representative employees may be the basis for an award of back

---

[6] See Herman v. RSR Sec. Serv., Ltd., 172 F.3d 132, 142 (2d Cir.1999) (recognizing that liquidated damages are not a penalty but rather further compensation due to the employee occasioned by the delay in receiving wages due).

[7] In other words, simply because Defendant and its lawyers were able to secure the September 8, 2006 Department of Labor Opinion Letter and convince the Court to cut off Plaintiffs' damages after that date, the fact that the jury found that it had indeed violated the law for a number of years, should compel the Court to compensate Plaintiffs to the full extent of the law within the confines of its previous orders.

wages to non-testifying employees."); <u>Morgan</u>, 551 F.3d at 1276-80 (concluding that the general rule is that not all employees have to testify to prove overtime violations); <u>Reich v. S. New England Telecomms. Corp.</u>, 121 F.3d 58, 67 (2d Cir. 1997) ("it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA"); <u>Reich v. Gateway Press</u>, 13 F.3d 685, 701 (3d Cir. 1994) ("not all employees need to testify in order to prove violations or to recoup back wages"); <u>Donovan v. Bel-Loc Finer</u>, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would thwart the purposes of the sort of representational testimony clearly contemplated by <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946)); <u>see also</u> <u>Takacs v. Hahn Auto.</u>, 1999 WL 33127976, at *3 (S.D. Ohio June 25, 1999) (granting the plaintiffs' request to prove damages through representative proof consisting of four to six plaintiffs); <u>Stillman v. Staples, Inc.</u>, 2009 WL 1437817, at *18 (D.N.J. May 15, 2009)  (explaining that representative testimony is permitted in FLSA actions).

Defendant has already recognized that representative testimony is the proper and most efficient method of presenting proof in this case.  Indeed, until now, Defendant was the party most aggressively pointing out the virtues of representative testimony in FLSA cases. Defendant's sudden change of heart is just another example of it living true to its stated intent to fight Plaintiffs on every issue, and its desire to create any possible barrier to final termination of the merits.  (<u>See</u> Dkt. 468-4.)

> **2.    "Representative" testimony is determined by the Court based on the circumstances of the case, not as a matter of "statistical significance" as Defendant argues.**

Given its wide acceptance by the courts, the real issue before this Court is not whether representative testimony is appropriate, but rather what is "representative."  The scope of

representative testimony required by the FLSA is not based on "statistical significance," as Defendant suggests, but rather based on the particular facts of this case, and how similarly situated Plaintiffs are with respect to the subject matter of the testimony.

To determine the adequacy of the representative testimony, courts may consider: 1) the ratio of the number of testifying employees to the number of employee for whom back wages are claim; 2) the nature of the work involved (and how varied it is); 3) working conditions and relationships; and 4) the detail and credibility of the testimony. See Takacs, 1999 WL 33127976, at *2 (citing Sec. of Labor v. DeSisto, 929 F.2d 789, 793 (1st Cir. 1991) ("it is axiomatic that the weight to be accorded evidence is a function not of quantity but of quality")). Generally, the testimony of an employee is representative of others who perform substantially similar work. Donovan v. Burger King Corp., 672 F.2d 221, 225 (1st Cir. 1982) (6 of 246 testified where the parties agreed that the assistant managers performed substantially similar work).

Because no fixed ratio exists and representative testimony is based on the particular facts of each case not statistics, courts have varied greatly on the number of plaintiffs that must testify in order to be "representative" of non-testifying plaintiffs. See, e.g., Mt. Clemens, 328 U.S. at 683-4 (7 out of 200 employees testified); Morgan, 551 F.3d at 1276 (7 out of over 1400 plaintiffs testified at trial); New England Telecomms., 121 F.3d at 66-69 (finding that the testimony of 39 employees who accounted for each of the five job categories in question sufficient to support an award for all 1500 plaintiffs); see also Takacs, 1999 WL 33127976, at *2 (noting that the focus should not be on numbers in isolation rather whether the court can reasonably conclude that the evidence is sufficient for a "just and reasonable inference" to be made).

> 3.    **In light of the facts in this case, up to twenty-five (25) representative plaintiffs will be sufficiently representative**.

