**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RYAN C. HENRY, individually and on
behalf of similarly situated employees,

      Plaintiffs,

-vs-

QUICKEN LOANS INC., a Michigan
corporation,

      Defendant.

Civil Action No. 04-CV-40346

Hon. Stephen J. Murphy, III

_____

**QUICKEN LOANS INC.'S MOTION TO PRECLUDE PLAINTIFFS WHO FAILED**
**TO DISCLOSE CLAIMS TO BANKRUPTCY COURT FROM PARTICIPATING**
**IN THIS CASE PURSUANT TO THE DOCTRINE OF JUDICIAL ESTOPPEL**

Defendant Quicken Loans Inc. ("Quicken Loans"), by its undersigned counsel, and pursuant to the doctrine of judicial estoppel and the Court's inherent authority to sanction bad-faith litigation practices, moves the Court for an order precluding approximately 73 Plaintiffs, who filed for bankruptcy and received discharges, or whose discharges are pending in the bankruptcy court, but failed to disclose their current claims against Quicken Loans in bankruptcy, from participating in this case, and dismissing their claims with prejudice.  In further support of its motion, Quicken Loans relies on its brief in support filed herewith, the authority contained therein and the attachments thereto, as well as all applicable case law and federal rules.

WHEREFORE, Quicken Loans respectfully requests that this Court:

  (A) Grant its motion in its entirety;

  (B) Enter an order precluding Plaintiffs who failed to disclose their
     current claims against Quicken Loans during bankruptcy
     proceedings from further participation in this case, and
     dismissing their claims in their entirety, with prejudice; and

(C)    Grant Quicken Loans any other relief this Court deems just and proper.

Respectfully submitted,
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant

By: _____/s/ Jeffrey B. Morganroth_____
      Mayer Morganroth (P17966)
      Jeffrey B. Morganroth (P41670)
344 N. Old Woodward Avenue, Suite 200
Birmingham, MI  48009
(248) 864-4000

Dated: February 4, 2011           Robert P. Davis, MAYER BROWN LLP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, individually and on
behalf of similarly situated employees,                    Civil Action No. 04-CV-40346

            Plaintiffs,                                         Hon. Stephen J. Murphy, III

-vs-

QUICKEN LOANS INC., a Michigan
corporation,

            Defendant.

---

QUICKEN LOANS INC.'S BRIEF IN SUPPORT OF ITS
MOTION TO PRECLUDE PLAINTIFFS WHO FAILED TO
DISCLOSE CLAIMS TO BANKRUPTCY COURT FROM PARTICIPATING
IN THIS CASE PURSUANT TO THE DOCTRINE OF JUDICIAL ESTOPPEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF UNDISPUTED FACTS ........................................................ 1

        A.     The Instant Wage and Hour Litigation ................................................... 1

        B.     Plaintiffs' Bankruptcy Proceedings ........................................................ 2

        C.     Plaintiffs Receive Discharges of Their Debts Based on Misleading
               Disclosures ............................................................................................. 3

III.    LAW AND ANALYSIS ...................................................................................... 4

        A.     The Doctrine of Judicial Estoppel ........................................................... 4

        B.     Other Courts Within the Sixth Circuit Have Routinely Dismissed Claims
               Not Disclosed in Bankruptcy Proceedings .............................................. 6

        C.     Plaintiffs' Claims Are Barred By the Doctrine of Judicial Estoppel ................... 9

               1.     Plaintiffs Have Assumed a Position Contrary to the Positions They
                      Asserted Under Oath in Bankruptcy Proceedings ...................................... 9

               2.     The Bankruptcy Court Adopted Plaintiffs' Contrary Positions
                      When It Discharged Their Debts ............................................................ 10

               3.     Plaintiffs' Omissions Did Not Result from Mistake or Inadvertence ...... 11

        D.     Plaintiffs with Uncertain Bankruptcy Filings Should Be Required to
               Submit Sworn Statements or Have Their Claims Immediately Dismissed ........ 14

IV.     CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Browning v. Levy,*
    283 F.3d 761 (6th Cir. 2001) ...................................................4

*Cusano v. Klein,*
    264 F.3d 936 (9th Cir. 2001) ...................................................9

*Eubanks v. CBSK Fin. Group, Inc.,*
    385 F.3d 894 (6th Cir. 2004) ...................................................9

