UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, et al.,

      Plaintiffs,

v.

QUICKEN LOANS, INC.,

      Defendant.

_____/

Case No. 04-cv-40346

HONORABLE STEPHEN J. MURPHY, III

## NOTICE OF PROPOSED JURY CHARGE AND VERDICT FORM

The case has been tried to a jury over the course of four weeks. The Court requested and received proposed special jury instructions and suggested verdict forms from both parties. After receiving the proposals, the Court supplied the parties with a proposed verdict form prepared in response to the parties's suggestions and based upon extensive research of decisions involving trial of FLSA overtime cases. In addition, the Court provided the parties with proposed standard, or "boilerplate," jury instructions commonly used in federal civil trials.[1]

At the close of all evidence, the Court conducted a lengthy charge conference on March 7, 2011. The parties have not agreed upon the verdict form and objected to aspects of the form proposed by the Court. The parties have not agreed upon any special instructions. The parties had no objections to the standard instructions provided by the Court.

Now then, the Court issues its proposed final jury charge and verdict form. The parties may file short (not to exceed three pages) written objections and suggested corrections to

---

[1] Both parties moved for judgment under Fed. R. Civ. P. 50(a) at appropriate times in the trial and the Court has taken both motions under advisement.

the charge no later than noon on Friday, March 11, 2011.  The Court will consider the written objections, then provide to the parties a final charge that it will read to the jury.  On March 14, 2011, at 9:00 a.m., prior to final argument in the case, the Court will make a record of all objections to the final charge.

## SUPPORTING ANALYSIS

I.   <u>Representative Testimony</u>

In the view of the Court, Quicken's insistence on individualized proof for every plaintiff in this collective action is not supported by case law.  Quicken made a business decision to classify mortgage bankers as exempt and not keep track of their work hours.  While the Court is sympathetic to the current posture of the case, the law does not place the consequences of this decision, from an evidentiary point of view, on the Plaintiffs, who may be entitled to overtime.

Pursuant to *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), and its progeny, Plaintiffs' burden to prove the prima facie case of overtime hours worked by the collective may be based on representative testimony and need not be completely precise, because Quicken is not able to produce accurate records of the hours the employees worked.  Quicken has brought to the Court's attention two cases in which courts rejected representative testimony on the basis of a lack of representativeness -- *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 951–52 (4th Cir. 1995), and *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792–96 (1st Cir. 1991).  But neither case presents facts that are similar to this one.

In *DeSisto*, the Department of Labor ("DOL") brought suit on behalf of 244 employees at schools run by  the defendant for denial of overtime wages.  *DeSisto*, 929 F.2d at 791. Three types of employees — Dormitory Parents ("DP"), Assistant Dormitory Parents ("ADP"), and assorted "blue collar workers" — were involved in the collective action.  *Id.* at

790–91.  The schools had two locations: one in Florida, and one in West Stockbridge, Massachusetts.  *Id.* at 790.  At trial, DOL presented the testimony of a school compliance officer, and *just one* member of the 244-person collective action.  *Id.* at 791.  The First Circuit concluded that DOL had not even met the "minimal" burden of proof required under *Mt. Clemens*.  The one employee who testified was found not to be representative of the rest of the plaintiffs -- even though he had been both a DP and an ADP -- because he worked in a program that was not a part of the main campus, had never observed the Florida campus, and had no knowledge of employment practices with regards to "blue collar workers."  *Id.* at 793.  Thus, it remains true that there is "no case . . . holding that one employee can adequately represent 244 employees holding a variety of positions at different locations."[2]  *Id.*

The *Southern Maryland Hospital* court reached the same conclusion when confronted with similar, and perhaps more extreme, issues of the ability of testifying witnesses to support a damage award for non-testifying witnesses.  In that case, the DOL sued on behalf of 3,368 employees working for the defendant hospital.  The employees in the suit straddled fifty-two different departments at the hospital, and the employees who joined the suit represented "a variety of departments, positions, time periods, shifts, and staffing needs."  *Id.* at 952.  Fifty-four different witnesses testified, which, at just over 1% of the total pool, was the smallest ratio used in any reported FLSA case.  *Id.* at 951–52.  Even with the presentation of fifty-four witnesses, however, representatives of numerous hospital departments never testified, and contradictory testimony about whether unpaid overtime