Plaintiffs propose proving liability and damages through the testimony of twenty-five representative Plaintiffs, which should be more than sufficient for a number of reasons. First, the size of the class is relatively limited particularly in light of the Court's recent decisions on summary judgment, which narrowed the size of the class. By Plaintiffs' count, the case currently consists of only 367 Plaintiffs attempting to recoup back wages.

Second, representative testimony is particularly appropriate where the employer, such as here, has admittedly failed to maintain accurate record of the number of hours Plaintiffs worked and Plaintiffs bear the burden to prove their damages. The question of how a plaintiff will prove damages in such a situation has already been resolved by the United States Supreme Court. In Mt. Clemens, the Supreme Court held:

> Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

328 U.S. at 687-88. Where an employer cannot provide accurate time records, "it is the duty of the trier of fact to draw whatever reasonable inferences can be drawn from the employee's evidence" as to the amount of overtime hours worked. Id. at 694. Because the standard is a "just and reasonable inference" and not mathematical certainty, fewer witnesses will be needed.

Third, twenty-five testifying Plaintiffs would be sufficiently representative of the remaining non-testifying Plaintiffs because all Plaintiffs worked in a single job position ("web mortgage banker"), performed the same job duties, and followed the same mandatory policies and procedures for selling loans, such as "The Sales Process." (See Dkt. 432-2.) Moreover, the

9

majority of the Plaintiffs worked in the same web call center, under the same management structure, and subject to the direction and control of the same person, Quicken's Senior VP of the Web Center, Mr. Jay Farner.  (Dkt. 213.)

Finally, the testimony of the representative Plaintiffs is not Plaintiffs' only evidence of hours worked.  Plaintiffs intend on introducing exhibits and cross-examining Defendant's managers as to hours worked, Defendant's expectations regarding hours worked, and company policies and work schedules.  For example, Defendant had a 55+ hour a week policy that applied to all Plaintiffs (Dkt. 432, Ex. 8), shifting the issue from whether Plaintiffs worked overtime, to how much overtime they worked.  Therefore, fewer representative witnesses will be necessary for the jury to determine the hours worked by a typical Plaintiff because all Plaintiffs worked in this same job, at the same location, and under the same policies and procedures that already mandated overtime hours.  See Morgan, 551 F.3d at 1233 (overruling the defendant's challenge to the representative testimony of only seven plaintiffs at trial because the plaintiffs' evidence was not limited to just seven plaintiffs but also included an "abundance of trial evidence" including corporate manuals, testimony from corporate witnesses, charts summarizing wages and hours, and a wealth of exhibits including emails).

In short, representative proof is the norm and is consistent with the Federal Rules of Evidence's caution against undue delay, wasting time, and the needless presentation of cumulative evidence.  See Fed. R. Evid. 403.  Liability and damages should be presented through representative proof, and 25 representative Plaintiffs should be more than enough.

> **B.     Liability and Damages Should Be Tried in a Single Jury Trial, With a Second Court Trial on the Issue of Liquidated Damages, If Necessary.**

This case should not be bifurcated into two separate jury trials, one on liability, and the other on damages.  Under Fed. R. Civ. P. 42(b), this Court may, "for convenience, to avoid

prejudice, or to expedite and economize," order a separate trial of one or more separate issues. The decision to bifurcate a trial is within the Court's discretion.  See K.W. Muth Co., Inc. v. Bing-Lear Mfg. Group, LLC, 2002 WL 1879943, at *3 (E.D. Mich. July 16, 2002) (citing Yung v. Raymark Indus., Inc., 789 F.2d 397, 400 (6th Cir. 1986)).  "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials."  K.W. Muth, 2008 WL 1879943, at *3.

The Court may consider several factors in deciding whether to try issues separately, including: 1) convenience; 2) prejudice; 3) expedition; 4) economy; 5) whether the issues sought to be tried separately are significantly different; 6) whether they are triable by jury or the court; 7) whether discovery has been directed to a single trial of all issues; 8) whether the evidence required for each issue is substantially different; 9) whether one party would gain some unfair advantage; 10) whether a single trial of all issues would create the potential for jury bias or confusion; and 11) whether bifurcation would affect the possibility of settlement.  Id.