*Gaskins v. Thousand Trails, LP,*
    521 F. Supp. 2d 693 (S.D. Ohio 2007) ...........................................*Passim*

*Hamilton v. State Farm Fire & Casualty Co.,*
    270 F.3d 778 (9th Cir. 2001) ...................................................6

*In re Coastal Plains, Inc.,*
    179 F.3d 197 (5th Cir. 1999) ...................................................6

*In re Johnson,*
    345 B.R. 816 (Bankr. W.D. Mich. 2006) .......................................... 10-12

*Lewis v. Weyerhaeuser Co.,*
    141 Fed. Appx. 420 (6th Cir. 2005) ...........................................*Passim*

*Lisiecki v. Bank of Am., N.A.,*
    No. 08-12380, 2009 WL 1438550 (E.D. Mich. May 19, 2009) .......................10, 12

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ...........................................................4

*Reynolds v. Comm'r,*
    861 F.2d 469 (6th Cir. 1988) ...................................................4

*Riddle v. Chase Home Fin.,*
    No. 09-11182, 2010 WL 3504020 (E.D. Mich. Sep. 2, 2010).......................*Passim*

*Stallings v. Hussman Corp.,*
    447 F.3d 1041 (8th Cir. 2006) .................................................10

*White v. Wyndham Vacation Ownership, Inc.,*
    617 F.3d 472 (6th Cir. 2010) ................................................*Passim*

**CONCISE STATEMENT OF ISSUE PRESENTED**

I.      WHETHER PLAINTIFFS WHO FAILED TO DISCLOSE THEIR CURRENT OVERTIME CLAIMS AGAINST QUICKEN LOANS DURING THEIR RESPECTIVE BANKRUPTCY PROCEEDINGS ARE JUDICIALLY ESTOPPED FROM PURSUING SUCH CLAIMS IN THIS CASE, AND WHETHER, PURSUANT TO THE DOCTRINE OF JUDICIAL ESTOPPEL, ALL SUCH CLAIMS SHOULD BE DISMISSED WITH PREJUDICE?

|                        |     |
|------------------------|-----|
| Defendant says:        | Yes |
| Plaintiffs say:        | No  |
| The Court should say:  | Yes |

**LOCAL RULE 7.1(C)(2) STATEMENT OF MOST APPROPRIATE AUTHORITIES**

**CASES**

*White v. Wyndham Vacation Ownership, Inc.*,
      17 F.3d 472 (6th Cir. 2010)

*Lewis v. Weyerhaeuser Co.*,
      141 Fed. Appx. 420 (6th Cir. 2005)

*Riddle v. Chase Home Fin.*,
      No. 09-11182, 2010 WL 3504020 (E.D. Mich. Sept. 2, 2010)

*Lisiecki v. Bank of Am., N.A.*,
      No. 08-12380, 2009 WL 1438550 (E.D. Mich. May 19, 2009)

*Gaskins v. Thousand Trails, LP*,
      521 F. Supp. 2d 693 (S.D. Ohio 2007)

## I.      INTRODUCTION

Controlling Sixth Circuit law holds that parties are judicially estopped from pursuing claims they fail to disclose in bankruptcy proceedings where, based on such incomplete disclosures, they receive a discharge of their debts.  Quicken Loans has learned that numerous Plaintiffs[1] in this case filed voluntary bankruptcy petitions in various bankruptcy courts, and received discharges of their debts, without disclosing their instant claims to the bankruptcy court or their creditors.[2]  Accordingly, binding precedent requires that all such Plaintiffs be precluded from participating in this case and that their claims against Quicken Loans be dismissed with prejudice.

Plaintiffs' omissions of purported claims were not the result of mistake or inadvertence, including because: (1) Plaintiffs were well aware of the factual bases for their undisclosed claims – especially considering this case was filed seven years ago; (2) Plaintiffs had a motive to conceal alleged claims in order to minimize assets; and (3) Plaintiffs' failures to amend their petitions defeat any claim of an absence of bad faith.  Plaintiffs cannot benefit from this type of manipulation of the judicial process.  The Court should grant Quicken Loans' motion and dismiss, with prejudice, all claims asserted by Plaintiffs who failed to disclose their instant claims during bankruptcy proceedings.