---

[2]     The *DeSisto* court did point to a case finding that one employee *could*, in appropriate circumstances, be sufficient as to representation.  *See Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989) (finding one employee's testimony, plus testimony of compliance officer, sufficient to support award to thirty-two employees, when all employees had same job description and parties stipulated testifying employee was representative).

was worked at all in certain departments was presented. *Id.* at 952.  The Fourth Circuit concluded that the representative witnesses were inadequate to reflect the "scope and complexity" of the case, and remanded the case for a new trial with testimony from a greater pool of employees.

There is one additional case in which a court of appeals has sent back a district court's award of damages to non-testifying plaintiffs in a FLSA case based on issues with the representative testimony, but it does not cut strongly in favor of either parties' arguments as to representative testimony in this case. *Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994), involved seventy newspaper reporters working for five regional "groups" in a central office; each group was responsible for publishing several newspapers. *Gateway Press*, 13 F.3d at 688 & n.3.   At trial, twenty-two employees testified as to the "pattern and practice of hours worked" by the employees, including at least one from each group. *Id.* at 701.  But the Third Circuit found problems with the representativeness of the testimony: it could not discern from the record whether all of the testifying employees were reporters, and most testifying witnesses did not indicate the paper that they worked for. *Id.* While the Third Circuit did conclude that the DOL "appear[ed] to have met [the] burden" of *Mt. Clemens*, the court of appeals nonetheless ordered a remand to the district court to "carefully scrutinize the evidence before denying or allowing back pay to the non-testifying reporters." *Id.* at 702.

It appears that as a prima facie matter, the plaintiffs have met the *Mt. Clemens* standard of proof.   The case deals with *one type of employee*: a mortgage banker. Testimony has been adduced from all of the offices in which Quicken employs loan officers, and from many of the "teams" within those offices.  The testimony reveals a high level of consistency in terms of the agreements these individuals signed when they entered

employment, the initial training they received, the motivational tactics their supervisors used, and their day-to-day duties, despite the differences between teams and supervisors. There has also been consistency in some of the less favorable aspects of Plaintiffs' case: disciplinary records, issues of credibility, time spent procrastinating, and the like. Quicken has itself called mortgage bankers to attack the credibility of Plaintiffs' witnesses, and to prove the administrative exemption. In addition, employees responsible for overseeing large groups of mortgage bankers (e.g., Jay Farner and Jeff Perry) have testified about the uniformity of their management practices with regard to mortgage bankers across various offices. There is also significant documentary evidence that overtime hours were expected and encouraged by Quicken. Short of ordering every single Plaintiff to testify in Court, it does not seem supported in law to have the Plaintiffs do more than what they have already done. *See Mt. Clemens*, 328 U.S. at 687–88; *U.S. Dep't of Labor v. Cole Enterp., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995) (finding estimates of amount of back wages owed to nontestifying employees "based on the employees' interview statements, the employment records, and the employees' testimony at trial" acceptable, so long as employees are "fairly representative" and defendants have not come forward with precise evidence of hours worked).

The only case the Court has found in which non-testifying plaintiffs failed to present sufficient evidence to raise a prima facie case of overtime is one in which there was not even evidence that the non-testifying plaintiffs had worked for the defendant-employer. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87–88 (affirming judgment as matter of law against plaintiffs who "failed to submit any evidence whatsoever on their behalf" and there was no way of determining either their pay rate or if they worked any overtime at all). There is, at the minimum, evidence in this case to suggest that all Plaintiffs worked as

mortgage bankers at Quicken Loans at the relevant time in suit. That is enough to satisfy their prima facie case.

Based upon the foregoing and as reflected in the Court's proposed verdict form, discussed in open court on March 7, 2011, the Court finds that determination of whether or not Plaintiffs have met their burden of proof with respect to both testifying and non-testifying Plaintiffs is a jury question, rather than a matter of law.[3] Whether or not the *facts adduced at trial* show that Plaintiffs who testified are sufficiently representative of Quicken's mortgage banker to show that the non-testifying Plaintiffs also worked overtime is, in the view of this Court, a factual determination. The Court can only take that question from the jury if there are insufficient facts for a reasonable jury to conclude that the testimony presented by Plaintiffs does not show that overtime was worked by all members of the collective action. There has been enough evidence in the case to overcome that barrier, however, even if, on its own volition, the Court might find differently from the jury on the issue.