Examining these eleven factors, Defendant cannot meet its burden to establish that the specific circumstances of this case justify deviating from the general rule that a single trial tends to lessen delay, expense, and inconvenience of all parties.  Accordingly, liability and general damages should be tried in a single jury trial, and if necessary, liquidated damages should be tried separately to the Court after the jury's verdict.[8]

> **1.      The convenience, prejudice, expedition, economy, similarity of issues and evidence, and jury confusion/bias factors support a single trial.**

---

[8] As discussed above, Plaintiffs do not believe that a trial on liquidated damages will even be necessary.  However, if the Court concludes that it would like to hear evidence on the liquidated damages question, then trying liquidated damages separately would expedite the trial on liability and general damages because liquidated damages is the only issue that is triable by the Court.

Trying liability and damages in a single trial is particularly efficient, convenient, and cost-effective where liability and damages issues are inextricably intertwined and bifurcation would result in far greater time and expense for the parties and Court than if the issues were tried in a single trial. See Vichare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir. 1996) (where the evidence on the issues of liability and damages are intertwined, it is proper to deny a motion to bifurcate). Plaintiffs' primary job duty and how many hours they worked are inextricably intertwined. Indeed, all witnesses who provide relevant testimony as to job duties will also have relevant knowledge as to hours worked. Therefore, every Plaintiff who takes the stand, and every witness Plaintiffs cross examine regarding either of these two issues will be examined on the other. Many of the exhibits will also be relevant to both. For example, Plaintiffs claim that the high-pressure sales nature of the job is the reason for their long hours, and intend to produce exhibits that not only prove the sales nature of the job, but show how the pressure to sell led to the overtime hours.[9] Therefore, Plaintiffs are entitled to have the hours worked evidence before the jury at the same time as the job duties evidence, and vice versa. Trying both issues together would not only create no bias or prejudice, it would be ridiculously inefficient to require the Court and one jury, or even a second jury, to hear the exact same evidence, and make the same witnesses reappear to present it.

### 2. Discovery was directed to a single trial.

Discovery was not bifurcated in this case. Defendant did not request that it be, nor did it treat it as such. Rather, Defendant questioned Plaintiffs, and served written discovery on issues relating to hours worked and job duties. A review of the transcripts show the interrelation of the

---

[9] Exhibit D filed under seal, is small sampling of some of the emails Plaintiffs received relevant to both hours worked and their job duties.

two issues, with Defendant asking questions relating to one, the other, or both, without regard to any artificial difference.  (Dkt. 439-6 – 439-11; Dkt. 467-34 – 467-40.)[10]

### 3.    Defendant seeks an unfair advantage from bifurcation.

Defendant's only stated justification for bifurcating the trial is that if it prevails on the job duties issue, a trial on damages will not be necessary.  The chance that a defendant may win on the merits rendering damage evidence moot exists in every case, and does not justify bifurcation of two issues that relate to the same job, the same job duties, with the same witnesses and evidence for both.  The chance that Defendant will prevail on the liability question is particularly precarious here, where Defendant must take the position that its persistent mantra of "sell, sell, sell" actually meant "advise, consult, analyze."

The true reason for Defendant's request for bifurcation is its desire to "go first," and its apparent belief that if the case is bifurcated, and its affirmative job duties defense is tried first, then it is entitled to open first, call witnesses first, and close second.  As an initial matter, this position ignores the fact that Plaintiffs still have the duty to first present a prima facie case and maintain the ultimate burden of proof.  See Herman v. Palo Group Foster Home, Inc., 976 F. Supp. 696, 700-701 (W.D. Mich. 1997).  Regardless, bifurcation is not justified for the sole purpose of providing Defendant with an advantage that it would not otherwise have.  See Fed. R. Civ. P. 42(b) (separation is for "convenience, to avoid prejudice, or to expedite and economize").

### 4.    Possibility of settlement

When this case was filed in May 2004, Defendant informed Plaintiffs' counsel that it would "not settle the case (even for one dime)" and that it would fight Plaintiffs on every issue. (Dkt. 468-4.)  Over the past five years, Defendant has done just that.  Therefore, this case will be

---

[10]  These docket entries contain excerpts from Plaintiffs' depositions.  If the Court wishes, Plaintiffs can provide the Court with copies of the full transcripts.

tried; and it will then be appealed.  Bifurcating the issues of liability and damages will do nothing to alter this reality.[11]

5.      **Unlike liquidated damages, the liability and damage questions are both issues for the jury.**