## II.      STATEMENT OF UNDISPUTED FACTS

### A.      <u>The Instant Wage and Hour Litigation</u>

This FLSA overtime case was filed on May 17, 2004.  The Court has determined the time period at issue runs from May 17, 2002 to September 8, 2006.  *See* Dkt. Nos. 571, 666.  In other

---

[1] A detailed list of all Plaintiffs who filed for bankruptcy without disclosing their instant claims against Quicken Loans is attached as Ex. 1.

[2] Importantly, Plaintiffs never disclosed such bankruptcy filings during discovery in this case – even though such bankruptcy proceedings directly effect their ability to pursue claims in this action.

words, the purported overtime hours for which Plaintiffs seek additional compensation in this case are alleged to have been worked during the workweeks between May 17, 2002 and September 8, 2006.  Plaintiffs received regular payroll checks during this period that detailed the amount of their wages.   Furthermore, prior to filing this case, Plaintiffs' counsel held a solicitation meeting on May 11, 2004, encouraging Quicken Loans' mortgage bankers to join this case.  *See* Dkt. No. 72-5.  Given such facts, it cannot be reasonably argued that Plaintiffs did not have reason to know of their current overtime claims when they filed for bankruptcy.

>    **B.**      **Plaintiffs' Bankruptcy Proceedings**

At least 73 Plaintiffs filed voluntary bankruptcy petitions in various bankruptcy courts during the period at issue in this case and/or pursued a discharge of debts in bankruptcy at times relevant to their claims *sub judice*.   Attached hereto as Exhibit 1 is a list of those Plaintiffs. Most, if not all, of these Plaintiffs' bankruptcy petitions were prepared and filed with the assistance of counsel.  *See* Plaintiffs' Voluntary Bankruptcy Petitions, Exs. 2,4, 6, 8, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 30, 32, 34, 36, 37, 39, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72, 74, 76, 78, 80, 82, 84, 86, 88, 90, 92, 94, 96 (collectively the "Petitions").

In each of these bankruptcy petitions Plaintiffs "declare[d] under penalty of perjury that the information provided in [their] petition is true and correct."  *See*, e.g. Ex. 2, p. 3; *see also* the Petitions, generally.  Likewise, the "Declarations Concerning Debtor's Schedules" submitted in support of each Plaintiff's bankruptcy petition, respectively, provided:

>    I declare under penalty of perjury that I have read the foregoing summary and schedules … and that they are true and correct to the best of my knowledge, information, and belief.

*See*, *e.g*., Ex. 2, p. 23.

Further, Schedule B to the bankruptcy petitions required each Plaintiff to list and describe all of his/her assets, including, but not limited to, all "contingent and unliquidated claims of every nature" and the current value of all such claims:

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

*See, e.g.*, Ex. 2, p. 9, ln. 21; *see also* the Petitions.  Again, Plaintiffs swore under oath to the respective bankruptcy courts that they had no such contingent or unliquidated claims.[3]

### C.  Plaintiffs Receive Discharges of Their Debts Based on Misleading Disclosures

As stated above, the various petitions and schedules signed by Plaintiffs failed to disclose their claims in this case.  *See* the Petitions.  In reliance on Plaintiffs' sworn statements, the bankruptcy courts discharged their debts.  *See* Exs. 3, 5, 7, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 31, 33, 35, 38, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79, 81, 83, 85, 87, 89, 91, 93, 95, 97 (collectively the "Discharges").  Quicken Loans has attached to its motion numerous discharges Plaintiffs received from the various bankruptcy courts, which are currently available through the Pacer system.[4]   None of the Plaintiffs who received these discharges ever disclosed the claims they assert against Quicken Loans in this case.  Nor did they

---

[3] Only two Plaintiffs referenced any contingent wage and hour claims in bankruptcy proceedings.  And even those disclosers were misleading.  Although Audry Brooks referenced this lawsuit, she valued her overtime claim at $0.00 and received a discharge based on her stated value.  Exs. 13-14.  Chris Gogos disclosed $647.00 in "withheld wages" that appears to related to a different employer and not Quicken Loans.  Exs. 34-35.  Neither Brooks nor Gogos properly disclosed their current claims against Quicken Loans or the purported value of such claims.  For example, notwithstanding her stated value of $0.00 in bankruptcy proceedings, Brooks now asserts a claim against Quicken Loans for $15,852.44.  *See* Plaintiffs' Proposed Exhibit 29.  Similarly, Gogos does not seek $647.00, but alleges a claim of $9,688.39.  *Id.*  Based on their deficient disclosures, Brooks and Gogos should be treated the same as the other Plaintiffs who failed to properly disclose their current claims against Quicken Loans.