II.   Applying the *Mt. Clemens* Standard

The Court will briefly explain its application of the *Mt. Clemens* standard to a practical, reliable jury form for the determination of the hours of overtime worked here.

It is established law in the Sixth Circuit that plaintiffs are permitted to extrapolate from the damages proved as to testifying employees to the non-testifying employees. *Cole Enterp.*, 62 F.3d at 781. On nuts and bolts application of this point, however, there is little written authority. As noted in footnote three, *supra*, most of the published cases

---

[3]   There is scant direct authority for this finding given that most trials involving resolution of the issue have been to the bench an not to a jury. In those bench trials, however, the Courts have consistently treated the question of representativeness as one of fact and not law. Therefore, the Court finds in this case that the question is properly resolved by the jury and will ask about it on the verdict form.

addressing the issue come from *bench* trials, rather than jury trials.  Nonetheless, there are some  principles from the cases that are relevant here.  While the cases do not demand punctilious focus on each week of every plaintiff's claim, they do provide some guideposts for rooting the determination of damages in the facts presented at trial, while not coercing the jury into engaging in speculation.

As the Court said on the record prior to the close of plaintiffs' case, the formula for determining overtime wages owed is as follows:

**Wages Owed = (Hours of OT / Week) * (Weeks Worked) * (Pay Rate / OT Hour)**

The parties have agreed that Quicken's exhibit 202 will serve as the baseline exhibit for proving weeks worked. The Court will compute the relevant overtime pay rate as a matter of law.  Thus, the main disputed factual question that the jury will have to determine is the number of hours of overtime worked, per week, by each plaintiff.

One repeatedly used method among district courts, in bench trials, for the computation of damages owed non-testifying plaintiffs is to (1) make a detailed finding as to the hours worked by all of the testifying plaintiffs, (2) compute an average of those hours, and (3) apply that average to the remaining, non-testifying plaintiffs.  While courts rarely articulate the specific reasoning for taking such an approach, the method clearly balances competing concerns in this case: the Court's desire to avoid onerous, person-by-person calculations of overtime hours worked for hundreds of individuals, and the need  to prevent the jury from engaging in unchecked speculation on the proper measure of damages to award.

In *Cowan v. Treetop Enterp., Inc.*, 163 F. Supp. 2d 930 (M.D. Tenn. 2001), the plaintiffs were current and former unit managers for eighty-five Waffle House restaurants spread out across four states that were operated by the defendant franchising corporation. *Cowan*, 163 F. Supp. 2d at 932.  No accurate records of the hours the plaintiffs worked

were kept.  Ten of the plaintiffs testified in a bench trial; in total, the ten had worked at twenty-one of the defendants' restaurants.  The Court, acting in its capacity as a finder of fact, made specific findings as to the number of hours a week worked by each of the testifying plaintiffs (which ranged between 80 and 100 hours per week), and determined an average based on these hours.  *Id.* at 935.  That average — which the Court believed withstood the testimony put on by the defendants — was then applied to all of the plaintiffs, both testifying and non-testifying.  *Id.* at 938 ("From the testimony of the Plaintiffs' and the Defendants' employee records, the Court finds . . . that Plaintiffs worked an average of 89.04 hours per week and applying *Mt. Clemens*, this finding is applied to the entire Plaintiff class to determine the amount of overtime backpay . . . .").

Other district court decisions confronted with the issue of how to calculate damages for sizable groups of plaintiffs have relied on the same approach to calculate damages.  *See Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 999–1000 (S.D. Ohio 2010) (determining back wages for non-testifying plaintiffs by taking average of hours worked per week by testifying employees during different time periods, excluding clear statistical outliers, after determining that testifying employees were representative of non-testifying ones); *Herman v. Hector I. Neives Transp., Inc.*, 91 F. Supp. 2d 435,.441 (D.P.R. 2000) (using average of number of hours worked by plaintiffs for whom numbers were readily determinable to establish number of hours worked by non-testifying plaintiffs for whom no records existed); *McLaughlin v. DialAmerica Marketing, Inc.*, 716 F. Supp. 2d 812, 825–26 (D.N.J. 1989) (using testimony from representative sample of 43 out of nearly 400 "home researchers" as to number of subscriber cards they processed per hour to determine average rate of cards / hour, which was used to determine amount of back wages owed for entire class).