Because both job duties and hours worked are jury issues, there is no procedural barrier to trying both issues in one case.  The fact that these two issues are for the jury, and the issue of liquidated damages is for the court is precisely why Plaintiffs agree with Defendant that the liquidated damages issue should be tried separately.[12]

**C.      Plaintiffs Should Be Permitted to Open First, Present Their Evidence First, and Close Last.**

Under Fed. R. Evid. 611, the Court controls the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth; 2) to avoid needless consumption of time; and 3) protect witnesses from harassment or undue embarrassment.  Id.  "Decisions as to the order of proof lie within the sound discretion of the district courts...."  United States v. Dittrich, 100 F. 3d 84, 86 (8th Cir. 1996).  See BS2 Multidata GmbH v. A-Dat Corp., 2007 WL 2463234, at *5 (E.D. Mich. Aug. 28, 2007).  Some district courts have determined that the party who proceeds first at trial is "typically the plaintiff, even where the plaintiff seeks only or even primarily a declaratory judgment."  L-3 Commc'ns Corp. v. OSI Sys., Inc., 418 F. Supp. 2d 380, 383 (S.D.N.Y. 2005).

---

[11] Even without respect to all of these other factors, bifurcating the trial is contrary to the broad remedial purpose of the FLSA and would frustrate the benefits of a collective action recognized by the Supreme Court.  See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

[12] Moreover, the liquidated damages issue is based on an entirely different set of facts than is the liability and general damage issues.  In the Court trial, the evidence would focus on Defendant's process of classifying Plaintiffs as exempt, the level of inquiry and motives for that classification, and the overall objective and subjective reasonableness of its corporate conduct.

14

Plaintiffs must prove: 1) Quicken employed them; 2) Quicken is covered by the FLSA; and 3) Plaintiffs worked overtime hours, and were not compensated for their overtime hours. See Morgan, 551 F.3d at 1277.  Morgan v. Family Dollar Stores, Inc., No. 01-cv-0303 (N.D. Ala. 2005) and Stillman v. Staples, Inc., No. 07CV849 (D.N.J. 2008) are particularly instructive as they are two district court trials that involved FLSA exemptions defenses.  The Family Dollar defendant brought a motion asking the court to adopt a trial plan which permitted it to present evidence first because it had the burden to prove that the plaintiffs were properly classified as exempt.   (See Ex. E.)  The plaintiffs argued that defendant would need to stipulate to damages to go first.  (See Ex. F.)  The district court refused to allow Family Dollar to present first.[13]

Likewise, in Staples the defendant brought a motion to alter the order of proof, arguing that it should go first because it stipulated to the facts in the plaintiffs' case-in-chief, and the plaintiffs had nothing left to prove.  (See Ex. G.)  The plaintiffs argued that standard order of proof should be preserved because they still had to establish damages.  (See Ex. H.)  The court denied the defendant's request.  (See Ex. I.)

As Quicken acknowledged, it did not fulfill its legal obligation to maintain accurate records of the hours Plaintiff worked and therefore Plaintiffs must present evidence to prove their damages.  See Mt. Clemens, 328 U.S. at 687-688.  Because each party has the burden on different issues, there is no reason to upset the customary procedure of allowing Plaintiffs to present their witnesses first.  Plaintiffs should be not deprived of the opportunity to present their evidence on their theories of liability, organized in their own way, in their own part of the trial.

---

[13]No actual order was attached to the district court's docket for its decision to deny Family Dollar's motion.

## II.    THE FLUCTUATING WORKWEEK METHOD OF CALCULATING OVERTIME PAY IS INAPPLICABLE.

Plaintiffs' compensation was made up of two components: 1) base salary; and 2) commissions.    To determine Plaintiffs' damages, Plaintiffs' overtime rate for the salary component of their compensation should be multiplied by the standard 1.5 times the regular rate of pay.  See 29 C.F.R. § 778.113.  The commissions Plaintiffs earned would be calculated at the .5 rate.  29 C.F.R. § 778.107.  Plaintiffs' proposed damage calculation method for the salary component of Plaintiffs' compensation is attached as Exhibit J.[14]

While Defendant will likely agree that Plaintiffs' commissions should be calculated at a .5 rate, it will argue that the regular rate determined from Plaintiffs' base salary earnings should also be multiplied by .5 pursuant to the FWW method.  See 29 C.F.R. § 778.114; Russell v. Wells Fargo & Co., 2009 WL 3861764 (N.D. Cal. Nov. 17, 2009) ("An employer who does not satisfy the legal prerequisites cannot use the FWW method and compensate employees for overtime at a premium of one-half their fluctuating regular rate.")