[4] *See* the Discharges.

seek to amend their sworn bankruptcy petitions to identify any such claims as assets. *See* the Petitions.[5]

Another group of Plaintiffs likewise received discharges during the relevant time period. However, Quicken Loans has been unable to obtain additional information concerning these filings because their bankruptcy records are not available online.  Quicken Loans has requested copies of these files from the central archive in Chicago.   Nevertheless, the temporal nexus between these Plaintiffs' discharges and the period at issue here strongly suggests they too failed to disclose their current claims during bankruptcy proceedings.  *See* the Discharges.

The law does not allow Plaintiffs to avail themselves of the bankruptcy courts without fully disclosing their assets (including, without limitation, their claims in this case) and, thereafter, to pursue undisclosed claims for their own benefit and to the detriment of their creditors.  Rather, they are judicially estopped from pursuing such undisclosed claims and must be dismissed from this case.

### III.    LAW AND ANALYSIS

### A.    The Doctrine of Judicial Estoppel

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The purpose of the doctrine is to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2001).   The Sixth Circuit has held that judicial estoppel is a "rule against 'playing fast and loose with the

---

[5] Of the 73 Plaintiffs at issue in this motion, all but four already have received discharges.  *See* Ex. 1.  And these remaining four Plaintiffs are in the final stages of the bankruptcy process and their discharges are imminent.  Like the others, they did not disclose their claims in this case. Exs. 8, 29, 36, and 39.  The Court should order these four Plaintiffs to immediately amend their bankruptcy petitions, and disclose their current claims (providing evidence of such amendments to the Court by February 8, 2011) or have their claims immediately dismissed.

courts,' 'blowing hot and cold as the occasion demands,' or ' hav[ing] [one's] cake and eating it too.'" *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 424 (6th Cir. 2005) (*quoting Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)).

"Leniency has not been the watchword that characterizes the Sixth Circuit's treatment of judicial estoppel claims in the bankruptcy context." *Riddle v. Chase Home Fin.*, No. 09-11182, 2010 WL 3504020, at * 3 (E.D. Mich. Sept. 2, 2010) (attached as Ex. 121). In fact, in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), the Sixth Circuit recently established a hard-line approach in applying the doctrine of judicial estoppel to bar claims that are not identified in a plaintiff's prior bankruptcy proceedings. In *White*, although the plaintiff previously filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter, the plaintiff did not disclose the existence of her harassment claims against her former employer in her bankruptcy petition. Shortly after her Chapter 13 plan was approved, the plaintiff sued her former employer in federal court. The defendant filed a motion to dismiss based on the doctrine of judicial estoppel. The district court granted the defendant's motion and dismissed the plaintiff's claims. *Id.* at 475.

On appeal, the Sixth Circuit set forth the following elements as criteria for finding judicial estoppel in a bankruptcy-specific context: "(1) [the plaintiff] assumed a position that was contrary to the one that [the plaintiff] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of the final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence." *Id.* at 478. In determining whether the plaintiff's omission resulted from mistake or inadvertence, the Sixth Circuit held that courts should consider whether: "(1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive

for concealment; and (3) the evidence indicates an absence of bad faith." *Id.* The Sixth Circuit then affirmed the dismissal, finding that all elements of judicial estoppel were satisfied. Significantly, the Sixth Circuit held that although the plaintiff made several attempts to correct the omission of her harassment claim from her bankruptcy pleadings, judicial estoppel applied because such efforts did not demonstrate an absence of bad faith. *Id.* at 482-83.