These "average" approaches are helpful in understanding the general sort of inquiry that must be made, but they do not constitute a mechanical test for determining the number of hours, on average, non-testifying plaintiffs worked.  It is the role of the jury, as finder of fact, to decide how closely the testifying Plaintiffs reflect the experiences of all mortgage bankers at Quicken Loans, including the non-testifying Plaintiffs.  The jury is within its rights to decide that the testifying Plaintiffs are not representative of the non-testifying Plaintiffs *at all*, and award no overtime to the non-testifying Plaintiffs.  It is also within their rights to make a determination of overtime hours worked below or above the mean number of hours worked.[4]  The verdict form and instructions will therefore permit the jury to make the determination of the degree to which the testifying Plaintiffs "represented" their non-testifying colleagues with some degree of freedom.  This is also why the Court has decided against an explicit question to the jury on the representativeness of the testifying Plaintiffs.  That question is subsumed in the determination of the average number of overtime hours worked per week.  A finding that the testifying Plaintiffs are strongly representative will result in an overtime award at, or very close to, the average of the testifying Plaintiffs; a finding that the testifying Plaintiffs are weakly representative may result in no overtime being awarded at all.

The jury will, nonetheless, also be asked to calculate the specific hours per week worked by the testifying plaintiffs.  While they will not be forced to draw from that conclusion any specific finding as to the hours worked by the non-testifying Plaintiffs, such a calculation will be helpful for a number of reasons.  First, it will ground the jury in the specific facts of the case, so that when they are called upon to draw the inference of

---

[4]    The Court nonetheless reserves its right to throw out a particular estimate of hours' worked if no reasonable juror cold have concluded, based on the evidence presented at trial, that such an estimate was reasonable.

representativeness, that inference will be based in more than mere conjecture.  Second, just as the judges in the district court cases cited above found the average hours worked of the testifying plaintiffs to be a helpful tool in determining damages, the Court believes that walking the jury through the determination of hours worked per week for each testifying Plaintiff will provide a helpful metric for the jury, even if the Court does not explicitly command the jury to compute an average.

The final proposed verdict form and supporting jury charge are appended hereto.

**SO ORDERED**

/s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
UNITED STATES DISTRICT JUDGE

Dated: March 9, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 9, 2011, by electronic and/or ordinary mail.

Carol Cohron
Case Manager

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, individually and on
behalf of similarly situated employees,          Case No. 04-cv-40346

      Plaintiffs,                                   HONORABLE STEPHEN J. MURPHY, III

v.

QUICKEN LOANS INC.,

      Defendant.
_____/

JURY INSTRUCTIONS AND
VERDICT FORM

1

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in civil cases.

Then I will explain the law that you must follow.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.


Sixth Circuit Pattern 1.01 For Criminal Case (modified for civil case)

2

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and apply it to the facts.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

The lawyers have talked about the law during their arguments.  But if what they said is different from what I say, you must follow what I say.  What I say about the law controls.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Sixth Circuit Pattern 1.02 For Criminal Case (modified)

3

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence – that is, the testimony of the witnesses and the exhibits I have admitted in the record. But as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence. Remember that anything the lawyers say is not evidence in the case. This includes their opening statements and closing arguments, and anything they say when making an objection. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Eleventh Circuit Model Instruction 2.2 (Modified)

4

I have allowed you to take notes.  Any notes you have taken during this trial are only aids to your memory.  They are not evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

Seventh Circuit Pattern Instructions 1.07

5

When I say you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:

Did the witness impress you as one who was telling the truth?

Did the witness have any particular reason not to tell the truth?

Did the witness have a personal interest in the outcome of the case?

Did the witness seem to have a good memory?

Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

Did the witness appear to understand the questions clearly and answer them directly?