This Court should determine that the FWW method is inapplicable because: 1) the FWW cannot be applied retroactively in FLSA misclassification cases; and 2) such a retroactive application would be inconsistent with the FLSA and applying it would unfairly reward Defendant for its unlawful conduct.

### A.    The FWW Method Cannot Be Applied Retroactively in FLSA Misclassification Cases.

In this FLSA misclassification case, Quicken cannot satisfy the two primary prerequisites for application of the FWW method, which are: 1) a clear mutual understanding that a fixed salary will be paid for fluctuating hours, apart from overtime premiums; and 2) the

---

[14] Exhibit J does not include how the damages will be calculated on the commissions component because that half-time rate applicable to commissions is uncontroversial.

contemporaneous payment of overtime premiums.[15]    See 29 C.F.R. 778.114(a), (c); Russell, 2009 WL 3861764, at *5 (concluding that when an employee is erroneously classified as exempt and illegally not being paid overtime, neither of these legal prerequisites for the use of the FWW method is satisfied); In re Texas EZPawn FLSA Litig., 633 F. Supp. 2d 395, 401 (W.D. Tex. 2008) (rejecting the FWW method in FLSA misclassification cases and noting that "[w]here an employee is misclassified, it is impossible for there to be the requisite mutuality, as the issue of structure of the employee's pay vis-à-vis the overtime laws would never have been a topic of conversation"); Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 100 (D.D.C. 1998) (refusing to apply the FWW method in an FLSA misclassification case).

The clear mutual understanding requirement is absent from this misclassification case because the only understanding here is that Plaintiffs would not be paid any overtime compensation for their overtime hours. Moreover, because Plaintiffs were improperly classified as exempt, Plaintiffs have not been paid the required contemporaneous overtime payments. Russell, 2009 WL 3861764, at *5; Cowan v. Treetop Enters., 163 F. Supp. 2d 930, 942 (M.D. Tenn. 2001) (finding that the lack of contemporaneous payment overtime barred defendant's reliance upon Section 778.114). "Employers cannot satisfy this requirement, after having been found to violate section 207, by claiming that they had intended to pay overtime; such an after-the-fact provision of overtime compensation was rejected by the Supreme Court[.]." Russell, 2009 WL 3861764, at *5.[16]

---

[15] In addition to these reasons, Defendant can not prove that Plaintiffs' work hours actually fluctuated above and below forty hours a week with its standard workweek policy of 55 hours. See 29 C.F.R. § 778.114(a).

[16] In Overnight Motor Transp. Co. v. Missell, 316 U.S. 572, 581 (1942), the Supreme Court rejected the employer's attempt to use the FWW method because the employer had not provided for additional pay for overtime hours beyond the flat rate the employee was being paid. Id.

**B.    Permitting Quicken to Benefit from Its Unlawful Conduct Would be Inconsistent with the FLSA.**

If this Court retroactively applied the FWW method to this case, it would be rewarding Quicken for its unlawful conduct and unfairly decreasingly Plaintiffs' damages, inconsistent with congressional intent and sound policy considerations.[17]

Courts have struggled with application of the FWW method in FLSA misclassification cases because this alternative overtime calculation method was not designed for misclassification cases. Indeed, when the DOL promulgated § 778.114 in 1968, it did so to codify the Supreme Court's decision in <u>Overnight Motor</u>. <u>See</u> <u>Russell</u>, 2009 WL 386174, at 3. In <u>Overnight Motor</u>, the Court found the employee's compensation to be illegal because there was no provision for additional pay in the event the employee's hours worked required compensation greater than the fix wage he received. <u>Id.</u> at 580. The Court concluded that a defendant should not be permitted to argue after-the-fact that it intended to satisfy § 207 of the FLSA when it never contemplated paying the employee anything extra for overtime hours. <u>Id.</u> at 581; <u>Russell</u>, 2009 WL 3861764, at *4-5 (recognizing congress's intent and rejecting defendant's argument that it should be permitted to avail itself to using the FWW method even if the employer's understanding regarding the employee's exempt status turns out to be erroneous).