With respect to mistake or inadvertence, courts have made clear that "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation [or discharge] to suggest that it may have a possible cause of action, then that is a 'known' cause of action that must be disclosed." *See Gaskins v. Thousand Trails, LP,* 521 F. Supp. 2d 693, 697 (S.D. Ohio 2007) (*quoting In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999) (internal ellipses and quotation marks omitted)); s*ee also Riddle,* 2010 WL 3504020, at *5 (holding that judicial estoppel applies where "[t]he plaintiff knew of the facts underlying her claims against [the defendant] well before the commencement of the bankruptcy proceedings"); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 784 (9th Cir. 2001) ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."). Further, "a debtor always has a motive for concealing potential causes of action in order to minimize income and assets." *Gaskins,* 521 F. Supp. 2d at 697-98 (citing *Lewis,* 141 Fed Appx. at  426). Finally, to determine whether a plaintiff can establish an absence of bad faith, the court should "look, in particular, at [the plaintiff's] 'attempts' to advise the bankruptcy court of her omitted claim." *White,* 617 F.3d at 478.

**B.**      **Other Courts Within the Sixth Circuit Have Routinely Dismissed Claims Not Disclosed in Bankruptcy Proceedings**

6

Consistent with *White*, courts within the Sixth Circuit routinely have held that the doctrine of judicial estoppel bars claims not disclosed in a bankruptcy petition.

*Gaskins v. Thousand Trails*, *LP*, 521 F. Supp. 2d 693 (S.D. Ohio 2007), involves circumstances that are strikingly similar to the facts of this case. In *Gaskins*, the plaintiff filed a Chapter 7 bankruptcy petition in August 2004, but did not list overtime or discrimination claims as contingent or unliquidated claims in her schedule of assets. *Id*. at 696. The plaintiff's bankruptcy case was closed in February 2005. *Id*. In November 2006, the plaintiff then filed a charge of discrimination with the EEOC and a lawsuit in federal court. The plaintiff asserted claims against her former employer for discrimination, retaliation and failure to pay overtime. *Id*. at 695. With respect to her overtime claims, the plaintiff asserted a collective action under the FLSA on behalf of at least 100 other employees. *Id.* The plaintiff claimed in her complaint that she regularly worked overtime, she regularly observed younger employees being treated more favorably, and she regularly was subjected to inappropriate comments and disparate treatment. The plaintiff further alleged that the discrimination and overtime violations occurred "over a two-and-a-half year period starting in late 2002 or early 2003." *Id*. at 697.

The *Gaskins* defendants filed a motion to dismiss or for summary judgment, arguing that the plaintiff's claims were barred by the doctrine of judicial estoppel. The court held that the plaintiff was "well-aware of the factual basis for [her] claims prior to the filing of her bankruptcy petition." *Gaskins*, 521 F. Supp. 2d at 697. Further, citing the Sixth Circuit in *Lewis*, *supra*, the court held that "a debtor always has a motive for concealing potential causes of action in order to minimize income and assets." *Id.* at 697-98 (citing *Lewis*, 141 Fed. Appx. at 426) . The court then held that "[t]here is no evidence in the record that Plaintiff took steps to amend her bankruptcy petition to disclose" her discrimination and overtime claims. *Id.* Thus, the *Gaskins*

court held that the doctrine of judicial estoppel barred the plaintiff's overtime and discrimination claims. *Id.*[6]

Similarly, in *Lewis*, *supra*, the plaintiff filed a voluntary Chapter 13 bankruptcy petition on December 26, 2001, but did not list discrimination claims against her former employer as "other contingent and unliquidated claims." 141 Fed. Appx. at 422-23. On February 26, 2002, the bankruptcy court confirmed the plaintiff's Chapter 13 bankruptcy plan. *Id.* at 422. One month later, the plaintiff's lawyer wrote a letter to the EEOC alleging plaintiff's former employer discriminated against the plaintiff. *Id.* On July 18, 2002, the plaintiff then filed a charge of discrimination with the EEOC. After receiving a right to sue letter, the plaintiff filed a lawsuit on October 10, 2002. *Id.*

The District Court in *Lewis* granted the defendant's motion for summary judgment based on the doctrine of judicial estoppel, holding that Lewis "intentionally omitted" her discrimination claim from her bankruptcy schedules. *Lewis*, 141 Fed. Appx. at 423. The Sixth Circuit affirmed, holding that the plaintiff's claims against her former employer were barred by the doctrine of judicial estoppel. The Sixth Circuit, in relevant part, held that: (1) the plaintiff's "pursuit of her current discrimination action is without question 'contrary to' her sworn bankruptcy petition"; (2) "pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel"; (3) "it is also clear that in confirming [the plaintiff's] Chapter 13 plan, the bankruptcy court adopted [the plaintiff's] statement that she had no potential causes of action"; and (4) "the minimal alleged effort [the