Did the witness' testimony differ from other testimony or other evidence?


Eleventh Circuit Model Instruction 3

6

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.  You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Eleventh Circuit Model Instruction 4.1

7

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

Third Circuit Pattern Instruction 3.2

8

During this trial, I have asked a witness a question myself.  Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

Seventh Circuit Pattern Instruction 1.02

9

During the trial, certain testimony was presented to you by video.  You should give this testimony the same consideration you would give it had the witness appeared and testified here in court.


Seventh Circuit Pattern Instruction 1.05

10

Certain summaries of facts are in evidence.  The original materials – including testimony – used to prepare those summaries also are in evidence.  It is up to you to decide if the summaries are accurate.

Summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence already submitted.


Seventh Circuit Pattern Instruction 1.23

11

The parties have agreed that the following facts are true:

    (1)    The Plaintiffs were employed by Quicken Loans during the time period involved

    (2)    The Plaintiffs were employees engaged in commerce or in the production of goods for commerce, or were employed by an enterprise engaged in commerce or in the production of goods for commerce.

You must therefore treat these facts as having been proved for the purposes of this case.

Third Circuit Model Instruction 2.4

12

## SPECIAL INSTRUCTIONS

### *Nature of the Claim*

This case arises under the Fair Labor Standards Act of 1938 (FLSA).  The FLSA prohibits affected employers from employing an eligiblet employee for a workweek longer than forty (40) hours, unless such person receives overtime compensation.  Each of the Plaintiffs claims that Quicken Loans did not pay him or her for overtime worked, as required by the FLSA.  Quicken Loans maintains that each Plaintiff was an administrative employee who was not eligible for overtime pay under the Fair Labor Standards Act, and that some of the Plaintiffs cannot satisfy their burden of proving the elements of an overtime claim even if they had an entitlement to overtime.

You will decide whether the administrative exemption applies to each Plaintiff.  To the extent that you decide that the administrative exemption does not apply to any of the Plaintiffs, you will decide whether each Plaintiff has satisfied its burden of proof as to whether he/she would be entitled to overtime under the Fair Labor Standards Act, and if so, for how many weeks.  If you decide that Quicken Loans is liable to any of the Plaintiffs, you will then decide the number of weeks each Plaintiff worked such overtime hours, and the number of overtime hours worked each week.

29 U.S.C. 207(2)(A); 11th Circuit Pattern Jury Instructions (Civil Cases) § 1.7.1 (2005)("11th Cir. Inst."); 3C Fed. Jury Prac. & Instr. § 175.01 (5th ed.)("Fed. Jury Prac.")

13

*Collective Action; Representative Testimony*

The FLSA allows employees to pursue their overtime claims as a group in one case, called a collective action.  This case is a collective action brought by Plaintiff Ryan Henry and 358 other former employees of Quicken Loans.  Because this case is a collective action, not every Plaintiff has testified.  Rather, the Plaintiffs have offered testimony from a group of Plaintiffs they believe to be representative of the Plaintiffs as a whole, along with other evidence purporting to show all Plaintiffs are similarly situated.

You must decide whether the Plaintiffs who testified are "fairly representative" of those who did not testify.  This means you must determine whether or not the group of Plaintiffs who testified, along with all of the other direct and circumstantial evidence produced at trial, establishes the non-testifying Plaintiffs claims, as well.  If you find that the testifying Plaintiffs are "fairly representative" of the non-testifying Plaintiffs, you can infer from the testifying Plaintiffs whether or not the non-testifying Plaintiffs worked overtime hours while employed by Quicken, and the extent of the overtime work the non-testifying Plaintiffs performed.

The testifying Plaintiffs can only represent the non-testifying Plaintiffs if both groups perform substantially similar work. In considering whether the work the testifying and non-testifying Plaintiffs  performed was substantially similar, you may take into consideration job duties, employer expectations, motivations, suggested work hours, familiarity with other employees' work hours, compensation, and first-hand knowledge of the "loan consultant" position   You may also take into consideration the time periods each Plaintiff worked in, the teams and supervisors each Plaintiff worked for, and the clients each Plaintiff served.