<u>Russell</u> recently addressed the broader policy considerations involved if an employer was permitted to make after-the-fact arguments of its intent to pay overtime in a misclassification case. In pertinent part, the court stated:

---

[17] Quicken will seek to apply the FWW method if Plaintiffs prevail at trial because doing so significantly decreases its exposure. In <u>EZPawn</u>, the court provided an example damage calculation under the standard 1.5 calculation method versus the FWW's .5 rate. 663 F. Supp. 2d at 404. The court noted that the FWW method resulted in overtime compensation 375% lower than under the traditional method. <u>Id.</u>

> If Defendant's position were adopted, an employer, after being held liable for FLSA violations, would be able unilaterally to choose to pay employees their unpaid overtime premium under the more employer-friendly of the two calculation methods. Given the remedial purpose of the FLSA, it would be incongruous to allow employees, who have been illegally deprived of overtime pay, to be short-changed further by an employer who opts for the discount accommodation intended for a different situation.

Id. Likewise, as EZPawn reasoned, applying the FWW method to FLSA misclassification cases is inconsistent with the declared policy of the FLSA. Id. at 405. EZPawn noted that if applied, the FWW method would permit employers to circumvent the FLSA's requirements and incentivize employers to err on the side of classifying employees as exempt because doing so had little financial risk since the employer would be permitted to argue that the half-time calculation method applied if they were later found to be in violation of the Act. Id.

This Court should adhere to congressional intent and the sound policy reasons articulated in Russell and EZPawn. Plaintiffs should not be short changed if liability is determined.

## V.   LIST OF POTENTIAL MOTIONS IN LIMINE

Pursuant to the Court's Order (Dkt. 573), Plaintiffs provide the following list of motions in limine they contemplate bringing as of today. Plaintiffs look forward to the opportunity to fully explain the basis for the exclusion of each of the following:

a)   Exhibits and witnesses relating to Defendant's claim that Plaintiffs were not working hard and/or were doing other non-work related activities during work hours;

b)   Any evidence or reference related to Defendant's "good faith" under 29 U.S. C. § 259 or the Court's summary judgment order on the issue;

c)   Any evidence or reference related to Defendant's lack of willfulness under 29 U.S.C. § 255(a) or the Court's summary judgment order on the issue;

d)   Any evidence or witnesses related to the issue of whether liquidated damages are appropriate;

e)   Any reference to the Department of Labor's September 8, 2006 Opinion Letter;

f)      Any testimony from Dr. Cohen regarding his onsite observations and interviews;

g)      Any references to O*NET or SOC;

h)      Any reference to Plaintiffs' counsel as being "Minnesota Lawyers," or from "out-of-town";

i)      Daniel Gilbert and David Carroll as testifying witnesses;

j)      Witnesses not identified in Defendant's witness lists (Dkts. 203 and 415) or version of the list narrowed pursuant to Court order;

k)      Witnesses who had their declarations stricken by the Court's Orders (Dkt. 530 and 571); and,

l)      Exhibits not produced in discovery.

## CONCLUSION

Plaintiffs have waited over five years for their day in court.  When that day finally comes, Plaintiffs seek to try their case as efficiently and cost-effectively as possible, in a single jury trial based on representative evidence, with them presenting their story first.  For the reasons stated above, Plaintiffs' trial plan should be adopted, and the Court should conclude that, if Plaintiffs prevail, their damages will be calculated by using the standard one and one-half (1.5) multiplier.

Dated: December 4, 2009          Respectfully Submitted,

NICHOLS KASTER, PLLP

s/Rachhana T. Srey
Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Rachhana T. Srey, MN Bar No. 340133
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 338-4878

ATTORNEYS FOR PLAINTIFFS

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Kathy L. Bogas, Charlotte Croson, Robert P. Davis, Michele R. Fisher, Paul J. Lukas, Jeffrey Morganroth, Mayer Morganroth, Donald H. Nichols, Robert L. Schug and Rachhana T. Srey.

I further certify that a copy of Exhibit D attached to the foregoing paper, which was filed under seal, was sent by email to the following: Robert P. Davis and Jeffrey Morganroth.

By:    s/Rachhana T. Srey
       Rachhana T. Srey
       4600 IDS Center
       80 South 8th St.
       Minneapolis, MN 55402
       Phone: (612) 256-3200
       Email: srey@nka.com
       [Attorney Bar No. 340133]

21