---

[6] The Court held that judicial estoppel did not bar the plaintiff's retaliation claim because there was no factual basis for the retaliation claim at the time the plaintiff filed her bankruptcy petition. *See id.* at 698. Instead, the factual basis for the plaintiff's retaliation claim did not arise until five months after her bankruptcy estate closed. *Id.* Here, as demonstrated above and below, Plaintiffs' own allegations demonstrate they knew the factual bases for **all** of their claims months, and in many cases years, before they filed for bankruptcy and/or received discharges of their debts.

plaintiff] put forth to inform the Trustee's staff of her potential discrimination claim does not establish her omissions were inadvertent." *Id*. at 425-27.

Further, in *Riddle*, *supra*, the plaintiff filed a Chapter 7 bankruptcy petition on July 28, 2008, but did not list claims against the defendant in her initial or amended schedule of assets as contingent and unliquidated claims. 2010 WL 3504020, at *1-2. The bankruptcy court discharged the plaintiff's debts on January 30, 2009. The plaintiff, however, had filed a lawsuit against the defendant in state court a week before the bankruptcy discharge. After the case was removed to the U.S. District Court for the Eastern District of Michigan, the court granted the defendant's motion to dismiss based on the doctrine of judicial estoppel. *Id*., at *5-6.

### C.   Plaintiffs' Claims Are Barred By the Doctrine of Judicial Estoppel

As demonstrated below, like in *White, Gaskins, Lewis* and *Riddle*, all of the elements of judicial estoppel articulated in *White* are satisfied here. Thus, the Court should grant Quicken Loans' motion, preclude all Plaintiffs who failed to disclose this case in bankruptcy proceedings from further participation herein, and dismiss their claims with prejudice.

#### 1.   *Plaintiffs Have Assumed a Position Contrary to the Positions They Asserted Under Oath in Bankruptcy Proceedings*

Pursuant to Section 521(1) of the Bankruptcy Code, a debtor is required to file "a schedule of assets and liabilities" in support of a bankruptcy petition. 11 U.S.C. § 521(1). "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis*, 141 Fed. Appx. at 424 (*citing Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001)). Further, the Sixth Circuit has noted that "[t]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis*, 141 Fed. Appx. at 424 (internal quotation and citation omitted).

Pursuant to federal law, Plaintiffs were required to disclose all potential claims in their bankruptcy petitions. *Id.*; *see also Eubanks*, 385 F.3d at 897-98. Plaintiffs swore under oath that they had no "contingent or unliquidated claims."[7] By opting into this lawsuit and asserting claims that arose between May 17, 2002 through September 8, 2006 (a time period relevant to all of the bankruptcy petitions filed by Plaintiffs), Plaintiffs have unquestionably assumed positions contrary to the positions they asserted under oath in their bankruptcy proceedings. *See White*, 617 F.3d at 479 (holding that the plaintiff's failure to identify claims in a bankruptcy petition amounts to a statement that such claims do not exist); *see also Lewis*, 141 Fed. Appx. at 425 (holding that the later pursuit of a claim that is not identified in a bankruptcy petition "is without question" taking a contrary position sufficient to support application of judicial estoppel). Thus, like in *Gaskins*, *Lewis*, *White* and *Riddle*, the first element of judicial estoppel is satisfied.

## 2. *The Bankruptcy Court Adopted Plaintiffs' Contrary Positions When It Discharged Their Debts*

The bankruptcy courts discharged Plaintiffs' debts at various times concerning the period at issue in this case.[8] The specific dates of those discharges are listed in Exhibit 1. In doing so, the bankruptcy courts relied on Plaintiffs' sworn bankruptcy petitions and adopted their assertions that they had no contingent or unliquidated claims against Quicken Loans. *See Lewis*, 141 Fed. Appx. at 425 (holding that "it is also clear that in confirming [the debtor's] Chapter 13 plan, the bankruptcy court adopted [the debtor's] statement that she had no potential causes of action"); *see also Riddle*, 2010 WL 3504020, at *5 ("When the bankruptcy court discharged the plaintiff's debts, it presumably relied on the representation that the plaintiff had no assets other than the ones she listed on her sworn schedule of assets."); *Lisiecki v. Bank of Am., N.A.*, No. 08-

---

[7] *See* the Petitions.