14

The Plaintiffs are not required to have a specific number of employees give testimony; the "quality" of the sample, rather than the "quantity," is of overriding importance.  Also, the testifying Plaintiffs do not need to have personal knowledge of the hours the non-testifying Plaintiffs worked

29 U.S.C. § 216(b); *Dept. of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir.1991); *Baden-Winterwood v. Life Time Fitness, Inc.*, 2010 WL 3001749, at *31 (S.D. Ohio July 30, 2010*).*

15

*Quicken Loans' Affirmative Defense*

Quicken Loans claims that the overtime pay law does not apply to Plaintiffs because of an exemption from these requirements.  The particular exemption that Quicken Loans is claiming in this case is called the administrative exemption.  Quicken Loans bears the burden of proving its administrative exemption defense by a preponderance of the evidence.

3C O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 175.20 (5th ed. 2001).

16

### The "Preponderance of the Evidence" Standard

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties — that it is equally probably that one side is right as it is that the other side is right — then you must decide that issue against the party having the burden of proving that issue. That is because the party having the burden of proof must prove more than simple equality of evidence — they must prove the element at issue by a preponderance of the evidence. On the other hand, the party holding the burden of proof needs no *more* than a preponderance. If you find that the scales tip, however slightly, in favor of the party with the burden of proof — that what the party claims is more likely true than not true — then that element will have been proven by a preponderance of the evidence.

Fed. Jury Prac. § 175.41; *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618; 626 (6th Cir. 2009) ("[t]he applicability of an FLSA exemption is an affirmative defense that an employer must establish by a preponderance of the evidence"); *Grogan v. Garner*, 498 U.S. 279, 286; 111 S. Ct. 654; 112 L. Ed. 2D 755 (1991) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless `particularly important individual interests or rights are at stake.'"), internally quoting, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90; 103 S. Ct. 683; 74 L. Ed. 2d 548 (1983); *Yi v. Sterling Collision Cters, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (Posner, J.) (applying the preponderance of the evidence standard, which is the

17

standard prescribed by the Supreme Court, after comprehensively summarizing the law on burden of proof of exempt status under the FLSA).

18

*Administrative Exemption; Elements*

To prevail on its administrative exemption defense, Quicken Loans must prove each element of the defense by a preponderance of the evidence.  Quicken Loans must prove:

1.  That the Plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of Quicken Loans or its customers; and

2.  That the Plaintiffs' primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

Quicken Loans must prove each element of the administrative exemption in order to prevail on its affirmative defense.

29 U.S.C. § 213; 29 C.F.R. § 541.200, 201(c); *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 n.4 (6th Cir. 2001); *see also* 69 Fed. Reg. 22,122, 22,142 ("[T]he [language in the exemption] does not apply when the individual's 'business' is purely personal," in contrast to advice given to an individual in his or her capacity as a "small business owner or a sole proprietor"); Wage and Hour Opinion Letter FLSA 2007-7 (Feb. 8, 2007) (finding that employees who serve the personal needs of a company's individual consumers are not "primarily tasked with providing administrative services to the employer's customers as contemplated in 29 C.F.R. § 541.201(c)").

*Definition of Primary Duty*

The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. But this is only a general guideline, and time is not the sole test.  Primary duty does not mean the most time-consuming duty; it instead connotes the "principal" or "chief" — meaning the most important — duty performed by the employee. Nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

*Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504 (6th Cir. 2007); 29 C.F.R. § 541.700(a), (b); Order Denying Plaintiffs' Motion for Reconsideration 18–22, Jan. 27, 2011, ECF No. 666.

20

*Definition of Work Directly Related to Management or General Business Operations*

To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or its customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Work that is "directly and closely related" to the performance of exempt work is also considered exempt work. The phrase "directly and closely related" means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work. Thus, "directly and closely related" work may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly. Work "directly and closely related" to the performance of exempt duties may also include recordkeeping; monitoring and adjusting machinery; taking notes; using the computer to create documents or presentations; opening the mail for the purpose of reading it and making decisions; and using a

21

photocopier or fax machine. Work is not "directly and closely related" if the work is remotely

related or completely unrelated to exempt duties.