[8] *See* the Discharges.

12380, 2009 WL 1438550, at *3 (E.D. Mich. May 19, 2009) ("A bankruptcy court implicitly accepts a debtor's statements regarding the absence of any legal action on the schedules or financial statement when discharging a debt") (attached as Ex. 122); *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1048 (8th Cir. 2006) ("[W]here the bankruptcy court issues a 'no asset' discharge, the bankruptcy court has effectively adopted the debtor's position."); *In re Johnson*, 345 B.R. 816, 822 (Bankr. W.D. Mich. 2006) (the bankruptcy court "implicitly accepted the statements in the Debtor's schedules and statement of financial affairs when it granted her a discharge of debts").  Thus, the second element for finding judicial estoppel is satisfied.

### 3. *Plaintiffs' Omissions Did Not Result from Mistake or Inadvertence*

Plaintiffs' failures to identify their claims in the bankruptcy petitions did not result from mistake or inadvertence.

#### a. **Plaintiffs Knew of the Factual Basis of Their Undisclosed Claims**

Plaintiffs cannot dispute that they knew the factual bases for their undisclosed claims during their respective bankruptcy proceedings.  The discharges of Plaintiffs' debts all occurred between August 9, 2002 and January 19, 2011.  Ex. 1.  In fact, 68 of the 73 Plaintiffs at issue filed for bankruptcy and/or obtained discharges *after* Plaintiffs' counsel filed the instant action on May 17, 2004.  *Id.*  Further, Plaintiffs' Complaint specifically alleged that Quicken Loans denied "all loan consultants" overtime pay for hours worked in excess of forty (40) per week.  *See* Dkt. No. 1, ¶ 6.  Plaintiffs also alleged willful violations against Quicken Loans and pursued back pay awards for a three-year period reaching as far back as May 17, 2001.  *Id.*, ¶ 8.   As in *Gaskins*, Plaintiffs' own allegations demonstrate that they knew the factual bases for the claims asserted in this case well before they either filed for bankruptcy or received discharges from the bankruptcy courts.

11

b.      **Plaintiffs Had Motive to Conceal the Claims They Now Attempt to Assert**

Plaintiffs clearly had a motive to minimize their assets by concealing the claims they now seek to assert against Quicken Loans. *See Gaskins*, 521 F. Supp. 2d at 697-98 (citing *Lewis*, 141 Fed Appx. at 426). By concealing their potential claims against Quicken Loans, Plaintiffs were able to "stroll[] away from their chapter 7 case with a discharge of their debts" and retain any future recovery from those claims while their creditors received nothing. *See Johnson*, 345 B.R. at 823. "This is precisely the type of 'windfall' judicial estoppel seeks to prevent." *Id.*

c.      **Plaintiffs Cannot Show an Absence of Bad Faith**

Plaintiffs bear the burden of establishing an absence of bad faith. *See Lisiecki*, 2009 WL 1438550, at *3. The Sixth Circuit has held that while under certain circumstances a plaintiff may be able to establish an absence of bad faith by showing attempts to correct an omission, because "the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480. Moreover, "since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing" of any such efforts "is also significant." *Id.*

The pleadings in Plaintiffs' bankruptcy proceedings show that they ***did not*** amend, or seek to amend, their bankruptcy petitions to reflect the existence of the claims they now assert against Quicken Loans. Thus, Plaintiffs cannot demonstrate any effort to correct their failure to disclose their claims in their bankruptcy proceedings and, thus, cannot demonstrate an absence of bad faith. *See Lewis,* 141 Fed. Appx. at 427 (Sixth Circuit held that the plaintiff failed to establish inadvertence where she "never sought to amend her bankruptcy schedules, nor did she file a motion or make any other sort of attempt to inform the bankruptcy court of her discrimination action"); *Gaskins*, 521 F. Supp. 2d at 698 (holding judicial estoppel bars claims

12

where "[t]here is no evidence in the record that Plaintiff took steps to amend her bankruptcy petition to disclose these claims.").