29 C.F.R. 541.201(a),(b), 703(a); 69 Fed. Reg. 22,122, 22,142 ("[T]he [language in the exemption] does not apply when the individual's 'business' is purely personal," in contrast to advice given to an individual in his or her capacity as a "small business owner or a sole proprietor"); Opinion Letter, FLSA 2007-7, Feb. 08, 2007 (finding that employees who serve the personal needs of a company's individual consumers are not "primarily tasked with providing administrative services to the employer's customers as contemplated in 29 C.F.R. § 541.201(c)").

*Discretion and Independent Judgment*

To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the

23

company in handling complaints, arbitrating disputes or resolving grievances.

The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

An employer's volume of business may make it necessary to employ a number of employees to perform the same or similar work. The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.202(a)–(d)

24

*Use of Manuals, Guidelines, or Other Protocol*

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work.

The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude a finding that the employee is administratively exempt.  Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status.  Nevertheless, employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances are not exempt.

29 C.F.R. § 541.202(e), 704.

25

### *Employees in the Financial Services Industry That Generally Meet, or Fail to Meet, The Duties Requirement of the Administrative Exemption*

Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

This guidance is intended as an illustration of the sort of employees with duties that satisfy, or fail to satisfy, the duties test of the administrative exemption.  It is not to serve as a substitute for finding that Plaintiffs meet, or fail to meet, the elements listed on page 18.

29 C.F.R. § 541.203(b)

26

## Burdens of Proof Relating to Plaintiff's Prima Facie Case

If you decide that a Plaintiff was not covered by the administrative exemption from overtime, you then need to determine the amount of uncompensated overtime work each Plaintiff performed.  Just as the defendants had the burden of proving the Plaintiffs are administratively exempt by a preponderance of the evidence, the Plaintiffs have the duty to prove their entitlement to overtime by a preponderance of the evidence.  *See supra*, pg. 16–17.  The Plaintiffs must prove that each Plaintiff worked overtime hours for which Quicken Loans did not compensate them.  You will not decide the hours worked by any Plaintiffs who you determine were covered by the administrative exemption from overtime.

In this case, there are no employment records upon which a conclusive determination of whether overtime hours were worked can be made.  The Plaintiffs can therefore satisfy their burden of proof in this case if they prove that they performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  You may rely on all of the evidence presented at trial, including, without limitation, the testimony of those Plaintiffs who testified, time records and business records provided by both sides, and other business records.

If you find that any of the Plaintiffs have met this burden, the responsibility shifts to Quicken Loans to come forward with evidence of the precise amount of work performed, or with evidence to negative the reasonableness of the inference to be drawn from the Plaintiffs' evidence.  If you find that Quicken Loans has not succeeded in producing such evidence, you may find for the Plaintiffs and award an appropriate amount in damages, even though the result be only approximate.

27

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946); *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999).

28

*Hours Worked*

The "hours worked" by each Plaintiff means the hours that each Plaintiff worked at the direction or knowledge of Quicken Loans, and for the benefit of Quicken Loans.  You should not include any periods during which a Plaintiff was completely relieved from duty and which were long enough to enable the Plaintiff to use the time effectively for his or her own purposes.  Rest periods of short duration, running from 5 minutes to about 20 minutes, should be included in hours worked.  Longer periods in which a Plaintiff did not perform work, such as time for meals (even if a Plaintiff did not actually eat a meal during some or all of those periods or leave the office), should not be included in hours worked, provided that the Plaintiff was not required to perform any duties, whether active or inactive, during those periods.

29 C.F.R. § 785.

*Determination of Hours Worked for Testifying*
*and Non-Testifying Plaintiffs*

You will determine the average hours of overtime, per week, worked by each of the testifying Plaintiffs.  In addition, you will be asked to give an estimate of the average number of hours worked per week by the non-testifying Plaintiffs while they were loan officers at Quicken Loans.  In determining the hours worked by the non-testifying employees, you must decide whether the Plaintiffs who testified are "fairly representative" of those who did not testify.  This means you must determine whether or not the group of Plaintiffs who testified, along with all of the other direct and circumstantial evidence produced at trial, establishes the non-testifying Plaintiffs claims, as well.