In fact, instead of amending their bankruptcy petitions, many Plaintiffs waited until just after the bankruptcy courts discharged their debts, and closed their bankruptcy cases, before opting into this case. For example, Michael George obtained a discharge from the bankruptcy court on September 20, 2006. Ex. 31. Just two months later, on November 27, 2006, he conveniently decided to opt into this case. *See* Dkt. No. 326.

Others blatantly filed for bankruptcy without disclosing their claims in this case, even though they were ***already*** involved in the litigation at the time they filed their bankruptcy petitions. For example, Michelle Arthur opted into this case on November 29, 2006. *See* Dkt. No. 331. But she did not file for bankruptcy until March 4, 2008. Ex. 2. And she received her discharge from the bankruptcy court on July 9, 2008. Ex. 3. Simply put, even though she had been a Plaintiff in this case for two years ***before*** she entered bankruptcy, she ***never*** disclosed her claims in this case. Likewise, Steven Pratt (one of the very first Plaintiffs in this case who now makes an alleged claim of $45,340.69) opted into this case on May 20, 2004. Dkt. No. 2. However, when he received a discharge of debts from the bankruptcy court six years later (on May 20, 2010) he had ***never*** disclosed his claims against Quicken Loans. Exs. 60-61. Byron Suliaman similarly filed his written consent to opt into this case on February 9, 2006 (and currently seeks an award of alleged back pay in the amount of $48,562.21). Dkt. No. 224. Yet, when he accepted his discharge in bankruptcy on March 9, 2010, he had failed to inform his creditors and the bankruptcy court of his supposed windfall from this case. Exs. 88-89.

Such timing is another reason why Plaintiffs cannot satisfy their burden of demonstrating an absence of bad faith. *See White,* 617 F.3d at 482 (noting that any argument regarding an

13

absence of bad faith is undermined by the fact that the plaintiff waited until "just after the plan confirmation hearing" to file her claim in district court); *Lewis*, 141 Fed. Appx. at 428 (holding that a finding of bad faith is supported where the plaintiff began the process of filing her discrimination claim with the EEOC only one month after her bankruptcy plan was approved).

**D.**     **Plaintiffs with Uncertain Bankruptcy Filings Should Be Required to Submit Sworn Statements or Have Their Claims Immediately Dismissed**

Exhibit 1 further identifies a smaller group of Plaintiffs who have filed bankruptcy petitions during the relevant period and received discharges, but whose disclosure status is currently uncertain because their bankruptcy files cannot be accessed electronically. *See also* Exs. 98-120. However, the timing of their petitions and discharges from the bankruptcy courts strongly suggests that they likewise did not disclose their claims in this case before receiving a discharge. Quicken Loans has requested copies of each such Plaintiff's bankruptcy file from the central archive in Chicago, and will supplement its exhibits hereto once those files have been obtained. In the interim, however, so as not to impede an expeditious trial in this case, all such Plaintiffs should be ordered to file sworn statements, under penalty of perjury, stating that they either did not file for bankruptcy or that they fully disclosed their claims in this case to the bankruptcy court (subject to challenge by Quicken Loans once their actual bankruptcy files are available for review). These statements should be filed on or before the February 8, 2011. If any such Plaintiff fails to file the required statement, they should be immediately dismissed from this case. Conversely, if such Plaintiffs file statements with the Court and it later is determined that they were false, in addition to having their claims dismissed, the Court should impose further monetary sanctions.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Quicken Loans' motion, preclude Plaintiffs who did not disclose their claims in this case during bankruptcy proceeding from further participation in this case, dismiss all claims asserted by such Plaintiffs with prejudice, and award Defendant any other relief this Court deems just and proper.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant

By:      /s/ Jeffrey B. Morganroth
      Mayer Morganroth (P17966)
      Jeffrey B. Morganroth (P41670)
344 N. Old Woodward Avenue, Suite 200
Birmingham, MI  48009
(248) 864-4000

Dated: February 7, 2011        Robert P. Davis, MAYER BROWN LLP

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant

By: ____/s/ Jeffrey B. Morganroth____
       Mayer Morganroth (P17966)
       Jeffrey B. Morganroth (P41670)
344 N. Old Woodward Avenue, Suite 200
Birmingham, MI 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

Robert P. Davis
MAYER BROWN LLP
Attorneys for Defendant
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

Dated:   February 7, 2011

8756133