You may conclude that the testifying Plaintiffs are not at all representative of the non-testifying Plaintiffs, and find that, even though the testifying Plaintiffs worked overtime hours, there is not enough evidence to support a determination of overtime hours as to the non-testifying Plaintiffs.  You may also conclude that the non-testifying Plaintiffs worked, on average, more or less hours per week than the testifying Plaintiffs.  The average number of hours worked by the testifying Plaintiffs may be helpful in making your determination, but you may find, based on all of the evidence presented at trial, that this average is not reflective of the general experiences of mortgage bankers.

*Dept. of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir.1991); *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 999–1000 (S.D. Ohio 2010); *Herman v. Hector I. Neives Transp., Inc.*, 91 F. Supp. 2d 435,.441 (D.P.R. 2000); *McLaughlin v. DialAmerica Marketing, Inc.*, 716 F. Supp. 2d 812, 825–26 (D.N.J. 1989).

30

*Overtime Cannot Be Waived*

The mere fact that a Plaintiff has signed a contract or agreement stating that they will not receive overtime, or was told at the time they were hired that they would not receive overtime pay, is not determinative of whether or not the employee is entitled to overtime. Under the FLSA, the Plaintiffs cannot waive, or give up, their right to overtime, presuming they are found to be non-exempt. You may nonetheless consider evidence of waivers or expectations of overtime pay for other purposes, such as credibility.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

31

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case. Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone. It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

Eleventh Circuit Model Instruction 7.2

32

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience. You will first be asked to determine whether or not the Plaintiffs are administratively exempt. If you conclude that they are exempt, your inquiry is at an end, and the Plaintiffs will not receive back overtime pay. If you conclude that they are *not* exempt, you will proceed to determining the average number of overtime hours worked per week, if any, by each of the *testifying* Plaintiffs. Finally, you will be asked to determine the average number of hours worked per week by the non-testifying Plaintiffs, if you believe such there is sufficient evidence to conclude the non-testifying Plaintiffs worked such hours.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to Carol who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the

33

courtroom so that I can address you orally. I caution you, however, with regard to any

message or question you might send, that you should not tell me your numerical division

at the time.

*Eleventh Circuit Model Instruction 8*; *Seventh Circuit Pattern Instruction 1.34 (Second to last paragraph above)*

34

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, et al.,

       Plaintiffs,

v.

QUICKEN LOANS, INC.,

       Defendant.

_____/

Case No. 04-cv-40346

HONORABLE STEPHEN J. MURPHY, III

**VERDICT FORM**

(1) *Administrative Exemption*: Please answer the following questions:

    (a) Was the primary job duty of the Plaintiffs' performance of office or non-manual work directly related to the management or general business operations of Quicken Loans or its customers?

    Yes  _____      No  _____

    (b) Did the Plaintiffs' primary job duty include the exercise of discretion and independent judgment with respect to matters of significance?

    Yes  _____      No  _____

If you answered "No" to either (1)(a) or (1)(b), please answer questions (2) and (3). If you answered "Yes" to *both* (1)(a) *and* (1)(b), please mark "0" in the space marked "Average Hours of Overtime Worked / Week by Nontestifying Plaintiffs" under Question 3(b) below, and do not answer question (2) or (3)(a).

(2) *Hours Worked by Testifying Plaintiffs*

Please determine the number of overtime hours per week, on average, each testifying Plaintiff worked during their employment with Quicken Loans, and the number of weeks that they worked as a mortgage banker for Quicken.

Remember that any hours worked over forty hours per week are overtime hours.

[CONTINUE TO NEXT PAGE]

35

Record your determination of the hours of overtime worked per week, and the weeks worked, in Table 1.

**TABLE 1**

| Employee's Name | Average Hours of OT Worked / Week |
|---|---|
| Nicole Abate | |
| Hassan Bazzi | |
| ... | ... |
| Chanda Whitted | |

(3)   *Hours Worked by Non-Testifying Employees*

    (a)  Please determine the average number of overtime hours worked, per week, by the Plaintiffs when they worked at Quicken Loans.

        Average Hours of Overtime Worked / Week
        by Nontestifying Plaintiffs:        _____

_____        _____

DATE:                  FOREPERSON'S SIGNATURE